**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | **Chapter 11** |
| **SILVERGATE CAPITAL CORPORATION,** *et al.* | **Case No. 24- _____ (__)** |
| Debtors. [1] | **(Joint Administration Requested)** |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I)
AUTHORIZING THE DEBTORS TO (A) CONTINUE INSURANCE COVERAGE
ENTERED INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS
RELATED THERETO AND (B) RENEW, AMEND, SUPPLEMENT, EXTEND, OR
PURCHASE INSURANCE POLICIES AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

respectfully state as follows in support of this motion (this "Motion"):

**RELIEF REQUESTED**

1.    The Debtors respectfully request entry of interim and final orders, substantially in

the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order")

(a) authorizing, but not directing, the Debtors to (i) continue insurance coverage entered into

prepetition and satisfy their prepetition Insurance Obligations (as defined herein) and (ii) renew,

amend, supplement, extend, or purchase insurance policies in the ordinary course of business; and

(b) granting related relief.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

**JURISDICTION AND VENUE**

2.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and

1334 and *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware dated as of February 29, 2012. This is a core proceeding under 28 U.S.C.

§ 157(b). The Debtors consent under 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules")

to the entry of a final order by the Court in connection with this Motion to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgment in

connection herewith consistent with Article III of the United States Constitution. Venue is proper

in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested by this Motion are sections 105(a), 363(b),

363(c), 1107(a), 1108 and 1112(b)(4)(C) of title 11 of the United States Code (the "Bankruptcy

Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure.

**BACKGROUND**

**I.      Overview**

4.      On September 17, 2024 (the "Petition Date"), the Debtors filed with this Court

voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter

11 Cases"). The Debtors have filed a separate procedural motion requesting that the Chapter 11

Cases be jointly administered.

5.      The Debtors continue to operate its business and manage their properties as debtors

in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request for the

appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no committees

have been appointed or designated.

6.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.      Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' businesses, operations, capital structure, financial condition and the reasons for and objectives of these Chapter 11 Cases is set forth in the *Declaration of Elaine Hetrick in Support of First Day Motions and Related Relief* (the "First Day Declaration")[2], filed contemporaneously herewith and fully incorporated herein by reference.

## THE INSURANCE POLICIES AND RELATED PAYMENT OBLIGATIONS

### I.      Overview of the Debtors' Insurance Policies

8.      In the ordinary course of business, the Debtors maintain certain insurance policies that provide coverage for, among other things, property, general liability, employment practices liability, cyber/data liability, excess liability, professional liability, automobile, financial institution bond, professional liability, fiduciary liability, umbrella, business travel accident, and executive risk ("D&O") administered through certain third-party insurance carriers (the "Insurance Carriers").   The Debtors do not maintain certain insurance programs, such as workers compensation, because such programs are provided through AlphaStaff, a professional employment organization that processes payroll and administers benefit plans for the Debtors through a contractual arrangement as described in the *Debtors' Motion For Entry Of Interim And Final Orders (I) Authorizing The Debtors To (A) Continue To Operate Their Cash Management System, (B) Extending The Time To Comply With Section 345(B), (C) Honor Certain Prepetition*

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

*Obligations Related Thereto, (D) Maintain Existing Business Forms And (E) Continue Certain Intercompany Transactions; (II) Granting Related Relief*, filed contemporaneously herewith.

9.     The Debtors' obligations pursuant to these insurance policies comprise all premiums and other obligations related thereto, including any broker or advisor fees, taxes, other fees, and deductibles (collectively, the "Insurance Obligations").  A detailed list of the Insurance Policies that are currently held by the Debtors is attached hereto as **Exhibit C** (the "Insurance Schedule").  The Debtors believe the Insurance Policies provide coverage that is typical in scope and amount for businesses within the Debtors' industry.  Although the Debtors are in the process of winding down their business, no longer conduct banking or bank holding company operations and intend to wind down operations completely, the Debtors believe that maintaining these insurance programs are essential to the preservation of the Debtors' businesses, property and assets from known and unknown liabilities associated with the historical operation of their businesses or that may arise in connection with the current wind down process they are conducting.  In addition, Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C). Additionally, as outlined in the *Operating  Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines"), the United States Trustee for Region 3 (the "U.S. Trustee") requires that a debtor maintain adequate insurance coverage customary in the debtor's business during the pendency of its chapter 11 case. To the best of their knowledge, the Debtors believe there are no accrued and unpaid amounts, including deductibles, for the Insurance Obligations. However, out of an abundance of caution, in the event that prepetition amounts are owed in respect of the Insurance Obligations, the Debtors request authority to pay such amounts.

RLF1 31513469v.1

10.     The total amount paid in premiums, which includes run-off extensions of 3 and 6 years for certain policies, and payments associated with the Insurance Policies is approximately $1.6 million. The Insurance Policies generally vary in length, and deductibles and retentions vary by policy. As of the Petition Date, the Debtors have fully paid all premiums for their insurance policies through the expiration dates as outlined in Exhibit 1 and the next anticipated renewal date occurs in November 2024. Premiums are paid to the insurance companies or to the Debtors' insurance broker, Marsh & McLennan Agency LLC (the "Broker"), which assists the Debtors in obtaining comprehensive insurance coverage and providing related services. The Broker also assists with procuring and negotiating the respective Insurance Policies, enabling the Debtors to obtain the Insurance Policies on advantageous terms and at competitive rates. Should the Debtors fail to compensate the Broker in keeping with past practice, the Broker may refuse to assist the Debtors, leaving them to seek out their own insurance policies or find a new broker, potentially at greater expense, to assist in obtaining comprehensive insurance coverage and providing related services. Accordingly, maintaining their relationship with the Broker allows the Debtors to obtain the insurance coverage necessary to realize savings in the procurement of the policies. The Debtors, therefore, believe that it is in the best interests of their stakeholders and estates to continue their business relationship with the Broker.

11.     As of the Petition Date, the Debtors estimate that there are no accrued and unpaid amounts owed to the insurance companies or Broker. However, out of an abundance of caution, in the event that prepetition amounts are owed to the insurance companies or Broker, the Debtors requests authority to pay an amount not to exceed $100,000 absent further order of the Court.

**II.    Insurance Obligations**

12.     Absent payments by the Debtors to pay premiums and other Insurance Obligations, the Insurance Policies may lapse. Disruption of the Debtors' insurance coverage will expose the

Debtors to serious risks, including possibly (a) incurring direct liability for the payment of claims that otherwise would have been payable by the Insurance Carriers under the Insurance Policies, (b) incurring material costs and other losses that otherwise would have been reimbursed by the Insurance Carriers under the Insurance Policies, (c) being unable to obtain similar types of insurance coverage from insurance carriers of comparable quality or at all, and (d) incurring higher costs for reestablishing lapsed policies or obtaining new equivalent coverage.

13.     Accordingly, the Debtors seek this Court's authorization, but not mandatory direction, to honor and pay any such Insurance Obligations and other amounts as may come due after the Petition Date in the ordinary course of business to maintain its Insurance Policies.

## **BASIS FOR RELIEF REQUESTED**

**I.      Continuation of the Insurance Program, Payment of Prepetition Insurance Obligations and Renewal of or Obtaining New Insurance Policies Is Necessary and Appropriate**

14.     The Debtors believe it is essential to their businesses, and consistent with the Bankruptcy Code and the operating guidelines issued by the U.S. Trustee, that they (a) maintain and continue to make all payments required under its Insurance Policies and (b) have the authority, but not direction, to supplement, amend, extend, renew, or replace their Insurance Policies as needed, in their judgment, without further order of the Court.

15.     The Court may grant the relief requested herein pursuant to section 363(b) of the Bankruptcy Code. Section 363(b)(1) provides, in relevant part, that a debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate" after notice and a hearing. 11 U.S.C. § 363(b)(1). Courts in this and other circuits require a debtor to demonstrate only that a sound business purpose justifies the proposed use of property. *See In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that

a sound business purpose justifies such actions."); *see also City of Rockford v. Mallinckrodt PLC (In re Mallinckrodt PLC)*, 2022 WL 906458, at *6 (D. Del. Mar. 28, 2022) ("The legal standard applicable to § 363(b) is the business judgment test, under which a bankruptcy court will authorize debtor-initiated actions if the debtor shows that 'a sound business purpose justifies' such actions." (*citing In re Culp*, 545 B.R. 827, 844 (D. Del. 2016)); *In re Filene's Basement, LLC*, No. 11-13511, 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("Where the debtor articulates a reasonable basis for its business decisions courts will generally not entertain objections to the debtor's conduct.") (*quoting In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986)); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (noting that section 363(b) gives the court "broad flexibility" for the debtor to pay prepetition wages as long as the debtor articulates a business justification). Courts in this and other circuits have been consistently reluctant to interfere with corporate decisions "absent a showing of bad faith, self-interest, or gross negligence *See Integrated Res.*, 147 B.R. at 656; *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task."); *In re Johns-Manville Corp.*, 60 B.R. 612, 616 ("[W]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."). Thus, if a transaction satisfies the business judgment rule, it should be approved under section 363(b) of the Bankruptcy Code.

16.     In addition, sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue to operate its business. *11 U.S.C. §§ 1107(a), 1108*. A debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and prepetition claims may be paid if necessary to perform

the debtor's duty. *See In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a prepetition claim."). The *CoServ* court specifically noted that the pre-plan satisfaction of prepetition claims would be a valid exercise of the Debtors' fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.*

17.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Numerous courts have recognized that payments to prepetition creditors are appropriate pursuant to section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of payment" rule where such payments are necessary to the continued operation of the debtor's business. *See, In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) "provides a statutory basis for payment of pre-petition claims"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) ("The appropriate standard…is commonly referred to as 'the necessity of payment doctrine.'"); *In re Energy Future Holdings Corp.*, 561 B.R. 630, 642-43 (Bankr. D. Del. 2016) (acknowledging that the "'necessity of payment" rule is intended to benefit all parties and is applicable when such payment is critical to the Debtors' reorganization"); *Official Comm. of Unsecured Creditors v. Motor Coach Indus. Int'l (In re Motor Coach Indus. Int'l)*, 2009 WL 330993, at *7 n.5 (D. Del. Feb. 10, 2009) ("The 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor.").

18.     The relief sought by this Motion is appropriate under each of those standards. The Debtors' sound business judgment supports paying the prepetition Insurance Obligations because

the failure to pay such obligations could result in: (a) the cancellation or impairment of coverage under the Insurance Policies; (b) the Debtors' inability to obtain renewal of the Insurance Policies on terms that are as competitive and (c) the various contractual commitments and/or the fiduciary duties of the Debtors as debtors in possession. Each of these outcomes would create unnecessary risks and expose the Debtors to liabilities that far outweigh the cost of paying the applicable prepetition amounts, and could be detrimental to the Debtors' ability to maximize the value of its estate for the benefit of all stakeholders.

19.     The Debtors believe that the ordinary course maintenance of their insurance coverage, including paying all Prepetition Insurance Obligations (to the extent any exist), satisfying all postpetition commitments to the Insurance Carriers, renewing the Insurance Policies or entering into new insurance agreements, without further order of the Court, is necessary, especially where, as here, the Debtors' failure to take all actions necessary to honor its obligations to and preserve its relationships with the Insurance Carriers could have significantly negative consequences for the Debtors' ability to maximize the value of its estate for the benefit of all stakeholders.

**THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

20.     Bankruptcy Rule 6003 empowers the Court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases could hinder the Debtors' ability to maintain appropriate insurance policies.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and maximizing the value of the Debtors' estates, and maximize

the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULES 6004(A) AND 6004(H)

21.    To implement the foregoing, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

22.    Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed

as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **NOTICE**

23.     No creditors' committee, trustee or examiner has been appointed in these Chapter 11 Cases.  Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the United States Department of Justice; (d) the United States Attorney for the District of Delaware; (e) the California Department of Financial Protection and Innovation; (f) the Federal Deposit Insurance Corporation; (g) the Federal Reserve Board of Governors; (h) the parties identified on the Debtors' list of 20 largest unsecured creditors; (i) counsel for the Ad Hoc Preferred Stockholder Group; and (j) if not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within forty-eight (48) hours of the entry of an order with respect to this Motion, the Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **NO PRIOR REQUEST**

24.     No prior request for the relief sought herein has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

11

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim Order and the Proposed Final Order and grant such other and further relief as is appropriate under the circumstances.

Dated: September 18, 2024
      Wilmington, Delaware

*/s/ Gabrielle A. Colson*
**RICHARDS, LAYTON & FINGER, P.A.**
Paul N. Heath (No. 3704)
Michael J. Merchant (No. 3854)
David T. Queroli (No. 6318)
Emily R. Mathews (No. 6866)
Gabrielle A. Colson (No. 7179)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:   (302) 651-7701
Email: heath@rlf.com
       merchant@rlf.com
       queroli@rlf.com
       mathews@rlf.com
       colson@rlf.com

- and -

**CRAVATH, SWAINE & MOORE LLP**
George E. Zobitz (*pro hac vice* pending)
Paul H. Zumbro (*pro hac vice* pending)
Alexander Gerten (*pro hac vice* pending)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 474-1000
Facsimile:   (212) 474-3700
Email:  jzobitz@cravath.com
       pzumbro@cravath.com
       agerten@cravath.com

*Proposed Attorneys for the
Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | **Chapter 11** |
| **SILVERGATE CAPITAL CORPORATION,** *et al.*[1] | **Case No. 24- _____ (__)** |
| **Debtors.** | **(Jointly Administered)** |

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS RELATED THERETO AND (B) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES AND (II) <u>GRANTING RELATED RELIEF</u>

Upon the motion (the "<u>Motion</u>") of the Debtors for entry of an order (this "<u>Interim Order</u>") (i) authorizing, but not directing, the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto and (ii) renew, amend, supplement, extend, or purchase insurance policies in the ordinary course of business on a postpetition basis; and (b) granting related relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion and the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follow: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary,; and upon the record herein; and after due deliberation thereon; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.       The Motion is granted on an interim basis as set forth herein.

2.       The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on _____, 2024, at__:__ .m (prevailing Eastern Time). On or before __:__ .m. (prevailing Eastern Time) on _____, 2024, any objections or responses to entry of a final order on the Motion shall be filed with the Court and served on: (a) the Debtors, 4225 Executive Square, Suite 600, La Jolla, CA 92037; (b) proposed counsel for the Debtors, (i) Cravath, Swaine and Moore, 375 Ninth Avenue, New York, NY 10001, Attn: Paul Zumbro (pzumbro@cravath.com), Jed Zobitz (jzobitz@cravath.com) and Alexander Gerten (agerten@cravath.com), (ii) Richards, Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Paul N. Heath (heath@rlf.com), Michael J. Merchant (merchant@rlf.com) and David T. Queroli (queroli@rlf.com), (iii) the Office of the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Benjamin Hackman (benjamin.a.hackman@usdoj.gov) (iv) counsel to the Ad Hoc Preferred Stockholder Group, Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Andrew Leblanc and Lauren Doyle (aleblanc@milbank.com; ldoyle@milbank.com); (v) local counsel to the Ad Hoc Preferred Stockholder Group, Potter Anderson & Corroon LLP, 1313 N Market Street, 6th Floor, Wilmington, DE 19801, Attn: L. Katherine Good

(kgood@potteranderson.com) and Christopher M. Samis (csamis@potteranderson.com); and (vi) counsel to any official committee appointed in these Chapter 11 Cases, (collectively, the "Notice Parties").

3.      The Debtors are authorized, but not directed, to revise, extend, supplement or change insurance coverage as needed, and as consistent with the Debtors' ordinary course of business, and to enter into new insurance policies through renewal or purchase of new insurance policies, including by obtaining "tail" coverage in connection with any insurance policy, as required, and as consistent with the Debtors' past practices and in the ordinary course of business, and to pay, in accordance with the Case Budget (as defined in the Restructuring Support Agreement), all Insurance Obligations related thereto, provided the payments shall not exceed $100,000, unless otherwise ordered by the Court.

4.      The Debtors shall not revise, renew, extend, supplement, change or purchase insurance coverage without the consent, not to be unreasonably withheld, of the Ad Hoc Preferred Stockholder Group.

5.      Any purchase of "tail" coverage shall be consistent with the Case Budget.

6.      Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be construed as: (a) an admission as to the amount of, basis for or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of

any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief authorized in this Interim Order are valid, and the rights of all parties in interest are expressly reserved to context the extent validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Interim Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

7.      The requirements of Bankruptcy Rule 6003(b) have been satisfied.

8.      Notwithstanding the provisions of Bankruptcy Rule 6004(a) and 6004(h), this Interim Order shall be immediately effective and enforceable upon its entry.

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

10.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**Exhibit B**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **SILVERGATE CAPITAL CORPORATION,** *et al.*[1] | Case No. 24- _____ (__) |
| **Debtors.** | **(Jointly Administered)** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE INSURANCE COVERAGE ENTERED INTO PREPETITION AND SATISFY PREPETITION OBLIGATIONS RELATED THERETO AND (B) RENEW, AMEND, SUPPLEMENT, EXTEND, OR PURCHASE INSURANCE POLICIES AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the Debtors for entry of an order (this "Final Order") (i) authorizing, but not directing, the Debtors to (i) continue insurance coverage entered into prepetition and satisfy prepetition obligations related thereto and (ii) renew, amend, supplement, extend, or purchase insurance policies in the ordinary course of business on a postpetition basis; and (b) granting related relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion and the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follow: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary,; and upon the record herein; and after due deliberation thereon; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is granted as set forth herein.

2.      The Debtors are authorized, but not directed, to revise, extend, supplement or change insurance coverage as needed, and as consistent with the Debtors' ordinary course of business, and to enter into new insurance policies through renewal or purchase of new insurance policies, including by obtaining "tail" coverage in connection with any insurance policy, as required, and as consistent with the Debtors' past practices and in the ordinary course of business, and to pay, in accordance with the Case Budget (as defined in the Restructuring Support Agreement), all Insurance Obligations related thereto.

3.      The Debtors shall not revise, renew, extend, supplement, change or purchase insurance coverage without the consent, not to be unreasonably withheld, of the Ad Hoc Preferred Stockholder Group.

4.      Any purchase of "tail" coverage shall be consistent with the Case Budget.

5.      Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be construed as: (a) an admission as to the amount of, basis for or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's

right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion; (e) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief authorized in this Final Order are valid, and the rights of all parties in interest are expressly reserved to context the extent validity, or perfection or seek avoidance of all such liens. Any payment made pursuant to this Final Order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

6.      Notwithstanding the provisions of Bankruptcy Rule 6004(a) and 6004(h), this Final Order shall be immediately effective and enforceable upon its entry.

7.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

8.      This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

RLF1 31513469v.1

**Exhibit C**

**Insurance Schedule**

| Insurance Carrier | Policy Type | Policy Number | Expiration Date | Premium |
|---|---|---|---|---|
| Associated Industries Insurance Company Inc. | Cyber / Data Liability | AES1231937-01 | 4/1/2025 | $69,647 |
| AXIS Insurance Company | Excess Directors and Officers Liability -Side A DIC (Run-off Extension to 2030) | P-001-000428935-03 | 11/6/2024 | $47,628 |
| Berkley Life & Health Insurance Company | Business Travel Accident | BTAL214200033602 | 11/2/2024 | $1,949 |
| CNA Financial Corporation / Valley Forge Insurance Company | Auto | 2079786374 | 4/1/2025 | $1,369 |
| CNA Financial Corporation / Valley Forge Insurance Company | Package Policy (Property, General Liability, Employee Benefit Liability) | 4034873500 | 4/1/2025 | $644 |
| Continental Casualty Company | Bankers Professional Liability (Run-off Extension to 2027) | 652230948 | 7/8/2027 | $562,950 |
| Continental Casualty Company | Employment Practices Liability | 652230819 | 6/30/2025 | $85,000 |
| Continental Casualty Company | Excess Directors and Officers Liability (Run-off Extension to 2030) | 652281141 | 11/6/2024 | $204,000 |
| Continental Casualty Company | Fiduciary Liability (Run-off Extension to 2027) | 652230934 | 7/8/2027 | $19,200 |
| Continental Casualty Company | Financial Institution Bond (Crime) | 652230903 | 6/30/2025 | $46,174 |
| Endurance Risk Solutions Assurance Co. | Excess Directors and Officers Liability (Run-off Extension to 2030) | FIX30027477400 | 11/6/2024 | $97,293 |
| Federal Insurance Company | Employed Lawyers Professional Liability | 82489195 | 7/16/2025 | $5,687 |

| Insurance Carrier | Policy Type | Policy Number | Expiration Date | Premium |
|---|---|---|---|---|
| Freedom Specialty Insurance Company | Excess Directors and Officers Liability -Side A DIC (Run-off Extension to 2030) | XMF2210228 | 11/6/2024 | $43,710 |
| Hudson Insurance Company | Excess Directors and Officers Liability -Side A DIC (Run-off Extension to 2030) | HN-0303-6064-110622 | 11/6/2024 | $67,500 |
| Texas Insurance Company | Excess Directors and Officers Liability (Run-off Extension to 2030) | BFLXLFTCA011200_020992_01 | 11/6/2024 | $128,987 |
| The Continental Insurance Company | Umbrella Policy | 2079786276 | 4/1/2025 | $3,250 |
| Vantage Risk Specialty Insurance Company | Excess Directors and Officers Liability (Run-off Extension to 2030) | P03FL0000012981 | 11/6/2024 | $162,707 |
| Western Surety Company | Notary Public Errors and Omissions | 61389529 | 6/18/2025 | $188 |
| XL Specialty Insurance Company | Directors and Officers Liability (Run-off Extension to 2030) | ELU186715-22 | 11/6/2024 | $35,000 |