## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SILVERGATE CAPITAL CORPORATION,** *et al*.[1] | **Case No. _____ (__)** |
| **Debtors.** | **(Joint Administration Requested)** |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES AND COMPENSATION, FEES, WITHHOLDINGS, AND TAXES, (B) CONTINUE CERTAIN EMPLOYEE BENEFIT PROGRAMS, (C) CONTINUE CERTAIN HEALTH AND INSURANCE BENEFIT PROGRAMS, AND; (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), respectfully state as follows in support of this motion (this "<u>Motion</u>"):

### RELIEF REQUESTED

1.      By this Motion, the Debtors requests entry of interim and final orders, substantially in the form attached hereto as **<u>Exhibit A</u>** (the "<u>Interim Order</u>") and **<u>Exhibit B</u>** (the "<u>Final Order</u>" and together with the Interim Order, the "<u>Orders</u>"), (I) authorizing, but not directing, the Debtors to (a) pay and/or otherwise honor, as applicable, prepetition obligations that the Debtors have historically directly or indirectly incurred with respect to the Debtors' employees (the "<u>Employees</u>"), including, but not limited to, (i) accrued prepetition Wages (as defined below) and (ii) prepetition amounts funded by the Debtors and paid directly by AlphaStaff (as defined below), which include Employer Payroll Taxes (as defined below), Health and Insurance Benefit Programs

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

(as defined below) and telephone and remote working allowance, (iii) Payroll Service Fees (as defined below) payable to AlphaStaff, (iv) Reimbursable Expenses (as defined below), and (v) Independent Contractors (as defined below) (collectively, the "Prepetition Employee Obligations"), of approximately $55,500 (the "Interim Amount") and in the ordinary course of business as such obligations become due and payable subject to the limitations described herein; and (b) pursuant to the Final Order, continue to honor and pay all other Prepetition Employee Obligations, in the aggregate amount of approximately $55,500 (inclusive of the Interim Amount) and in the ordinary course of business as such obligations become due and payable subject to the limitations described herein; and (II) granting related relief.

2.       The chart below summarizes the estimated Prepetition Employee Obligation amounts sought to be paid pursuant to the Orders (with all amounts in U.S. dollars):

| Category | Amount |
|---|---|
| **Paid through AlphaStaff** | |
| Wages for Employees * | $17,000 |
| Employer Payroll Taxes | $2,000 |
| Health and Insurance Benefit Programs | $4,000 |
| Payroll Services Fees | $500 |
| | |
| Independent Contractor Obligations | $32,000 |
| Reimbursable Expense | $0 |
| | |
| **Prepetition Employee Obligations** | **$ 55,500** |
| | |
| Severance | $0 |
| Non-Employee Director Compensation / Board Fees | $0 |
| | |
| **Total Prepetition Obligations** | **$ 55,500** |

| Other Employee Related Items | |
|---|---|
| Paid Time Off | $282,500 |

\* This number includes $7,000 for Employee Withholding Obligations and $200 related to telephone and remote working allowance

3.      By this Motion, the Debtors request authority, but not direction, pursuant to both the Interim Order and the Final Order, to honor all of their Prepetition Employee Obligations in the ordinary course of business (including non-monetary benefits in excess of the priority cap set forth in 11 U.S.C. § 507(a)(5), if any), subject to the limitations described herein. The Debtors do not seek authority to make payments during the Interim Period on account of Prepetition Employee Obligations to any individual current or former Employee to the extent such payments (i) would be to an Employee whose employment with the Debtors terminated more than 180 days prior to the Petition Date, or (ii) exceed the priority cap of $15,150 contained in 11 U.S.C. § 507(a)(4) (the "Priority Cap").

4.      The Debtors also request that the Orders (a) authorize all applicable banks and other financial institutions (collectively, the "Banks"), when requested by the Debtors, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "Payments"), on account of the Prepetition Employee Obligations, whether such Payments were submitted before, on, or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such Payments and that any such Bank shall not have any liability to any party for relying on such direction by the Debtors; (b) authorize the Banks to rely on any directions and representations of the Debtors as to which Payments are subject to this Motion, provided that any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors; (c) authorize, but not direct, the Debtors to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment,

including fund transfers, which may be inadvertently dishonored or rejected; and (d) authorize, but not direct, the Debtors to continue in their ordinary course to make Payments on account of the Prepetition Employee Obligations.

5.      In addition, the Debtors request that the Court schedule a final hearing (the "<u>Final Hearing</u>")[2] to consider the relief requested herein on a final basis and entry of the Final Order.

6.      For the reasons set forth herein, the Debtors submit that the relief requested is in the best interest of the Debtors, their estates, creditors, and other parties in interest.

## <u>JURISDICTION AND VENUE</u>

7.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent under 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment in connection herewith consistent with Article III of the United States Constitution. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The predicates for the relief requested by this Motion are sections 105(a), 363, 507(a), 541, 1107(a) and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local Rule 9013-1(a).

---

[2]      Such period between the date this Motion was filed and the Final Hearing shall be the "<u>Interim Period</u>".

# BACKGROUND

## I.    Overview

9.    On September 17, 2024 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors have filed a separate procedural motion requesting that the Chapter 11 Cases be jointly administered.

10.    The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no committees have been appointed or designated.

11.    Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business, operations, capital structure, financial condition and the reasons for and objectives of these Chapter 11 Cases is set forth in the *Declaration of Elaine Hetrick in Support of First Day Motions and Related Relief* (the "First Day Declaration")[3], filed contemporaneously herewith and fully incorporated herein by reference.

## II.    The Debtors' Workforce Wages and Compensation

### a.  Employees

12.    As of the Petition Date, the Debtors have approximately 11 Employees, serving a variety of corporate functions, who are jointly employed by Debtor Silvergate Liquidation Corporation and AlphaStaff, Inc. ("AlphaStaff"), a professional employer organization (PEO).

---

[3]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

13.     As further discussed in the First Day Declaration, the rapid contraction of the business of Silvergate Liquidation Corporation (formerly known as Silvergate Bank) ("SLC") and the subsequent decision to wind down operations and voluntarily liquidate SLC has resulted in a significant downsizing of the Debtors' workforce. The Employees remaining are those that the Debtors have determined are necessary to complete the wind down and liquidation of the Debtors' businesses as efficiently as possible and distribute their remaining assets to creditors and shareholders. Retaining the limited number of Employees is critical to minimizing the disruption caused by the bankruptcy filing and maximize the value of Debtors' estates.

### b.  Wages and Salaries

14.     In the ordinary course of business, the Debtors incur obligations related to base wages, salaries, severance payments and other compensation for time or hours worked (collectively, the "Wages") owed to Employees.  The Debtors submit a net amount of money to AlphaStaff prior to the conclusion of each pay period, which then administers the Debtors' obligations incurred or related to Wages, Employer Payroll Taxes (as defined below), Health and Insurance Benefit Programs (as defined below), and telephone and remote working allowance (collectively, the "Payroll Services")  In the ordinary course of business, the Employees are paid on a bi-weekly basis, every other Friday, one week in arrears.  For the month of August 2024, the Debtors' monthly total payroll obligation (excluding any amounts paid in connection with the severance) was approximately $235,000, including Employer Payroll Taxes (as defined below), Health and Insurance Benefit Programs (as defined below), telephone and remote working allowance, and Payroll Services Fees (as defined below).

15.     The Debtors, through AlphaStaff, processed a company-wide Employee payroll for the pay period ending September 13, 2024. The next pay date will be September 27, 2024, which will cover the pay period ending September 20, 2024. As of the Petition Date, the Debtors owe

approximately $17,000 (not including Employer Payroll Taxes (as defined below)) in unpaid and accrued prepetition Wages for their Employees, all of which will come due and payable during the Interim Period. By this Motion, the Debtors seek authority, but not direction, to continue paying all prepetition Wages up to the Priority Cap and all postpetition Wages in the ordinary course of business, as well as authority, but not direction, to continue paying the Employees in the ordinary course of business.

### c.  Severance

16.    During the prepetition period, the Debtors from time to time paid severance to their former Employees ("Severance") from time to time. As of the Petition Date, the Debtors do not believe they have any outstanding Severance obligations.

17.    While Debtors do not believe they currently have any outstanding Severance obligations outstanding, it is important that they have the flexibility to comply with any obligations under state law they may have to pay Severance obligations.  Accordingly, the Debtors request that the Court authorize the Debtors, in consultation with the Ad Hoc Preferred Stockholder Group, to honor legal or contractual Severance obligations in the ordinary course of business after the Petition Date.

### d.  Non-Employee Director Compensation

18.    Additionally, in the ordinary course of business, the Debtors pay fees ("Board Fees") to the board of directors (the "Board", and each such director, a "Director"). The Board Fees are paid quarterly in arrears, with quarterly payments totaling approximately $175,000 per quarter. As of the Petition Date, the Debtors do not believe that they owe any amounts on account of Board Fees and do not by this Motion request authority to pay any prepetition Board Fees. The Debtors believe that they are authorized to pay postpetition Board Fees in the ordinary course; however, out of an abundance of caution, by this Motion, the Debtors seek authority to continue

7

to pay the Board Fees on a postpetition basis in the ordinary course of business and consistent with their prepetition practices.

### e.  Independent Contractor Obligations

19.      In addition to its Employees, in the ordinary course of business, the Debtors have three independent contractors who are retained by Apex Staffing and two additional independent contractors paid directly by the Debtor (together, the "Independent Contractors").[4] The Independent Contractors are vital to the administration of the Debtors' cases and provide a wide array of valuable services relating to the Debtors' contracts, regulatory requirements and information technology / network systems. On average, the Debtors incur approximately $31,000 in the aggregate of weekly Independent Contractor compensation (collectively, the "Independent Contractor Obligations").  As of the Petition Date, the Debtors owe approximately $32,000 on account of Independent Contractor Obligations, approximately $32,000 of which will come due and payable during the Interim Period. The Debtors seek authority to pay any accrued amounts due to the Independent Contractors and continue to pay the Independent Contractors in the ordinary course of business.

### III.     Payroll: Fees, Withholdings, and Taxes

### a.  Payroll

20.      The Debtors' employ the services of AlphaStaff to efficiently manage the Debtors' human resource information and processing of Payroll Services. The Debtors pay fees of approximately $20,000 to AlphaStaff ("Payroll Services Fees") for performing these Payroll Services over the course of a year.  AlphaStaff ensures that  (i) Employees are paid on time, (ii)

---

[4]      One independent contractor of the Debtors is a former officer of the Debtors, who performs consulting services for the Debtors through Otium Sanctum Enterprises, Inc., of which she is sole shareholder.  Compensation under this arrangement is $10,400 per month, plus payment of COBRA premiums.  No prepetition amounts are owed with respect to this independent contractor.

appropriate Deductions are made, (iii) payroll reporting is accurate, and (iv) appropriate amounts are remitted to the applicable taxing and court authorities.  As of the Petition Date, the Debtors estimate that they owe approximately $500 to AlphaStaff on account of Payroll Services Fees relating to the prepetition payment of Employees, approximately $500 of which will come due and payable during the Interim Period. The Debtors seek authority to pay any accrued amounts due to AlphaStaff for the Payroll Services Fees and continue to pay AlphaStaff in the ordinary course of business.

### b.  Withholding Obligations

21.    The Debtors are required by certain laws to withhold from the Employees' Wages amounts related to federal, state, and local income taxes, Medicare taxes, Social Security, garnishments, and other withholdings (collectively, the "Withheld Amounts") for remittance to the appropriate taxing and court authorities.

22.    The Debtors fund AlphaStaff for certain deduction amounts from Wages, including, without limitation, (a) pre-tax and after-tax deductions pursuant to the Health and Insurance Benefit Programs (as defined below) and (b) other miscellaneous deductions as may be required in the various jurisdictions in which the Debtors operate (collectively, the "Deductions," and together with the Withheld Amounts, the "Employee Withholding Obligations"). At current staffing levels, the Debtors estimate that they will fund AlphaStaff approximately $65,000 per month on account of Employee Withholding Obligations.

23.    As of the Petition Date, the Debtors estimate that they hold approximately $7,000 in funds withheld on account of Employee Withholding Obligations that have not been remitted to AlphaStaff. The Debtors believe that the unpaid Employee Withholding Obligations are generally held in trust by the Debtors and are not property of their estates. The Debtors request specific authority, but not direction, to direct AlphaStaff to remit the unpaid Employee

9

Withholding Obligations to the appropriate third-party recipients and to continue to honor and process the Employee Withholding Obligations on a postpetition basis, in the ordinary course of business and in their sole discretion.

### c. Employer Payroll Taxes

24.     In addition to the Employee Withholding Obligations, the Debtors, through AlphaStaff, are required to pay or match from their own funds certain statutory tax obligations (together, the "Employer Payroll Taxes"). For example, in the U.S., the federal government requires that the Debtors pay the employer portions of Social Security and Medicare. Failure to do so could result in penalties to the Debtors or other severe consequences, such as personal liability for the Debtors' officers. At current staffing levels, the Debtors estimate that they will have Employer Payroll Tax obligations of approximately $4,000 per month. As of the Petition Date, the Debtors estimate that they owe approximately $2,000 on account of Employer Payroll Taxes relating to the prepetition payment of Employees. The Debtors request specific authority, but not direction, to direct AlphaStaff, as applicable, to remit the unpaid Employer Payroll Taxes to the appropriate recipients and to continue to honor and process the Employer Payroll Taxes on a postpetition basis, in the ordinary course of business and in their sole discretion.

### IV.    Employee Benefit Programs

25.     In the ordinary course of business, and as discussed in more detail below, the Debtors offer various types of standard employee benefits to their Employees, including Paid Time Off and Reimbursable Expenses (each as defined below, and collectively, the "Employee Benefit Programs"). Non-payment of the Employee Benefit Programs would be highly detrimental to the Debtors' estates.

### a. Paid Time Off

26.     The Debtors' full-time Employees are eligible to receive Paid Time Off ("PTO"). Under the Debtors' policy, the Employees earn PTO on a bi-weekly basis based on service time. PTO is accrued at a rate of 4.92 to 6.67 hours per pay period. As of the Petition Date, the Debtors estimate that they owe approximately $282,500 related to accrued PTO. The Debtors seek authority, after consultation with the Ad Hoc Preferred Stockholder Group, to continue to honor any legally required or contractual prepetition PTO taken postpetition in the ordinary course of business.

### b. Reimbursable Expenses

27.     In the ordinary course of business, the Debtors reimburse Employees and Directors for approved expenses incurred within the scope of their employment (collectively, the "Reimbursable Expenses"). Reimbursable Expenses are processed through the Debtors' accounts payable process. As of the Petition Date, the Debtors do not believe that they owe any amounts on account of Reimbursable Expenses. However, out of an abundance of caution, by this Motion, the Debtors seek authority, in their sole discretion, to pay any outstanding prepetition Reimbursable Expenses which might come due in the ordinary course of business.

### V.     Health and Insurance Benefit Programs

28.     In the ordinary course of business, and as set forth in more detail herein, the Debtors have established various standard and customary plans and policies to provide their Employees with (i) Health Benefits (as defined below) and (ii) Insurance Benefits (as defined below)(collectively, the "Health and Insurance Benefit Programs").

### a.  Health Benefits

29.       The Debtors, through AlphaStaff, offer a range of medical, dental and vision benefit (the "Health Benefits") coverage to their Employees. The total premium for Health Benefits coverage is paid directly by the Debtors to AlphaStaff.

### b.  Insurance Benefits

30.       In the ordinary course of business, the Debtors, through AlphaStaff, provide their Employees with insurance benefits, which include short-term and long-term disability insurance, life insurance, accidental death and dismemberment insurance, workers' compensation insurance, voluntary life insurance and supplemental insurance (the "Insurance Benefits").  The total premium for employer contributions with respect to Health and Insurance Benefit Programs is paid directly by the Debtors to AlphaStaff. The Debtors pay approximately $31,000 per month for the Health and Insurance Benefit Programs, inclusive of approximately $25,000 in employer contributions and $6,000 in Employee contributions. As of the Petition Date, the Debtors estimate that they owe approximately $4,000 on account of employer contributions with respect to Health and Insurance Benefit Programs, approximately $4,000 of which will come due and payable during the Interim Period.

31.       The Debtors request the authority to continue their practices related to the Health and Insurance Benefits during and after the Interim Period in the ordinary course of business.

### BASIS FOR RELIEF REQUESTED

**I.       Payment of the Prepetition Employee Obligations Is Authorized and Appropriate Under Sections 105(a), 363, 507(a)(4), 507(a)(5), 541, 1107(a), and 1108 by the Bankruptcy Code**

32.       As a result of the commencement of the Chapter 11 Cases and in the absence of an order of the Court providing otherwise, the Debtors will be prohibited from paying or otherwise satisfying most, if not all, of their Prepetition Employee Obligations, and the checks, wire transfers,

and direct deposit transfers issued in respect of the Prepetition Employee Obligations will be dishonored. The failure to honor these obligations would have devastating consequences on the Debtors' Employees, and on the Debtors' efforts to maximize the value of their estates as the Debtors seek to complete the wind down and liquidation of the Debtors' businesses as efficiently as possible.

33.     The Debtors believe that all of the amounts they seek to pay for Prepetition Employee Obligations during the Interim Period are entitled to priority under sections 507(a)(4) and (a)(5) of the Bankruptcy Code. Section 507(a)(4) of the Bankruptcy Code grants priority to employee claims for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within 180 days before the filing of the applicable petition up to $15,150 per employee.[5] 11 U.S.C. § 507(a)(4). Similarly, section 507(a)(5) of the Bankruptcy Code provides that claims for contributions to certain employee benefits plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $15,150, less any amounts paid pursuant to section 507(a)(4) of the Bankruptcy Code. 11 U.S.C. § 507(a)(5). Thus, other than as discussed herein, granting the relief sought herein would likely affect only the timing, and not the amount, of payment of the Prepetition Employee Obligations to the extent they constitute priority claims.

34.     The Debtors submit that payment of prepetition Wages and salary claims and the other Prepetition Employee Obligations are made in the ordinary course of business. Even if they

---

[5]     For the purposes of the priority treatment of wages, salaries, and related benefits under Bankruptcy Code section 507(a)(4), courts recognize that individuals who are "independent contractors" are entitled to the same priority as "employees." *See, e.g., In re Corcoran*, 2010 Bankr. LEXIS 4721, at *2-3 (Bankr. D. Haw. Dec. 16, 2010) (" . . . Congress has steadily broadened the scope of the 'wage priority' provisions, in part expressly to overrule court decisions that independent contractors were not entitled to priority. . . . Recent cases hold that independent contractors can assert wage priority claims."); *In re Wang Lab.*, 164 B.R. 404, 408 (Bankr. D. Mass. 1994) ("the term '"wages' [is intended by Congress] to include compensation paid to [all natural] persons, whether employees or independent contractors").

are not, this Court is empowered under section 363 of the Bankruptcy Code to authorize the Debtors to expend funds outside the ordinary course of business. 11 U.S.C. § 363. In order to obtain approval for the use of estate assets outside the ordinary course of business, a debtor must articulate a valid business justification for the requested use. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989). Payment of prepetition wage and salary claims to preserve and protect a debtor's assets, maximize the value of its estate, and maintain positive employee morale is a sufficient business justification for such an authorization. *See id.* at 175. Accordingly, this Court should grant the requested relief under section 363 of the Bankruptcy Code.

35.     Even if a particular claim is not entitled to priority, and the payments are found to be outside the ordinary course (which they are not), payment is nonetheless justified under section 105(a) of the Bankruptcy Code and the well-established "necessity of payment doctrine." Under the "necessity of payment doctrine" and section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of prepetition employee claims. *See, e.g., Miltenberger v. Logansport Ry. Co.*, 106 U.S. 286, 312 (1882) (stating that payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); see also *Gregg v. Metro. Tr. Co.*, 197 U.S. 183, 187 (1905) (stating that "the payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than the payment of any other class of previously incurred debts"); *In re Ionosphere Clubs, Inc.*, 98 B.R. at 175-76 (finding that payment of prepetition wages, salaries, reimbursable business expenses, and health benefits to active employees authorized).

36.     "The Supreme Court, the Third Circuit, and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999). The United States Court of Appeals for the Third Circuit recognized the "necessity of payment" doctrine in *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981). There, the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also Official Comm. Of Unsecured Creditors of Motor Coach Indus. Int'l, Inc. v. Motor Coach Indus. Int'l, Inc. (In re Motor Coach Indus. Int'l)*, No. 09-078-SLR, 2009 U.S. Dist. LEXIS 10024, at *9 (D. Del. Feb. 10, 2009) (denying a stay pending appeal on the grounds that there is not a serious basis to challenge the doctrine of necessity in the Third Circuit); *In re Just for Feet, Inc.*, 242 B.R. at 824-25 (noting that the Third Circuit permits debtors to pay prepetition claims that are essential to continued operation of business).

37.     Given the limited number of Employees remaining, the Debtors' ability to maximize the value of their estates depends, in large part, upon the motivation and continued retention of the Employees. Any disruption from Employee resignations or lack of morale could have significant negative impact on the Debtors' efforts to complete the wind down and liquidation of the Debtors' businesses and distribute their remaining assets. Retaining the limited number of Employees is critical to minimizing the disruption caused by the bankruptcy filing and maximize the value of Debtors' estates. Accordingly, it is critical that the Debtors be authorized to honor their Prepetition Employee Obligations during and after the Interim Period, subject to the limitations described herein.

38.     Moreover, the Debtors, operating their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries with a "duty to protect and conserve property in its possession for the benefit of creditors." *In re Marvel Entm't Grp.*, 140 F.3d 463, 474 (3d Cir. 1998). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate". *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

39.     Pursuant to this Motion, the Debtors are also seeking the entry of a Final Order authorizing the Debtors to pay amounts due under any Prepetition Employee Obligations. As discussed in further detail herein, the Debtors believe that the programs and benefits described herein are an integral part of the aggregate compensation package for Employees. The eligible Employees play a critical role in preserving and maximizing the value of the Debtors' remaining assets. As such, failure to pay the Prepetition Employee Obligations in the ordinary course of business would negatively affect the morale and productivity of the Debtors' Employees and would undoubtedly impair the Debtors' ability to maximize the value of their estates in these Chapter 11 Cases.

40.     For all the reasons previously set forth herein, the Debtors submit that payment of the Prepetition Employee Obligations and the continuation of the specified related employment policies and programs are necessary to the success of the Debtors' orderly restructuring and should be authorized by this Court.

## II.    Payment of the Employee Withholdings Is Appropriate Under Section 541 of Bankruptcy Code Because Such Funds Are Not Property of the Debtors' Estates

41.     A portion of the Prepetition Employee Obligations constitute funds held in trust for payment to third parties. The payment of the Employee Withholdings, including Deductions and Employer Payroll Taxes, will not prejudice the Debtors' estates because such withholdings are held in trust for the benefit of the related payees and, thus, do not constitute property of the

Debtors' estates under section 541 of the Bankruptcy Code. See 11 U.S.C. § 541(d); *Begier v. IRS*, 496 U.S. 53, 58–59 (1990) ("Because the debtor does not own an equitable interest in the property he holds in trust for another, that interest is not 'property of the estate.'"). Further, failure to pay these amounts could subject the Debtors and their officers and directors to liability. *See, e.g., Quattrone Accountants, Inc. v. IRS*, 895 F.2d 921, 926 (3d Cir. 1990) (finding that an officer of the debtor corporation was personally liable for the debtors' tax liabilities, and noting that the officer's liability was entirely separate and distinct from debtor's liability, even though the liability stemmed from the same withholding taxes); *see also* 26 U.S.C. § 6672(a) ("Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to . . . pay over such tax . . . shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over."). Accordingly, the Debtors should be permitted to pay all obligations related to Employee Withholdings, including Deductions and Employer Payroll Taxes.

### III.    Cause Exists to Authorize the Debtors' Financial Institutions to Honor Electronic Fund Transfers

42.    The Debtors also request that all applicable banks and other financial institutions be authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all Payments made by the Debtors related to Prepetition Employee Obligations, so long as sufficient funds are available in the applicable accounts to make the Payments.

43.    The Debtors represent that they have sufficient availability of funds to pay the amounts described herein in the ordinary course of business by virtue of existing cash reserves. Also, under the Debtors' existing cash management system, the Debtors represent that wire and other electronic bank transfer requests can be readily identified as relating to an authorized

17

payment made on account of Prepetition Employee Obligations. Accordingly, the Debtors believe

that wire and electronic bank transfer requests, other than those relating to authorized payments,

will not be honored inadvertently and that all applicable financial institutions should be authorized

when requested by the Debtors, to receive, process, honor, and pay any and all fund transfer

requests made by the Debtors related to Prepetition Employee Obligations so long as sufficient

funds are available in the applicable accounts to make the payments. Any such financial institution

may rely on the representations of the Debtors as to which wire or electronic bank transfers are

made and authorized to be paid in accordance with this Motion without any duty of further inquiry

and without liability for following the Debtors' instructions.

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

44.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after

the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."

Fed. R. Bankr. P. 6003.  Immediate and irreparable harm exists where the absence of relief would

impair a debtor's ability to reorganize or threaten the debtor's future as a going concern.  Failure

to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases

could hinder the Debtors' ability to maintain the value of its assets as it completes its wind down

and liquidation.  For the reasons discussed herein, the relief requested is necessary in order for the

Debtors to operate their businesses in the ordinary course and maximize the value of their estates

for the benefit of all stakeholders.  Accordingly, the Debtors submits that they have satisfied the

"immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief

requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

45.     To implement the foregoing, the Debtors request that the Court enter an order

providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the

Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

## **RESERVATION OF RIGHTS**

46.     Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **NOTICE**

47.     No creditors' committee, trustee or examiner has been appointed in this Chapter 11 Case.  Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the United States Department of Justice; (d) the United States Attorney for the District

of Delaware; (e) the California Department of Financial Protection and Innovation; (f) the Federal Deposit Insurance Corporation; (g) the Federal Reserve Board of Governors; (h) the parties identified on the Debtors' list of 20 largest unsecured creditors; (i) counsel for the Ad Hoc Preferred Stockholder Group; and (j) if not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within forty-eight (48) hours of the entry of an order with respect to this Motion, the Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

**<u>NO PRIOR REQUEST</u>**

48.     No prior request for the relief sought herein has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Debtors respectfully request that the Court enter the Orders and grant such other and further relief as is appropriate under the circumstances.

Dated: September 18, 2024
      Wilmington, Delaware

      */s/ Paul N. Heath*
      **RICHARDS, LAYTON & FINGER, P.A.**
      Paul N. Heath (No. 3704)
      Michael J. Merchant (No. 3854)
      David T. Queroli (No. 6318)
      Emily R. Mathews (No. 6866)
      One Rodney Square
      920 North King Street
      Wilmington, DE 19801
      Telephone:  (302) 651-7700
      Facsimile:  (302) 651-7701
      Email: heath@rlf.com
             merchant@rlf.com
             queroli@rlf.com
             mathews@rlf.com

      - and -

      **CRAVATH, SWAINE & MOORE LLP**
      George E. Zobitz (*pro hac vice* pending)
      Paul H. Zumbro (*pro hac vice* pending)
      Alexander Gerten (*pro hac vice* pending)
      Two Manhattan West
      375 Ninth Avenue
      New York, NY 10001
      Telephone:  (212) 474-1000
      Facsimile:  (212) 474-3700
      Email:  jzobitz@cravath.com
             pzumbro@cravath.com
             agerten@cravath.com

      *Proposed Attorneys for the*
      *Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **SILVERGATE CAPITAL CORPORATION,** *et al.*[1] | Case No. _____ (__) |
| **Debtors.** | Re: Docket No. ____ |
| | **(Jointly Administered)** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO**
**(A) PAY PREPETITION WAGES AND COMPENSATION, FEES, WITHHOLDINGS,**
**AND TAXES; (B) CONTINUE CERTAIN EMPLOYEE BENEFIT PROGRAMS; (C)**
**CONTINUE CERTAIN HEALTH AND INSURANCE BENEFIT PROGRAMS; AND (II)**
**GRANTING OTHER RELATED RELIEF**

Upon the motion (the "Motion") of the Debtors for entry of an interim order (this "Interim Order") pursuant to sections 105(a), 363, 507(a), 541, 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, (I) authorizing, but not directing, the Debtors, in their sole discretion, to (a) pending entry of a Final Order, pay and/or otherwise honor, as applicable, Prepetition Employee Obligations, and (b) pursuant to the Final Order, continue to honor and pay all other Prepetition Employee Obligations in the ordinary course of business during the Chapter 11 Cases; and (II) granting other related relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion and the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Interim Order; and upon the record herein; and after due deliberation thereon; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.       The Motion is granted on an interim basis as set forth herein.

2.       The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on _____, 2024, at__:__ .m (prevailing Eastern Time). On or before __:__ .m. (prevailing Eastern Time) on _____, 2024, any objections or responses to entry of a final order on the Motion shall be filed with the Court and served on: (a) the Debtors, 4225 Executive Square, Suite 600, La Jolla, CA 92037; (b) proposed counsel for the Debtors, (i) Cravath, Swaine and Moore, 375 Ninth Avenue, New York, NY 10001, Attn: Paul Zumbro (pzumbro@cravath.com), Jed Zobitz (jzobitz@cravath.com) and Alexander Gerten (agerten@cravath.com), (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Paul N. Heath (heath@rlf.com), Michael J. Merchant (merchant@rlf.com) and David T. Queroli (queroli@rlf.com) and (iii) the Office of the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Benjamin Hackman (benjamin.a.hackman@usdoj.gov), (iv) counsel to the Ad Hoc Preferred Stockholder Group, Milbank LLP, 55 Hudson Yards, New York,

NY 10001, Attn: Andrew Leblanc and Lauren Doyle (aleblanc@milbank.com; ldoyle@milbank.com), (v) local counsel to the Ad Hoc Preferred Stockholder Group, Potter Anderson & Corroon LLP, 1313 N Market Street, 6th Floor, Wilmington, DE 19801, Attn: L. Katherine Good (kgood@potteranderson.com) and Christopher M. Samis (csamis@potteranderson.com), and (vi) counsel to any official committee appointed in these Chapter 11 Cases, (collectively, the "Notice Parties").

3.      The Debtors, including through AlphaStaff, are authorized, but not directed, to pay and/or honor, in their sole discretion, the Prepetition Employee Obligations in an aggregate amount of no more than $55,500 (the "Interim Amount"); provided, however, that, during the Interim Period, no current or former Employee may receive payment on account of the Prepetition Employee Obligations of amounts in excess of the limits provided for by sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code pursuant to this Interim Order, except that the Debtors are authorized, but not directed, during the Interim Period to honor all PTO obligations in the ordinary course of the Debtors' business, solely to the extent required by applicable nonbankruptcy law and in consultation with the Ad Hoc Preferred Stockholder Group, without regard to the Priority Cap.

4.      The Debtors, including through AlphaStaff, are authorized, but not directed, in their sole discretion, to maintain, honor, and administer the Employee Benefit Programs and Health and Insurance Benefit Programs in the ordinary course of business and to pay any and all amounts due thereunder in the ordinary course of business without regard to the date that any such rights, benefits or obligations accrued (subject to the limitations set forth in ¶ 2 hereof); provided, however, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Prepetition Employee Obligation (including, policies, plans, programs, practices, and procedures) under section 365(a) of the Bankruptcy Code.

5.      The Debtors shall not enter into any new contractual or other arrangements to pay any severance, retention or bonus amounts to Employees without the consent, not to be unreasonably withheld, of the Ad Hoc Preferred Stockholder Group.  The Debtors shall not make payments under any existing retention or bonus plan without the consent of the Ad Hoc Preferred Stockholder Group.  The Debtors shall be authorized to pay in the ordinary course of business Severance amounts solely to the extent required under applicable non-bankruptcy law, in consultation with the Ad Hoc Preferred Stockholder Group.

6.      Nothing in this Interim Order shall be construed as approving any transfer pursuant to section 503(c) of the Bankruptcy Code. No payment to any Employee may be made pursuant to this Interim Order to the extent that such payment is a transfer in derogation of section 503(c) of the Bankruptcy Code. For the avoidance of doubt, this Interim Order does not implicitly or explicitly approve any bonus plan, incentive plan, or other plan to the extent subject to section 503(c) of the Bankruptcy Code.

7.      The Debtors, including through AlphaStaff, are authorized, but not directed, to pay all Employee Withholding Obligations and unremitted Employer Payroll Taxes as and when such obligations are due, in their sole discretion. The Debtors, including through AlphaStaff, may remit any and all amounts withheld from Employees, including Social Security, FICA, federal and state income taxes, garnishments, health care payments, other insurance premiums, retirement fund withholding, and other types of withholding, whether these amounts relate to the period prior to the date of the Debtors' Chapter 11 Cases or subsequent thereto.

8.      The Debtors are authorized, but not directed, in their sole discretion, to pay postpetition Board Fees in the ordinary course of business in accordance with prepetition practice.

4

9.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with this Motion.

10.      All applicable banks and financial institutions (collectively, the "Banks") are authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "Payments"), on account of the Prepetition Employee Obligations, whether such Payments were submitted before, on, or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such Payments. Each of the Banks is authorized to rely on any directions and representations of the Debtors as to which Payments should be honored and paid in respect of the Prepetition Employee Obligations pursuant to the Motion and this Interim Order, and any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Interim Order. The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may have been inadvertently dishonored or rejected.

11.      All payments made in accordance with this Interim Order shall be made in accordance with the Case Budget (as defined in the Restructuring Support Agreement).

12.      Subject to section 503(c) of the Bankruptcy Code, the Debtors are otherwise authorized to manage their workforce and Employee compensation in the ordinary course of business, in the exercise of their business judgment, and in compliance with all non-bankruptcy laws applicable to their Employee relationships in each applicable jurisdiction.

13.     Nothing in this Interim Order shall authorize the Debtors to pay any Prepetition Employee Obligation to any insider, as such term is defined in 11 U.S.C. § 101(31), in excess of the Priority Cap.

14.     The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

15.     The requirement of Bankruptcy Rule 6004(a) is waived.

16.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) 7062, 9014 or otherwise, this Interim Order shall be immediately effective and enforceable upon its entry.

17.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

RLF1 31513434v.1

**Exhibit B**

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| **SILVERGATE CAPITAL CORPORATION,** *et al.*[1] | Case No. _____ (__) |
| **Debtors.** | Re: Docket No. ____ |
| | **(Jointly Administered)** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES AND COMPENSATION, FEES WITHHOLDINGS, AND TAXES; (B) CONTINUE CERTAIN EMPLOYEE BENEFIT PROGRAMS; (C) CONTINUE CERTAIN HEALTH AND INSURANCE BENEFITS; AND (II) GRANTING OTHER RELATED RELIEF**

Upon the motion (the "Motion") of the Debtors for entry of a final order (this "Final Order") (I) authorizing, but not directing, the Debtors to (a) pay and/or otherwise honor, as applicable, Prepetition Employee Obligations, and (b) continue to honor and pay all other Prepetition Employee Obligations in the ordinary course of business during the Chapter 11 Cases; and (II) granting other related relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion and the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Final Order; and upon the record herein; and after due deliberation thereon; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted on an as set forth herein.

2.      The Debtors, including through AlphaStaff, are authorized, but not directed, to pay and/or honor, in their sole discretion, the Prepetition Employee Obligations in the ordinary course of the Debtors' business, and all fees related to and associated with the foregoing, as such obligations become due and payable in an aggregate amount not to exceed $55,500 (inclusive of the Interim Amount).

3.      The Debtors, including through AlphaStaff, are authorized, but not directed, in their sole discretion, to maintain, honor, and administer the Employee Benefit Programs and Health and Insurance Benefit Programs in the ordinary course of business and to pay any and all amounts due thereunder in the ordinary course of business without regard to the date that any such rights, benefits or obligations accrued (subject to the limitations set forth in ¶ 2 hereof); provided, however, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Prepetition Employee Obligation (including, policies, plans, programs, practices, and procedures) under section 365(a) of the Bankruptcy Code.

4.      The Debtors are authorized, but not directed to honor all PTO obligations in the ordinary course of the Debtors' business, solely to the extent required by applicable non-bankruptcy law and in consultation with the Ad Hoc Preferred Stockholder Group, without regard to the Priority Cap

5.      The Debtors shall not enter into any new contractual or other arrangements to pay any severance, retention or bonus amounts to Employees without the consent, not to be unreasonably withheld, of the Ad Hoc Preferred Stockholder Group.  The Debtors shall not make payments under any existing retention or bonus plan without the consent of the Ad Hoc Preferred Stockholder Group.  The Debtors shall be authorized to pay in the ordinary course of business Severance amounts solely to the extent required under applicable non-bankruptcy law, in consultation with the Ad Hoc Preferred Stockholder Group.

6.      The Debtors, including through AlphaStaff, are authorized, but not directed, to pay all Employee Withholding Obligations and unremitted Employer Payroll Taxes as and when such obligations are due, in their sole discretion. The Debtors, including through AlphaStaff, may remit any and all amounts withheld from Employees, including Social Security, FICA, federal and state income taxes, garnishments, health care payments, other insurance premiums, retirement fund withholding, and other types of withholding, whether these amounts relate to the period prior to the date of the Debtors' Chapter 11 Cases or subsequent thereto.

7.      The Debtors are authorized, but not directed, in their sole discretion, to pay postpetition Board Fees in the ordinary course of business in accordance with prepetition practice.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with this Motion.

RLF1 31513434v.1

9.     All applicable banks and financial institutions (collectively, the "<u>Banks</u>") are authorized and directed, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay any and all checks, drafts, and other forms of payment, including fund transfers (collectively, the "<u>Payments</u>"), on account of the Prepetition Employee Obligations, whether such Payments were submitted before, on, or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such Payments. Each of the Banks is authorized to rely on any directions and representations of the Debtors as to which Payments should be honored and paid in respect of the Prepetition Employee Obligations pursuant to the Motion and this Final Order, and any such Bank shall not have any liability to any party for relying on such directions or representations by the Debtors as provided in this Final Order. The Debtors are authorized to issue new postpetition checks or effect new postpetition fund transfers or other new postpetition Payments to replace any checks, drafts, and other forms of payment, including fund transfers, which may have been inadvertently dishonored or rejected.

10.    All payments made in accordance with this Final Order shall be made in accordance with the Case Budget (as defined in the Restructuring Support Agreement).

11.    Subject to section 503(c) of the Bankruptcy Code, the Debtors are otherwise authorized to manage their workforce and Employee compensation in the ordinary course of business, in the exercise of their business judgment, and in compliance with all non-bankruptcy laws applicable to their Employee relationships in each applicable jurisdiction.

12.    Nothing in this Final Order shall authorize the Debtors to pay any Prepetition Employee Obligation to any insider, as such term is defined in 11 U.S.C. § 101(31), in excess of the Priority Cap.

13.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with this Motion.

14.     The requirement of Bankruptcy Rule 6004(a) is waived.

15.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h) 7062, 9014 or otherwise, this Final Order shall be immediately effective and enforceable upon its entry.

16.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

RLF1 31513434v.1