## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **SILVERGATE CAPITAL CORPORATION,** *et al.*[1] | **Case No. _____ (__)** |
| **Debtors.** | **(Joint Administration Requested)** |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) EXTENDING THE TIME TO COMPLY WITH SECTION 345(B), (C) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (D) MAINTAIN EXISTING BUSINESS FORMS AND (E) CONTINUE CERTAIN INTERCOMPANY TRANSACTIONS; (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

respectfully state as follows in support of this motion (this "Motion"):

### RELIEF REQUESTED

1. By this Motion, the Debtors request entry of interim and final orders, substantially

in the forms attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order"),

(i) authorizing, but not directing, the Debtors to maintain their current Cash Management System,

(ii) extending the time for the Debtors to comply with Section 345(b) of the Bankruptcy Code (as

defined herein), (iii) authorizing the Debtors to honor certain prepetition obligations related to their

Cash Management System (as defined herein), (iv) authorizing the Debtors to maintain existing

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

Business Forms (as defined herein), (v) authorizing the Debtors to continue ordinary-course Intercompany Transactions (as defined herein); and (vi) granting related relief.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent under 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgment in connection herewith consistent with Article III of the United States Constitution. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The predicates for the relief requested by this Motion are sections 105(a), 345, 363, and 503 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 9013-1(a).

## BACKGROUND

### I.      Overview

4.      On September 17, 2024 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  The Debtors have filed a separate procedural motion requesting that the Chapter 11 Cases be jointly administered.

5.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No request for

the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no committees have been appointed or designated.

6.    Additional information regarding the Debtors and these Chapter 11 Cases, including the Debtors' business, operations, capital structure, financial condition and the reasons for and objectives of these Chapter 11 Cases is set forth in the *Declaration of Elaine Hetrick in Support of First Day Motions and Related Relief* (the "First Day Declaration")[2], filed contemporaneously herewith and fully incorporated herein by reference.

**II.    The Debtors' Cash Management System**

7.    In the ordinary course of business, Silvergate Capital Corporation (the "Parent") maintains a cash management system (the "Cash Management System") utilizing its bank account to periodically receive from and disburse funds to Silvergate Liquidation Corporation (the "Subsidiary"). These arrangements are generally governed by the Affiliate Services Agreement (the "Affiliate Services Agreement") entered into on April 27, 2018 by and among the Parent, the Subsidiary and non-debtors Silvergate Capital Trust I and Silvergate Capital Trust II, pursuant to which funds of the Debtors are used to pay AlphaStaff, a professional employer organization (PEO) that jointly employs, together with the Subsidiary, and runs payroll for the Debtors' 11 employees, and other expenses, including vendor payments, in connection with the Debtors' day-to-day operations. The Parent also routinely disburses minimal funds to Spring Valley Lots, LLC.

8.    The Debtors seek to continue these arrangements post-petition in order to minimize the disruption caused by the bankruptcy filing and maximize the value of its estate. In order to avoid disruption during this critical phase of the Chapter 11 Cases, the Debtors request authority

---

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

to maintain their current Cash Management System post-petition in the ordinary course of business in a manner consistent with the Debtors' pre-bankruptcy practices, subject to any orders of this Court.

9.      The Debtors currently maintain, and will continue to maintain, detailed and accurate accounting records reflecting all transfers of funds, both intercompany and otherwise. The Debtors' cash management procedures are ordinary, usual and essential to the Debtors' day-to-day operations. The procedures are also similar to those used by other similarly situated corporate enterprises and provide significant benefits to the Debtors, including the ability to: (i) accurately and immediately report receipts and expenditures; (ii) control corporate funds centrally; and (iii) ensure the availability of funds when necessary. In order to lessen the disruption caused by the bankruptcy filing and maximize the value of its estate, it is vital that the Debtors maintain their current system of managing cash and their existing Bank Accounts (as defined below).

III.    **The Debtors' Bank Accounts and Compliance with U.S. Trustee Guidelines and Section 345(b) of the Bankruptcy Code**

10.     As of the Petition Date, the Debtors have seven bank accounts (collectively, the "Bank Accounts").  As further set forth in the table below, the Bank Accounts are maintained at Vista Bank, Partners Bank of California ("Partners Bank") and the Federal Home Loan Bank of San Francisco ("FHLB") (the "Banks").

11.     Certain accounts (the "IntraFi Accounts") are subject to an *ICS Deposit Placement Agreement* between Silvergate Capital Corporation or Silvergate Liquidation Corporation, as applicable, and Partners Bank. Cash deposited in the IntraFi Accounts is swept and then deposited into demand deposit accounts at multiple participating banks in the IntraFi network, up to an amount of $250,000 per bank account. Each of the participating banks in the IntraFi network is FDIC insured, so that all of the funds in the primary interest-bearing account are protected within

4

FDIC limits, as none of the individual deposits at any participating institution exceeds $250,000 at any given time. Approximately $160 million of the Debtors' $164 million in cash are held in the IntraFi Accounts provided through IntraFi Network LLC ("IntraFi").[3]  The Debtors maintain immediate access to the funds swept into the IntraFi network.  From time to time, funds may be transferred back into the operating account to satisfy any disbursement needs.

12.    The functions of the Bank Accounts are described in the following table:

| Bank Account | Balance[4] | Description |
|---|---|---|
| FHLB (Account x0048)<br><br>*Silvergate Liquidation Corporation* | $114.15 | This account is maintained at FHLB and is an interest bearing account. It is used by the Debtors as a settlement account for securities activities. Silvergate Liquidation Corporation intends to close this account after receiving any final distributions from securities it previously owed. |
| Partners Bank (Account x3733)<br><br>*Silvergate Capital Corporation* | $0 | This money market account is maintained at Partners Bank and is an interest bearing account. If the Debtors experience substantial inflows of cash, they would use this account to maintain FDIC insurance for the funds. |
| Partners Bank (Account x3725)<br><br>*Silvergate Liquidation Corporation* | $2,868,729.33 | This money market account is maintained at Partners Bank and is an interest bearing account. If the Debtors experience substantial inflows of cash, they would use this account to maintain FDIC insurance for the funds. |
| Partners Bank IntraFi (Account x3725)<br><br>*Silvergate Liquidation Corporation* | $72,126,894.43 | This account is maintained at Partners Bank and is an IntraFi Account. It is an interest bearing account. |
| Partners Bank (Account x4415)<br><br>*Silvergate Capital Corporation* | $513,348.66 | This checking account is maintained at Partners Bank. The account is used for payment of accounts payable, payroll and taxes. |

---

[3] Balances as of September 17, 2024.

[4] Balances as of September 17, 2024.

| | | |
|---|---|---|
| Partners Bank IntraFi (Account x4415)<br><br>*Silvergate Capital Corporation* | $48,824,854.45 | This account is maintained at Partners Bank and is an IntraFi Account. It is an interest bearing account. |
| Partners Bank (Account x4423)<br><br>*Silvergate Liquidation Corporation* | $21,575.28 | This checking account is maintained at Partners Bank. The account is used for payment of accounts payable and payroll. |
| Partners Bank IntraFi (Account x4423)<br><br>*Silvergate Liquidation Corporation* | $38,746,867.25 | This account is maintained at Partners Bank and is an IntraFi Account. It is the primary interest bearing account. |
| Vista Bank (Account x6364)<br><br>*Silvergate Capital Corporation* | $696.50 | This checking account is maintained at Vista Bank. |
| Vista Bank (Account x6232)<br><br>*Silvergate Liquidation Corporation* | $916.32 | This checking account is maintained at Vista Bank. |

13.    The *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (the "U.S. Trustee Guidelines") generally require chapter 11 debtors to, among other things, close all existing bank accounts and deposit all estate funds into an account with an authorized depository that agrees to comply with the requirements of the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"). Vista Bank and Partners Bank are FDIC insured but are not party to a Uniform Depository Agreement (a "UDA") with the U.S. Trustee. However, the Debtors believe that they can maintain the Bank Accounts at these Banks without jeopardizing any creditors or interest holders during the extension period requested herein with respect to the Debtors' compliance with Bankruptcy Code section 345(b) (the "Extension Period"). The IntraFi Accounts at Partners Bank provide the Debtors with additional security due to the increased number of deposits subject to FDIC insurance. The Debtors believe that any funds deposited in the Bank Accounts will be secure during the Extension Period.

14.    The Debtors' Bank Accounts are integral to their Cash Management System and operations. Prior to July 8, 2024, when Silvergate Liquidation Corporation returned its banking

charter to the California Department of Financial Protection and Innovation, both it and the Parent were subject to regulatory restrictions that made it impracticable to transfer their Bank Accounts to banks party to a UDA (an "Authorized Depository Bank").  Additionally, the Debtors conducted an analysis on the feasibility of moving their Bank Accounts to an Authorized Depository Bank and concluded it was not feasible without significant disruptions that would delay these Chapter 11 Cases and harm the Debtors' estates and their creditors. Therefore, the Debtors respectfully submit that cause exists to permit the Debtors to utilize their existing Bank Accounts.

## IV.   Credit Cards

15.    As part of the Cash Management System, the Debtors maintain a credit card through American Express (the "Credit Card"). The Credit Card is primarily used for travel, monthly software subscriptions and incidental items. The Credit Card is an integral part of the Debtors' cash management and account functions. The ability of the Debtors to use the Credit Card on a go-forward basis is essential to the continued operation of the Debtors' business and the corporate administration thereof. Accordingly, the Debtors' inability to maintain the Credit Card would result in unnecessary hardship to the continued operation of the Debtors' business. The Debtors seek authorization to honor all Credit Card obligations in the ordinary course of business on a post-petition basis. The Debtors only owe minimal obligations on the Credit Card as of the Petition Date. The Debtors, therefore, request authority to make timely payments in the ordinary course of business on account of any charges that were made via the Credit Card both prior to and after the Petition Date.

## V.   The Debtors' Bank Fees

16.    In the ordinary course of business, the Banks charge, and the Debtors pay, honor or allow deductions from the Bank Accounts for, certain service charges, fees and other costs and expenses associated with maintaining the account in accordance with the applicable agreement or

7

schedule of fees applicable to the Bank Accounts (collectively, the "Bank Fees"), which are *de minimus* amounts. On average, the Debtors incur less than $200 per month in Bank Fees.

## VI.    The Debtors' Business Forms

17.    The Debtors use certain business forms including, but not limited to, letterhead, purchase orders and invoices and bank check stock that existed immediately prior to the Petition Date (collectively, the "Business Forms") in the ordinary course of business. The Debtors seek to continue to use its existing Business Forms and checks without reference to the Debtors' status as chapter 11 debtors in possession, *provided that* once the Debtors' existing check stock, if any, has been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; *provided further that*, with respect to checks that the Debtors or their agents print themselves, the Debtors or their agents shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such checks within ten days after the date of entry of the Interim Order.

## VII.    Intercompany Transactions

18.    As described above, the Cash Management System and the Bank Accounts are utilized in large part for the transfer of funds between the Parent, the Subsidiary, and Spring Valley Lots, LLC in order to maintain operations (the "Intercompany Transactions").  The Intercompany Transactions may result in intercompany receivables and payables and are made to either (a) reimburse certain Debtors for various expenditures associated with their business or (b) fund certain Debtors in anticipation of such expenditures. As discussed above, the Partners Bank accounts are the Debtors' current main operating accounts and are where substantially all the cash in the Cash Management System is held and wired or electronically transferred in and out of.

19.    The Debtors' ability to engage in Intercompany Transactions is essential to the operation of the Debtors' business. The Debtors rely on Intercompany Transactions to pay

8

AlphaStaff, pay vendors, fund certain benefits, pay insurance premiums and other payments arising in the ordinary course of business.  The Debtors track all Intercompany Transactions through their accounting system. If the Intercompany Transactions were to be discontinued, the Cash Management System and the Debtor's operations would be substantially disrupted to the detriment of the Debtors, their estates and their creditors. To lessen the disruption caused by these Chapter 11 Cases and to maximize the value of the Debtors' estates, it is essential that the Debtors be allowed to continue engage in Intercompany Transactions post-petition consistent with its pre-petition practices.

## BASIS FOR RELIEF REQUESTED

### I.    The Court Should Authorize the Debtors to Maintain Their Existing Cash Management System

20.    Section 363(c)(1) of the Bankruptcy Code authorizes a debtor to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). The purpose of this section is to provide a debtor with flexibility to engage in ordinary transactions required to operate its business without excessive oversight by its creditors or the court. *See In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets.") (citations omitted); *In re Vision Metals, Inc.*, 325. B.R. 138, 145 (Bankr. D. Del. 2005) (same). Courts treat requests for authority to continue to use existing cash management systems as a relatively "simple matter," and have recognized that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys. Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 997 F.2d 1039 (3d Cir. 1993);

*In re Collins & Aikman Corp.*, 401 B.R. 900, 902 (Bankr. E.D. Mich. 2009) (characterizing the debtors' continued use of a cash management system as critical to operations and necessary to efficiently and effectively operate large and complex business operations). As a result, courts have concluded that the requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas, 997 F.2d at 1061*; *cf. In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (observing that a cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

21.     Courts in the Third Circuit also frequently authorize the continuation of a debtor's prepetition cash management system. *See, e.g., In re Express, Inc.*, No. 24-10831 (KBO) (Bankr. D. Del. May 15, 2024) (authorizing the use of existing cash management system); *In re Number Holdings, Inc.*, No. 24-10719 (JKS) (Bankr. D. Del. May. 7, 2024) (same); *In re Icon Aircraft, Inc.*, No. 24-10703 (CTG) (Bankr. D. Del. May 6, 2024) (same); *In re Casa Systems, Inc.*, No. 24-10695 (KBO) (Bankr. D. Del. Apr. 25, 2024) (same); *In re Zymergen Inc.*, No. 23-11661 (KBO) (Bankr. D. Del. Oct. 26, 2023) (same).

22.     Additionally, the Court may rely on its equitable powers to grant the requested relief. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Therefore, it is within the Court's equitable power under section 105(a) of the Bankruptcy Code to approve the continued use of the Cash Management System as requested herein.

23.     The Debtors respectfully submit that under the circumstances, the maintenance of its Cash Management System in substantially the same form as it existed prior to the Petition Date, including the maintenance of the Debtors' existing bank accounts, checks and business forms, as well as the payment of Bank Fees, is in the best interests of the Debtors, their estates, creditors and

other stakeholders. Avoiding the unnecessary distractions that inevitably would be associated with any substantial changes to the Cash Management System will facilitate the Debtors' efforts to maximize the value of its estate for the benefit of all stakeholders.

## II.    The Court Should Grant the Debtors an Extension to Comply with Bankruptcy Code Section 345(b)

24.    The U.S. Trustee Guidelines require chapter 11 debtors, among other things, to: (i) close all existing bank accounts and open new debtor-in-possession bank accounts; (ii) establish one debtor-in-possession account for all estate monies required for the payment of taxes, including payroll taxes; (iii) maintain a separate debtor-in-possession account for cash collateral; and (iv) obtain checks bearing the designation "debtor-in-possession," the bankruptcy case number, and the type of account for all debtor-in-possession checking accounts. These requirements are designed to provide a clear line of demarcation between a debtor's pre-petition and post-petition transactions, and operations and prevent the inadvertent post-petition payment of pre-petition claims.

25.    Further, section 345(a) of the Bankruptcy Code authorizes a debtor in possession to make deposits or investments of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code provides that the estate must require from the entity with which the money is deposited or invested a bond in favor of the United States secured by the undertaking of an adequate corporate surety, "unless the court for cause orders otherwise." *Id.* § 345(b).

26.     Congress recognized that strict compliance with the requirements of section 345(b) of the Bankruptcy Code in large chapter 11 cases such as these is not only unnecessary, but may indeed be inconsistent with section 345(a) of the Bankruptcy Code, which permits a debtor in possession to make such investments of money of the estate "as will yield the maximum reasonable net return on such money." Thus, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) of the Bankruptcy Code to provide that its strict investment requirements may be waived or modified if the Court so orders "for cause." 140 Cong. Rec. H10767 (daily ed. Oct. 4, 1994) (statement of Rep. Brooks).

27.     Because of the Cash Management System that the Debtors have in place for the transfer and distribution of funds, which ties into the Debtors' existing corporate accounting, enforcement of these provisions of the U.S. Trustee Guidelines during the Chapter 11 Cases would disrupt the Debtors' ability to efficiently administer the Chapter 11 Cases. Instead, permitting the Debtors to use its existing Bank Accounts and Cash Management System is in the best interest of the Debtors' estates, their creditors, and other interested parties. At this early stage of the Chapter 11 Cases, it is critical that the Debtors are able to centrally coordinate and consolidate management of cash to seamlessly allow for ordinary course Intercompany Transactions to continue. Through the Cash Management System and the Bank Accounts, the Debtors are (a) able to effectively and efficiently collect, transfer, and disburse funds as needed, (b) efficiently monitor, and control and track the movement of cash and (c) comply with applicable regulations regarding their operations and the operations of the Subsidiary. The Debtors will work closely with the Banks to ensure that appropriate procedures are in place so that checks issued prior to the Petition Date, but presented after the Petition Date, will not be honored absent approval from the Court. The Debtors will also maintain records of all transfers— intercompany or otherwise—within the Cash Management

12

System so that all transfers and transactions will be documented in their books and records to the same extent such information was maintained by the Debtors prior to the Petition Date.

28.     Adopting new cash management systems would be expensive, would create unnecessary administrative burdens, and would delay and disrupt the Debtors' focus on bringing about an efficient and successful conclusion to its bankruptcy case. Under such circumstances, it would be a waste of the Debtors' limited resources to require a new cash management system and would distract management from pursuing its liquidation effort.  Consequently, maintenance of the existing cash management system is in the best interests of the Debtors, their estates, and all creditors and other stakeholders.

29.     Conversely, maintenance of the Bank Accounts and Cash Management System at the present time would avoid delays in the payment of necessary expenses and will ensure a smooth transition into chapter 11 without the inconvenience, cost, confusion and delay associated with transferring cash management operations to a new account. By allowing the continued use of its existing Bank Accounts and Cash Management System, the Debtors will have the unimpeded cash flow necessary to maximize the value of the Debtor's estate.

30.     To the extent any of the Debtors' Bank Accounts are not in compliance with section 345(b) of the Bankruptcy Code or any of the U.S. Trustee Guidelines, the Debtors request a 30-day (or such longer period as the U.S. Trustee may agree) extension of time to address any questions that the U.S. Trustee may have regarding the Cash Management System and, should the U.S. Trustee have concerns regarding the Bank Accounts, to make such arrangements as are acceptable to the U.S Trustee (without prejudice to the Debtors' right to seek further modifications or extensions of time).

31513356v.2

### III.     The Court Should Authorize the Debtors to Continue Using Debt, Wire and ACH Transactions is Warranted

31.     The Debtors request that the Court grant further relief from the U.S. Trustee Guidelines to the extent that they require the Debtors to make all disbursements by check. The Debtors conduct a large number of transactions on a daily basis through ACH transfers and other similar methods. If the Debtors' ability to conduct transactions by debit, wire, ACH transfer, or other similar methods is impaired, the Debtors' day-to-day activities may be unnecessarily disrupted, and the estates will incur additional costs. The Debtors maintain records of all electronic disbursements and are able to account for such payments the same as if they were made by check. Therefore, the Debtors submit that authorizing the continuation of using debit, wire, and ACH transfers is warranted.

### IV.     The Court Should Authorize the Debtors to Honor Certain Prepetition Obligations Related to the Cash Management System

32.     Pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, the Debtors seek authority, in their discretion, to (i) pay or reimburse the Bank Fees in the ordinary course of business for any Bank's claim arising prior to, on, or after the Petition Date, and (ii) make timely payments in the ordinary course of business on account of any charges that were made via the Credit Card both prior to and after the Petition Date, if any.

33.     Numerous courts have recognized that payments to prepetition creditors are appropriate pursuant to section 105(a) of the Bankruptcy Code under the "doctrine of necessity" or the "necessity of payment" rule where such payments are necessary to the continued operation of the debtor's business. *See, e.g., In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (noting that the doctrine of necessity is necessary to carry out the provisions of the bankruptcy code because debtors in possession are fiduciaries of the estate)*; See, e.g., Ionosphere Clubs*, 98 B.R. at 176*; In re Lehigh & New England Ry Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (holding that

courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *Ionosphere Clubs,* 98 B.R. at 175–76 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.,* 106 U.S. 286 (1882)). Moreover, at least one court has recognized instances when a debtor's fiduciary duty can "only be fulfilled by the preplan satisfaction of a prepetition claim." *In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

34.     Therefore, the Debtors respectfully request that the Court authorize the Debtors to (i) pay any pre-petition Bank Fees on account of prepetition transactions that are charged post-petition and authorize the Banks to continue to charge the Debtors the Bank Fees, and (ii) pay any Credit Card charges incurred pre-petition that remain due and owing, if any.

35.     The Debtors submit that the relief requested herein is appropriate and well within this Court's authority. Allowing the Debtors to maintain its pre-petition Bank Accounts and Cash Management System at the present time will minimize the negative effect of these Chapter 11 Cases on the Debtors' business affairs without violating the policies underlying the Bankruptcy Code. Doing so will enable the Debtors to transition into bankruptcy in a manner that facilitates the Debtors' expeditious reorganization and maximizes the value for its estate and for the benefit of all stakeholders.

## V.     The Court Should Authorize the Debtors to Continue to Use Existing Business Forms and Checks

36.     To minimize expenses to their estates, the Debtors also seek authorization to continue using the Business Forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession, *provided that* once the Debtors' existing check stock, if any, has been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks;

*provided further that*, with respect to checks that the Debtors or their agents print themselves, the Debtors or their agents shall begin printing the "Debtor in Possession" legend and the bankruptcy case number on such checks within ten days after the date of entry of the Interim Order. The Debtors submit that the authorization to use its existing Business Forms will facilitate a smooth and orderly transition into bankruptcy and minimize disruption to the Debtors' business affairs without offending the policies underlying the Bankruptcy Code. Changing correspondence and Business Forms now would be expensive, unnecessary, and burdensome to the Debtors' estates, disruptive to the Debtors' business operations, and would not confer any benefit upon the Debtors, their estates, their creditors, or those conducting business with the Debtors.

37.     In addition, the U.S. Trustee Guidelines generally require debtors in possession to obtain checks that bear the designation "debtor in possession" on such checks. Pursuant to Local Rule 2015-2, the Debtors request that it be authorized to continue using its existing Business Forms, substantially in the forms existing immediately before the Petition Date, without reference to its status as a debtor-in-possession. Such relief would avoid disruption of the Cash Management System and unnecessary expense. Courts in this district have routinely allowed debtors to use their prepetition business forms without the "Debtor in Possession" designation. *See, e.g., In re Revitalid Pharmaceutical Corp.*, No. 23-11704 (BLS) (Bankr. D. Del. Nov. 6, 2023) (authorizing the use of existing business forms); *In re Capstone Green Energy Corp.*, No. 23-11634 (LSS) (Bankr. D. Del. Nov. 2, 2023) (same); *In re High Valley Investments, LLC*, No. 23-11616 (TMH) (Bankr. D. Del. Nov. 1, 2023) (same); *In re Zymergen Inc.*, No. 23-11661 (KBO) (Bankr. D. Del. Oct. 26, 2023) (same); *In re Pegasus Home Fashions, Inc.*, 23-11235 (MFW) (Bankr. D. Del. Sept. 25, 2023) (same); *In re Mallinckrodt PLC*, No. 23-11258 (JTD) (Bankr. D. Del. Sept. 15, 2023)

(same); *In re Yellow Corporation*, 23-11069 (CTG) (Bankr. D. Del. Sept. 14, 2023) (same); *In re DeCurtis Holdings, LLC*, No. 23-10548 (JKS) (Bankr. D. Del. May 23, 2023) (same).

**VI.    The Court Should Authorize the Debtors to Continue Intercompany Transactions in the Ordinary Course and Grant Administrative Priority Status for Post-Petition Intercompany Claims**

38.    The Debtors' funds move through the Cash Management System as described above. Intercompany Transactions are made between and among the Parent, the Subsidiary, and Spring Valley Lots, LLC including distributions of funds from the Parent to the Subsidiary, in the ordinary course, as part of the Cash Management System, and pursuant to the Affiliate Services Agreement. The Debtors track all Intercompany Transactions in their accounting system and can ascertain, trace, and account for all Intercompany Transactions.

39.    Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among similar enterprises, the Debtors believe the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, therefore, do not require the Court's approval. However, precisely because of the routine use of Intercompany Transactions by the Debtors, the Intercompany Transactions are essential to the uninterrupted operation of the Debtors' business and the preservation of the value of the Debtors' estates. Accordingly, out of an abundance of caution, the Debtors are seeking express authority, but not direction, to engage in Intercompany Transactions post-petition consistent with their pre-petition practices.

40.    If the Intercompany Transactions were discontinued, the Cash Management System and related administrative controls would be materially disrupted to the Debtors' and the estates' detriment, given the Parent's and its estate's connection to the Banks and its dependence on its systems and employees for ordinary course operations. Accordingly, the Debtors respectfully submit that the continued performance of the Intercompany Transactions is in the best interests of

31513356v.2

the Debtors' estates and creditors, and, therefore, the Debtors should be permitted to continue undertaking such Intercompany Transactions. Since these transactions represent extensions of intercompany credit made in the ordinary course of business, the Debtors also respectfully request the authority to continue conducting the Intercompany Transactions in the ordinary course of business.

41.    If Intercompany Transactions are accorded administrative priority expense status, each entity utilizing funds flowing through the Cash Management System should continue to bear ultimate repayment responsibility for such ordinary course transactions, thereby ensuring that entity separateness is maintained and the Debtors only bear their actual costs of administering these Chapter 11 Cases. Thus, to ensure the Debtors will not, at the expense of its creditors, fund the operations of another entity, the Debtors respectfully request that, pursuant to sections 503(b)(1) and 364 of the Bankruptcy Code, all intercompany claims arising after the Petition Date (collectively, "Intercompany Claims"), be accorded administrative priority expense status.

42.    Bankruptcy Courts in the Third Circuit and other circuits have granted administrative expense status to postpetition intercompany claims in similar cases. *See, e.g.*, *In re Revitalid Pharmaceutical Corp.*, No. 23-11704 (BLS) (Bankr. D. Del. Nov. 6, 2023) (providing for administrative expense status for intercompany claims arising after the petition date); *In re Capstone Green Energy Corp.*, No. 23-11634 (LSS) (Bankr. D. Del. Nov. 2, 2023) (same); *In re High Valley Investments, LLC*, No. 23-11616 (TMH) (Bankr. D. Del. Nov. 1, 2023) (same); *In re Pegasus Home Fashions, Inc.*, 23-11235 (MFW) (Bankr. D. Del. Sept. 25, 2023) (same); *In re Mallinckrodt PLC*, No. 23-11258 (JTD) (Bankr. D. Del. Sept. 15, 2023) (same).

**THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED**

43.    Bankruptcy Rule 6003 empowers the Court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable

harm." Fed. R. Bankr. P. 6003.  Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. Failure to receive such authorization and other relief during the first 21 days of these Chapter 11 Cases could hinder the Debtors' ability to maintain appropriate cash management policies.  For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate its businesses in the ordinary course and maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors submits that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

44.    To implement the foregoing, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

45.    Nothing contained herein or any actions taken pursuant to such relief requested is intended or shall be construed as:  (a) an admission as to the amount of, basis for, or validity of any claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion or any order granting the relief requested by this Motion or any order granting the relief requested by this Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property

19

of the Debtors' estates; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) that may be satisfied pursuant to the relief requested in this Motion are valid, and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## **NOTICE**

46.     No creditors' committee, trustee or examiner has been appointed in these Chapter 11 Cases.  Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) the Internal Revenue Service; (c) the United States Department of Justice; (d) the United States Attorney for the District of Delaware; (e) the California Department of Financial Protection and Innovation; (f) the Federal Deposit Insurance Corporation; (g) the Federal Reserve Board of Governors; (h) the parties identified on the Debtors' list of 20 largest unsecured creditors; (i) counsel for the Ad Hoc Preferred Stockholder Group; and (j) if not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002. As this Motion is seeking "first day" relief, within forty-eight (48) hours of the entry of an order with respect to this Motion, the Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be provided.

## **NO PRIOR REQUEST**

47.     No prior request for the relief sought herein has been made to this or any other court.

31513356v.2

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Interim Order and the Proposed Final Order and grant such other and further relief as is appropriate under the circumstances.

Dated: September 18, 2024
       Wilmington, Delaware

*/s/ Paul N. Heath*
**RICHARDS, LAYTON & FINGER, P.A.**
Paul N. Heath (No. 3704)
Michael J. Merchant (No. 3854)
David T. Queroli (No. 6318)
Emily R. Mathews (No. 6866)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email: heath@rlf.com
      merchant@rlf.com
      queroli@rlf.com
      mathews@rlf.com


- and -

**CRAVATH, SWAINE & MOORE LLP**
George E. Zobitz (*pro hac vice* pending)
Paul H. Zumbro (*pro hac vice* pending)
Alexander Gerten (*pro hac vice* pending)
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
Email:  jzobitz@cravath.com
      pzumbro@cravath.com
      agerten@cravath.com


*Proposed Attorneys for the*
*Debtors and Debtors in Possession*

**<u>Exhibit A</u>**

**Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | **Chapter 11** |
| **SILVERGATE CAPITAL CORPORATION,** et al.[1] | **Case No. _____ (__)** |
| **Debtors.** | **Re: Docket No. ____** |
|  | **(Jointly Administered)** |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO
OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) EXTENDING THE TIME TO
COMPLY WITH SECTION 345(B), (C) HONOR CERTAIN PREPETITION
OBLIGATIONS RELATED THERETO, (D) MAINTAIN EXISTING BUSINESS FORMS
AND (E) CONTINUE CERTAIN INTERCOMPANY TRANSACTIONS; (II) GRANTING
RELATED RELIEF**

Upon the motion (the "Motion") of the Debtors for entry of an interim order (this " Interim

Order") (i) authorizing, but not directing, the Debtors to (a) continue to operate their cash

management system, (b) extending the time to comply with section 345(b), (c) honor certain

prepetition obligations related thereto, (d) maintain existing business forms and (e) continue

certain intercompany transactions; and (ii) granting related relief, all as more fully set forth in the

Motion; and the Court having reviewed the Motion and the First Day Declaration; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

District Court for the District of Delaware, dated February 29, 2012; and the Court having found

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Order; and upon the record herein; and after due deliberation thereon; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted on an interim basis as set forth herein.

2.      The final hearing (the "<u>Final Hearing</u>") on the Motion shall be held on _____, 2024, at__:__ .m (prevailing Eastern Time). On or before __:__ .m. (prevailing Eastern Time) on _____, 2024, any objections or responses to entry of a final order on the Motion shall be filed with the Court and served on: (a) the Debtors, 4225 Executive Square, Suite 600, La Jolla, CA 92037; (b) proposed counsel for the Debtors, (i) Cravath, Swaine and Moore, 375 Ninth Avenue, New York, NY 10001, Attn: Paul Zumbro (pzumbro@cravath.com), Jed Zobitz (jzobitz@cravath.com) and Alexander Gerten (agerten@cravath.com), (ii) Richards, Layton & Finger, One Rodney Square, 920 North King Street, Wilmington, DE 19801, Attn: Paul N. Heath (heath@rlf.com), Michael J. Merchant (merchant@rlf.com) and David T. Queroli (queroli@rlf.com) and (iii) the Office of the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Benjamin Hackman (benjamin.a.hackman@usdoj.gov), (iv) counsel to the Ad Hoc Preferred Stockholder Group, Milbank LLP, 55 Hudson Yards, New York, NY 10001, Attn: Andrew Leblanc and Lauren Doyle (aleblanc@milbank.com;

2

ldoyle@milbank.com); (v) local counsel to the Ad Hoc Preferred Stockholder Group, Potter Anderson & Corroon LLP, 1313 N Market Street, 6th Floor, Wilmington, DE 19801, Attn: L. Katherine Good (kgood@potteranderson.com) and Christopher M. Samis (csamis@potteranderson.com); and (vi) counsel to any official committee appointed in these Chapter 11 Cases, (collectively, the "Notice Parties").

3.      The Debtors are authorized, but not directed to continue to use the Cash Management System in the ordinary course of business.

4.      To the extent any Bank Accounts existing as of the Petition Date are not in compliance with section 345(b) of the Bankruptcy Code and any provision of the U.S. Trustee Guidelines, the Debtors shall have thirty (30) days from the date of entry of this Interim Order (the "Extension Period") (or such additional time to which the U.S. Trustee may agree) to either bring such Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court; provided that nothing in the foregoing shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent such an arrangement cannot be reached within that time period (or such other period as agreed to by the Debtors and the U.S. Trustee). For Banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors shall use their good-faith efforts to cause the Banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee as soon as possible after the date of this Interim Order.

5.      The Debtors are further authorized, but not directed to, during the Extension Period: (i) continue to use, with the same account number, the Bank Accounts in existence on the Petition Date, and need not comply with certain of the U.S. Trustee Guidelines relating to bank accounts,

31513356v.2

including, without limitation, the requirement to establish separate accounts for cash collateral and/or tax payments; (ii) treat the Bank Accounts for all purposes as an account of the Debtors as debtors in possession; (iii) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including, without limitation, by check, ACH transfer, wire transfer and other methods; (iv) pay the Bank Fees, including, without limitation, any undisputed Bank Fees regardless of whether such Bank Fees arose before, on or after the Petition Date; and (v) otherwise perform its obligations under the documents governing the Bank Accounts.

6.      The Debtors are authorized to continue using the Credit Card and to pay in the ordinary course of business any amounts owing prepetition or post-petition on account of the Credit Card.

7.      The Banks are authorized and directed without the need for further order of this Court to in the ordinary course of business: (a) continue to administer, service, and maintain, the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the ordinary course; (b) receive, process, honor, and pay any and all checks, drafts, wires, ACH transfers, electronic fund transfers, payment orders, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Disbursements") on account of a post-petition claim or a prepetition claim for which payment has been specifically authorized by this Court; and (c) debit the Bank Accounts for: (i) all undisputed prepetition bank and service fees outstanding as of the date hereof, if any, owed to the Banks for the maintenance of the Cash Management System; (ii) all checks drawn on the Bank Accounts which were cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; and (iii) all checks or other items deposited in one of the Bank Accounts with such Bank prior to the Petition Date, which have not been dishonored or returned unpaid for any reason, together with

4

any fees and costs in connection therewith, to the same extent the applicable Debtor was responsible for such items prior to the Petition Date.

8.      Subject to the provisions of this Interim Order, the Banks are authorized to rely on the representations of the Debtors as to which Disbursements are authorized to be honored or dishonored, whether or not such Disbursements are dated, drawn, or issued prior to, on, or subsequent to the Petition Date, and whether or not the Banks believe the payment is authorized by an order of the Court. The Banks shall not be deemed in violation of this Interim Order and shall have no liability for relying on such representations by the Debtors, without any duty of further inquiry, or honoring any Disbursement that is subject to this Interim Order either (a) at the direction of the Debtors to honor such prepetition Disbursement, (b) in the good faith belief that this Court has authorized such prepetition Disbursement to be honored, or (c) as a result of an innocent mistake made despite implementation of reasonable item-handling procedures. To the extent that the Debtors direct that any Disbursement be dishonored or any Bank inadvertently dishonors any Disbursements, the Debtors may issue replacement Disbursements consistent with the orders of this Court.

9.      To the extent any other order is entered by this Court authorizing the Banks to honor checks, drafts, ACH transfers, or other electronic funds transfers or any other withdrawals made, drawn, or issued in payment of prepetition claims, the obligation to honor such items shall be subject to the terms and conditions of this Interim Order.

10.     The Debtors are authorized to use, in their present form, all Business Forms and other documents related to the Bank Accounts, without reference to its status as debtor in possession; provided, however, that if the Debtors exhaust their existing check stock during the pendency of these Chapter 11 Cases, the Debtors will order checks with a notation indicating the

designation "debtor in possession" and the case number of these Chapter 11 Cases; provided further, that with respect to checks and other Business Forms which the Debtors or their agents print themselves, the Debtors or their agents shall print "debtor in possession" or "DIP" and the case number for the Chapter 11 Cases on such items within ten days of entry of this Interim Order.

11.     The relief granted in this Interim Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened.

12.     The Debtors are authorized to open any new Bank Accounts or close the existing Bank Accounts as it may deem necessary and appropriate; *provided* that the Debtors shall give notice within five business days to the U.S. Trustee and any statutory committee appointed in these Chapter 11 Cases of the opening or closing of any Bank Account and such opening or closing shall be timely indicated on the Debtors' monthly operating reports; *provided, further*, that the Debtors shall open any such new Bank Account at banks that have executed a UDA with the U.S. Trustee or at such banks that are willing to immediately execute such an agreement.

13.     With regard to the Banks that are party to a Uniform Depository Agreement with the U.S. Trustee, as soon as possible after the entry of this Interim Order, the Debtors shall (a) contact each Bank, (b) provide each Bank with each of the Debtors' tax identification numbers and the jointly administered case number, and (c) identify each of their Bank Accounts held at such Banks as being held by a debtor-in-possession in a bankruptcy case.

14.     The Debtors are authorized, but not directed to continue performing Intercompany Transactions in the ordinary course of business on a post-petition basis.

31513356v.2

15.     The Debtors will maintain records in the ordinary course reflecting transfers of cash, if any, including Intercompany Transactions, so as to permit all transactions to be ascertainable.

16.     All Intercompany Claims arising after the Petition Date shall be identified as such and accorded administrative expense priority in accordance with sections 364(b), 503(b), and 507(a)(2) of the Bankruptcy Code.

17.     In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash in the ordinary course so that all transactions (including Intercompany Transactions) may be readily ascertained, traced, recorded properly, and distinguished between prepetition and post-petition transactions.

18.     In the event that the Debtors open or close any Bank Accounts, such opening or closing shall be timely indicated on the Debtors' monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee and counsel to any statutory committee appointed in the Chapter 11 Cases within ten (10) business days.

19.     Notwithstanding the Debtors' authorized use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each particular Debtor, regardless of which entity remits payment for those disbursements.

20.     As soon as possible after entry of this Interim Order, the Debtors shall serve a copy of this Interim Order on the Banks.

21.     Nothing contained herein shall permit the Banks to terminate any cash management services.

31513356v.2

22.     Nothing contained herein shall permit the Debtors to make any intercompany loan(s) to any non-Debtor entities without further order of the Court.  The Debtors will not make any intercompany loans to non-Debtor entities without the consent, not to be unreasonably withheld, of the Ad Hoc Preferred Stockholder Group.

23.     The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

24.     The Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with any Bank Fees.

25.     Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtors that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

26.     The Debtors will consult with the Ad Hoc Preferred Stockholder Group in good faith regarding any changes to the Cash Management System, including Bank Accounts.

27.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

28.     The requirements set forth in Bankruptcy Rule 6003 are satisfied by the contents of the Motion.

29.     The requirement of Bankruptcy Rule 6004(a) is waived.

30.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise, this Order shall be immediately effective and enforceable upon its entry.

8

31.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

9

**Exhibit B**

**Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | **Chapter 11** |
| **SILVERGATE CAPITAL CORPORATION,** et al.[1] | **Case No. _____ (\_\_)** |
| | **Re: Docket No. \_\_\_\_** |
| **Debtors.** | **(Jointly Administered)** |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE TO OPERATE THEIR CASH MANAGEMENT SYSTEM, (B) EXTENDING THE TIME TO COMPLY WITH SECTION 345(B), (C) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (D) MAINTAIN EXISTING BUSINESS FORMS AND (E) CONTINUE CERTAIN INTERCOMPANY TRANSACTIONS; (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the Debtors for entry of a final order (this " Final Order") (i) authorizing, but not directing, the Debtors to (a) continue to operate their cash management system, (b) extending the time to comply with section 345(b), (c) honor certain prepetition obligations related thereto, (d) maintain existing business forms and (e) continue certain intercompany transactions; and (ii) granting related relief, all as more fully set forth in the Motion; and the Court having reviewed the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and the Court having found that this is a core proceeding

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Final Order; and upon the record herein; and after due deliberation thereon; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is granted on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed to continue to use the Cash Management System in the ordinary course of business.

3.      To the extent any Bank Accounts existing as of the Petition Date are not in compliance with section 345(b) of the Bankruptcy Code and any provision of the U.S. Trustee Guidelines, the Debtors shall have thirty (30) days from the date of entry of the Final Order (the "Extension Period") (or such additional time to which the U.S. Trustee may agree) to either bring such Bank Accounts into compliance with section 345(b) of the Bankruptcy Code or to make such other arrangements as are agreed to by the U.S. Trustee or approved by the Court; provided that nothing in the foregoing shall prevent the Debtors or the U.S. Trustee from seeking further relief from the Court to the extent such an arrangement cannot be reached within that time period (or such other period as agreed to by the Debtors and the U.S. Trustee). For banks at which the Debtors hold accounts that are not party to a Uniform Depository Agreement with the U.S. Trustee, the

2

Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the U.S. Trustee immediately after the date of this Final Order.

4.      The Debtors are further authorized, but not directed to, during the Extension Period: (i) continue to use, with the same account number, the Bank Accounts in existence on the Petition Date, and need not comply with certain of the U.S. Trustee Guidelines relating to bank accounts, including, without limitation, the requirement to establish separate accounts for cash collateral and/or tax payments; (ii) treat the Bank Accounts for all purposes as an account of the Debtors as debtors in possession; (iii) deposit funds in and withdraw funds from the Bank Accounts by all usual means, including, without limitation, by check, ACH transfer, wire transfer and other methods; (iv) pay the Bank Fees, including, without limitation, any undisputed Bank Fees regardless of whether such Bank Fees arose before, on or after the Petition Date; and (v) otherwise perform its obligations under the documents governing the Bank Accounts.

5.      The Debtors are authorized to continue using the Credit Card and to pay in the ordinary course of business any amounts owing prepetition or post-petition on account of the Credit Card.

6.      The Banks are authorized and directed without the need for further order of this Court to in the ordinary course of business: (a) continue to administer, service, and maintain, the Bank Accounts as such accounts were administered, serviced, and maintained prior to the Petition Date, without interruption and in the ordinary course; (b) receive, process, honor, and pay any and all checks, drafts, wires, ACH transfers, electronic fund transfers, payment orders, or other items presented, issued, or drawn on the Bank Accounts (collectively, the "Disbursements") on account of a post-petition claim or a prepetition claim for which payment has been specifically authorized by this Court; and (c) debit the Bank Accounts for: (i) all undisputed prepetition bank and service

31513356v.2

fees outstanding as of the date hereof, if any, owed to the Banks for the maintenance of the Cash Management System; (ii) all checks drawn on the Bank Accounts which were cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; and (iii) all checks or other items deposited in one of the Bank Accounts with such Bank prior to the Petition Date, which have not been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the applicable Debtor was responsible for such items prior to the Petition Date.

7.        Subject to the provisions of this Final Order, the Banks are authorized to rely on the representations of the Debtors as to which Disbursements are authorized to be honored or dishonored, whether or not such Disbursements are dated, drawn, or issued prior to, on, or subsequent to the Petition Date, and whether or not the Banks believe the payment is authorized by an order of the Court. The Banks shall not be deemed in violation of this Final Order and shall have no liability for relying on such representations by the Debtors, without any duty of further inquiry, or honoring any Disbursement that is subject to this Final Order either (a) at the direction of the Debtors to honor such prepetition Disbursement, (b) in the good faith belief that this Court has authorized such prepetition Disbursement to be honored, or (c) as a result of an innocent mistake made despite implementation of reasonable item-handling procedures. To the extent that the Debtors direct that any Disbursement be dishonored or any Bank inadvertently dishonors any Disbursements, the Debtors may issue replacement Disbursements consistent with the orders of this Court.

8.        To the extent any other order is entered by this Court authorizing the Banks to honor checks, drafts, ACH transfers, or other electronic funds transfers or any other withdrawals made,

drawn, or issued in payment of prepetition claims, the obligation to honor such items shall be subject to the terms and conditions of this Final Order.

9.      The Debtors are authorized to use, in their present form, all Business Forms and other documents related to the Bank Accounts, without reference to its status as debtor in possession; provided, however, that if the Debtors exhaust their existing check stock during the pendency of these Chapter 11 Cases, the Debtors will order checks with a notation indicating the designation "debtor in possession" and the case number of these Chapter 11 Cases; provided further, that with respect to checks and other Business Forms which the Debtors or their agents print themselves, the Debtors or their agents shall print "debtor in possession" or "DIP" and the case number for the Chapter 11 Cases on such items.

10.     The relief granted in this Final Order is extended to any new bank account opened by the Debtors after the date hereof, which account shall be deemed a Bank Account, and to the bank at which such account is opened.

11.     The Debtors are authorized to open any new Bank Accounts or close the existing Bank Accounts as it may deem necessary and appropriate; *provided* that the Debtors shall give notice within five business days to the U.S. Trustee and any statutory committee appointed in these Chapter 11 Cases of the opening or closing of any Bank Account and such opening or closing shall be timely indicated on the Debtors' monthly operating reports; *provided, further*, that the Debtors shall open any such new Bank Account at banks that have executed a UDA with the U.S. Trustee or at such banks that are willing to immediately execute such an agreement.

12.     With regard to the Banks that are party to a Uniform Depository Agreement with the U.S. Trustee, as soon as possible after the entry of this Final Order, the Debtors shall (a) contact each Bank, (b) provide each Bank with each of the Debtors' tax identification numbers and the

jointly administered case number, and (c) identify each of their Bank Accounts held at such Banks as being held by a debtor-in-possession in a bankruptcy case.

13.     The Debtors are authorized, but not directed to continue performing Intercompany Transactions in the ordinary course of business on a post-petition basis.

14.     The Debtors will maintain records in the ordinary course reflecting transfers of cash, if any, including Intercompany Transactions, so as to permit all transactions to be ascertainable.

15.     All Intercompany Claims arising after the Petition Date shall be identified as such and accorded administrative expense priority in accordance with sections 364(b), 503(b), and 507(a)(2) of the Bankruptcy Code.

16.     In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain records with respect to all transfers of cash in the ordinary course so that all transactions (including Intercompany Transactions) may be readily ascertained, traced, recorded properly, and distinguished between prepetition and post-petition transactions.

17.     In the event that the Debtors open or close any Bank Accounts, such opening or closing shall be timely indicated on the Debtors' monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee and counsel to any statutory committee appointed in the Chapter 11 Cases within ten (10) business days.

18.     Notwithstanding the Debtors' authorized use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each particular Debtor, regardless of which entity remits payment for those disbursements.

6

19.     As soon as possible after entry of this Final Order, the Debtors shall serve a copy of this Final Order on the Banks.

20.     Nothing contained herein shall permit the Banks to terminate any cash management services.

21.     The Debtors will not make any intercompany loans to non-Debtor entities without the consent, not to be unreasonably withheld, of the Ad Hoc Preferred Stockholder Group.

22.     The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

23.     The Debtors are authorized to issue post-petition checks, or to effect post-petition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these Chapter 11 Cases with respect to prepetition amounts owed in connection with any Bank Fees.

24.     Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of the Debtors that did not exist as of the Petition Date or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date.

25.     The Debtors will consult with the Ad Hoc Preferred Stockholder Group in good faith regarding any changes to the Cash Management System, including Bank Accounts.

26.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

27.     The requirement of Bankruptcy Rule 6004(a) is waived.

28.     Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 7062, 9014 or otherwise, this Final Order shall be immediately effective and enforceable upon its entry.

31513356v.2

29.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

31513356v.2