**THIS PROPOSED DISCLOSURE STATEMENT IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS OF THE PLAN MAY NOT BE SOLICITED UNTIL THE BANKRUPTCY COURT HAS APPROVED A DISCLOSURE STATEMENT. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT TO DATE. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT A SOLICITATION OF AN OFFER TO BUY ANY SECURITIES.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SILVERGATE CAPITAL CORPORATION, et al. [1] | Case No. _____ (__) |
| Debtors. | (Joint Administration Requested) |

## DISCLOSURE STATEMENT PURSUANT TO 11 U.S.C. § 1125 WITH RESPECT TO JOINT CHAPTER 11 PLAN OF SILVERGATE CAPITAL CORPORATION AND ITS AFFILIATED DEBTORS

George E. Zobitz (*pro hac vice* pending)
Paul H. Zumbro (*pro hac vice* pending)
Alexander Gerten (*pro hac vice* pending)
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, NY 10001
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
Email:    jzobitz@cravath.com
        pzumbro@cravath.com
        agerten@cravath.com

*Proposed Counsel and Co-Counsel*
*to the Debtors and Debtors in Possession*

Paul N. Heath (No. 3704)
Michael J. Merchant (No. 3854)
David T. Queroli (No. 6318)
Emily R. Mathews (No. 6866)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
Email:    heath@rlf.com
        merchant@rlf.com
        queroli@rlf.com
        mathews@rlf.com

Dated:  September 18, 2024
Wilmington, Delaware

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: Silvergate Capital Corporation (7337), Silvergate Liquidation Corporation (4449) and Spring Valley Lots, LLC (0474). The Debtors' mailing address is 4225 Executive Square, Suite 600, La Jolla, CA 92037.

# TABLE OF CONTENTS

ARTICLE I

          INTRODUCTION ........................................................................................5

A.          Definitions ...............................................................................................5

B.          Exhibits ...................................................................................................5

C.          Purpose of this Disclosure Statement ....................................................5

D.          Important Notices and Disclaimers ........................................................6

E.          Brief Overview of the Plan.....................................................................7

ARTICLE II

          OVERVIEW OF THE DEBTORS .............................................................8

A.          The Debtors' Background and Prepetition Business Operations .......................8

B.          The Debtors' Corporate Structure ........................................................10

C.          The Debtors' Assets ..............................................................................11

D.          The Debtors' Capital Structure.............................................................12

E.          The Debtors' Workforce and Facilities ................................................12

F.          The Debtors' Data Retention and Production Obligations...............................13

G.          Prepetition Litigation............................................................................13

H.          Circumstances Leading to the Commencement of the Chapter 11 Cases .........16

ARTICLE III

          OVERVIEW OF THE CHAPTER 11 CASES ...............................................17

A.          Commencement of the Chapter 11 Cases..............................................17

B.          First Day and Second Day Relief ..........................................................17

C.          Retention of Debtors' Chapter 11 Professionals ..................................18

D.          Schedules and Statements and Claims Bar Dates .............................................19

E.          Exclusivity.............................................................................................19

ARTICLE IV

          THE PLAN ...............................................................................................20

A.      Overview of the Plan..................................................................................20

B.      Unclassified Claims...................................................................................21

C.      Classification and Treatment Under the Plan...........................................24

D.      Acceptance or Rejection of the Plan; Effect of Rejection By One or More
        Classes of Claims or Interests ..................................................................33

E.      Means of Implementation of the Plan ......................................................34

F.      Liquidation Trust.......................................................................................39

G.      Provisions Regarding Distributions..........................................................46

H.      Procedures for Disputed Claims and Interests .........................................51

I.       Settlement, Release, Injunction, and Related Provisions .........................53

J.       Executory Contracts ..................................................................................57

K.      Conditions Precedent to Confirmation and the Effective Date ................60

L.      Modification of the Plan............................................................................61

M.     Effect of Confirmation ..............................................................................62

N.      Retention of Jurisdiction ...........................................................................62

ARTICLE V

        CERTAIN TAX CONSEQUENCES OF THE PLAN ...................................64

A.      Certain Tax Consequences to the Debtors ...............................................66

B.      Consequences for Holders of Allowed Preferred Stock Interests ....................66

C.      Tax Treatment of the Liquidation Trust and Liquidation Trust Beneficiaries ..67

D.      Information Reporting and Backup Withholding.............................................70

ARTICLE VI

        SOLICITATION AND VOTING PROCEDURES .........................................70

A.      Holders of Claims and Interests Entitled to Vote on the Plan...........................71

B.      Voting Record Date.......................................................................................71

C.      Solicitation Package .....................................................................................71

| | | |
|---|---|---|
| D. | Voting on the Plan | 72 |
| E. | Special Notice Concerning Releases Associated with Voting | 72 |
| **ARTICLE VII** | **RISK FACTORS TO CONSIDER BEFORE VOTING** | 75 |
| A. | Risk of Amendment, Waiver, Modification or Withdrawal of the Plan | 75 |
| B. | Parties May Object to the Plan's Classification of Claims and Interests | 75 |
| C. | The Debtors May Not Be Able to Obtain Confirmation of the Plan | 75 |
| D. | The Conditions Precedent to the Effective Date of the Plan May Not Occur | 75 |
| E. | Holders of Claims and Interests May Recover Less Than Projected | 76 |
| F. | The Allowed Amount of Claims May Differ from Current Estimates | 76 |
| G. | Risks Related to Income Taxation | 76 |
| H. | Certain Risks to Holders of Interests | 76 |
| I. | Litigation | 77 |
| **ARTICLE VIII** | **ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN** | 77 |
| A. | Dismissal | 77 |
| B. | Alternative Chapter 11 Plan. | 78 |
| **ARTICLE IX** | **CONFIRMATION OF THE PLAN** | 78 |
| A. | Acceptance of the Plan | 78 |
| B. | Best Interests Test | 79 |
| C. | Feasibility | 79 |
| D. | Confirmation Hearing and Plan Objection Deadline | 79 |
| E. | Payment of Statutory Fees | 81 |
| F. | Governing Law | 81 |
| G. | Notice of Entry of Confirmation Order and Relevant Dates | 81 |

H.          Revocation, Withdrawal or Non-Consummation of Plan ................................81

I.          Binding Effect ...........................................................................................82

J.          Severability of Plan Provisions .........................................................................82

K.          No Admissions ...........................................................................................82

L.          Time...........................................................................................................82

M.          Successors and Assigns .................................................................................82

N.          Conflict between Plan, Disclosure Statement and Plan Documents ................83

O.          Substantial Consummation.............................................................................83

P.          Plan Exhibits................................................................................................83

ARTICLE X
            CONCLUSION AND RECOMMENDATION ...............................................83

## **EXHIBITS**

**EXHIBIT A**: Plan

**EXHIBIT B**: Organizational Chart

**EXHIBIT C**: Liquidation Analysis

# ARTICLE I
# INTRODUCTION

This is the disclosure statement (the "Disclosure Statement") of Silvergate Capital Corporation ("SCC") and its affiliated debtors (collectively, the "Debtors" or the "Company"), in the above-captioned chapter 11 cases (collectively, the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), filed pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code") and in connection with the *Joint Chapter 11 Plan of Silvergate Capital Corporation and its Affiliated Debtors* (the "Plan"), a copy of which is annexed to this Disclosure Statement as **Exhibit A**. The Plan constitutes a separate chapter 11 plan for each Debtor; *provided that* the estates of the various Debtors shall be consolidated for the purposes of effectuating distributions under the Plan.

## A.    Definitions

Unless otherwise defined herein, capitalized terms used in this Disclosure Statement shall have the meanings ascribed to such terms in the Plan or as the context otherwise requires.

## B.    Exhibits

The following exhibits to this Disclosure Statement are incorporated as if fully set forth herein and made part of this Disclosure Statement:

- **Exhibit A** – Plan

- **Exhibit B** – Organizational Chart

- **Exhibit C** – Liquidation Analysis

## C.    Purpose of this Disclosure Statement

The purpose of this Disclosure Statement is to provide information that (i) summarizes the Plan, (ii) advises holders of Claims or Interests of their rights under the Plan, (iii) assists parties entitled to vote on the Plan in making informed decisions as to whether they should vote to accept or reject the Plan, and (iv) assists the Bankruptcy Court in determining whether the Plan complies with the provisions of chapter 11 of the Bankruptcy Code and should be confirmed.

By Order dated [●] [Docket No. [●]] (the "**Disclosure Statement Order**"), the Bankruptcy Court approved the Disclosure Statement finding, among other things, that it contains "adequate information," as that term is used in section 1125(a)(1) of the Bankruptcy Code. The Bankruptcy Court's approval of this Disclosure Statement is not an endorsement of the Plan.

The Debtors believe that confirmation and implementation of the Plan is in the best interests of the Debtors' estates, creditors, and equity interest holders. The Debtors urge that all persons entitled to vote on the Plan vote to accept the Plan.

**The Plan, pursuant to the Restructuring Support Agreement, is supported by the Ad Hoc Preferred Stockholder Group, which represents holders of approximately 63% of the**

Preferred Stock Interests, the sole class of Holders of Claims or Interests entitled to vote on the Plan.

     **D.**   <u>**Important Notices and Disclaimers**</u>

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN. PLEASE READ AND CAREFULLY CONSIDER THE ENTIRE DISCLOSURE STATEMENT, THE PLAN, AND ANY ATTACHMENTS, EXHIBITS, SUPPLEMENTS, AND ANNEXES RELATED TO THE PLAN BEFORE SUBMITTING BALLOTS IN RESPONSE TO SOLICITATION OF THE PLAN. THE INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION OR AMENDMENT. THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED PLAN AND RELATED DISCLOSURE STATEMENT.**

**THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION ("SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. THIS DISCLOSURE STATEMENT SUMMARIZES THE TERMS OF THE PLAN, BUT SUCH SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE ACTUAL TERMS AND PROVISIONS OF THE PLAN. TO THE EXTENT THERE ARE ANY INCONSISTENCIES BETWEEN THE PLAN AND THIS DISCLOSURE STATEMENT, THE TERMS OF THE PLAN SHALL CONTROL. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B) AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER APPLICABLE NON-BANKRUPTCY LAW. PERSONS TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS OF THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST, AND HOLDERS OF INTERESTS IN THE DEBTORS (INCLUDING THOSE HOLDERS OF CLAIMS OR INTERESTS WHO DID NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN.**

**IF THE PLAN IS NOT CONFIRMED, OR IS CONFIRMED BUT DOES NOT BECOME EFFECTIVE, THIS DISCLOSURE STATEMENT AND THE STATEMENTS CONTAINED HEREIN SHALL HAVE NO FORCE OR EFFECT. NEITHER THE**

DISCLOSURE STATEMENT NOR ANY STATEMENT CONTAINED HEREIN CONSTITUTES AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PERSON, NOR ARE THEY ADMISSIBLE IN ANY COURT OR LEGAL FORUM FOR ANY PURPOSE WHATSOEVER. NOTHING IN THIS DISCLOSURE STATEMENT SHALL BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTORS AND DEBTORS-IN-POSSESSION IN THESE CASES.

APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT OF THE FAIRNESS OR MERITS OF THE PLAN OR OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

HOLDERS OF CLAIMS OR INTERESTS SHOULD CAREFULLY READ AND CONSIDER THE PLAN AND THIS DISCLOSURE STATEMENT. EACH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, FINANCIAL AND TAX ADVISOR(S) WITH RESPECT TO MATTER CONCERNING THIS DISCLOSURE STATEMENT, THE PLAN, AND THE TRANSACTIONS CONTEMPLATED THEREBY.

BALLOTS FOR VOTING TO ACCEPT AND REJECT THE PLAN MUST BE RECEIVED <u>BY [[●] (PREVAILING EASTERN TIME) [●], 2024]</u>. THE HEARING TO CONSIDER CONFIRMATION OF THE PLAN IS SCHEDULED TO BE HELD ON [●] BEFORE THE HONORABLE [●].

The information contained in this Disclosure Statement has been obtained from the Debtors' books and records and from motions and other papers filed with the Bankruptcy Court by the Debtors. Reasonable efforts have been made to present accurate information and such information is believed to be correct as of the date hereof, unless otherwise specified. This Disclosure Statement is intended, among other things, to summarize the Plan and must be read in conjunction with the Plan and its exhibits.

### E.   <u>Brief Overview of the Plan</u>[2]

The Debtors' filed their Chapter 11 Cases, among other things, to expeditiously resolve all outstanding claims against them, recover value for their remaining non-cash assets and distribute funds to their stakeholders in accordance with their legal priorities. The Plan is consistent with these purposes. It provides a mechanism to resolve or reserve for Claims against the Debtors, the prompt distribution of the Debtors' Cash to creditors and holders of Preferred Stock Interests, and for the creation of a Liquidation Trust to fulfill the Debtors' remaining legal obligations and liquidate their remaining assets.

---

[2] This overview is qualified in its entirety by reference to the Plan. The treatment of Claims and Interests under the Plan is not intended to, and will not, waive, compromise, or limit any rights, claims, or causes of action if the Plan is not confirmed. You should read the Plan in its entirety before voting to accept or reject the Plan.

As further described in <u>Article IV</u> below, the Plan classifies all Claims and Interests, except for Administrative Claims, in accordance with section 1123(a)(1) of the Bankruptcy Code. The following table summarizes the classification and treatment of Claims and Interests under the Plan and is qualified in its entirety by reference to the full text of the Plan:

| Class | Claim / Interest | Status | Voting Rights |
|-------|------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Subordinated Note Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 5 | Intercompany Claims | Impaired / Unimpaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| 6 | Intercompany Interests | Impaired / Unimpaired | Not Entitled to Vote (Deemed to Accept or Deemed to Reject) |
| 7 | Preferred Stock Interests | Impaired | Entitled to Vote |
| 8 | Common Stock Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | Bhatia Litigation Class Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |

## ARTICLE II
## OVERVIEW OF THE DEBTORS

### A.    The Debtors' Background and Prepetition Business Operations

For several years, Silvergate Bank[3] was one of the leading banks providing services to the digital asset industry.  Silvergate Bank was able to secure some of the largest cryptocurrency-related businesses as customers due to its reputation as a trustworthy, regulated institution that welcomed digital asset customers.  Silvergate Bank rapidly grew in connection with the expansion of the digital asset ecosystem, with its deposits increasing from $1.8 billion at the end of 2019 to

---

[3] The entity formerly known as Silvergate Bank changed its name to Silvergate Liquidation Corporation on July 5, 2024 in connection with the return of its bank charter to the DFPI, at which time it legally ceased to be a "bank" and was no longer permitted to use the word "bank" in its corporate name.  In this Disclosure Statement, Silvergate Liquidation Corporation shall be referred to as "SLC" when describing its current operations and circumstances on and after July 5, 2024 and shall be referred to as "Silvergate Bank" when describing its historical operations and circumstances prior to July 5, 2024.

approximately $14.3 billion at the end of 2021. As of December 31, 2021, deposits from its 94 digital asset exchange customers represented approximately 58% of Silvergate Bank's overall deposits. Noninterest bearing deposits, substantially all of which were deposits from customers in the digital asset industry, totaled $14.2 billion (approximately 99.5% of total deposits) at December 31, 2021 and $13.4 billion (approximately 99.5% of total deposits) at June 30, 2022. During this period of growth in digital asset deposits, Silvergate Bank was subject to regular supervision by the Federal Deposit Insurance Corporation (the "**FDIC**") and the California Department of Financial Protection and Innovation (the "**DFPI**").

However, as the digital asset industry came under stress during 2022, Silvergate Bank's business also started to contract. In mid-2022, certain large digital asset investment funds and exchanges, including Three Arrows Capital, Voyager Digital Holdings and Celsius Network LLC, commenced formal insolvency proceedings, which had a contagion effect on the digital asset industry as a whole, including on the exchanges that represented a substantial portion of Silvergate Bank's depositor base.

Pressure on Silvergate Bank's business continued to build following the rapid collapse of FTX Trading Ltd. ("**FTX**") and Alameda Research LLC, as further troubles within the digital asset industry came to the forefront and continued to chill the crypto markets and generate increased regulatory scrutiny and restrictions on banks with a digital asset customer base. FTX and certain of its subsidiaries and affiliates filed for relief under chapter 11 of the Bankruptcy Code on November 11, 2022. Although Silvergate Bank possessed more than sufficient assets to cover its liabilities to depositors and had no lending or other business relationship with FTX beyond holding deposits and providing bank account services, perception of risk and fear of contagion, likely as a result of the string of cryptocurrency-related insolvency proceedings, led to substantial withdrawals of deposits from Silvergate Bank, with Silvergate Bank's non-interest bearing deposits falling to approximately $3.852 billion on December 31, 2022, compared to approximately $12.005 billion on September 30, 2022. The crisis of confidence across the digital asset industry, along with similar problems faced by banks across the country, caused a "run on the bank." Silvergate Bank was able to manage this bank run and pay all its depositors as they withdrew funds as a result of its liquidity risk management and planning.

Silvergate Bank's contraction in deposits was exacerbated by the general rise in interest rates in the economy at large. Faced with high inflation, in March 2022, the Federal Reserve raised the federal interest rate by 25 basis points, which was followed by several more interest rate hikes such that by the end of 2022, the federal funds rate was 4.5%. Silvergate Bank's non-interest bearing accounts were significantly less appealing for depositors in this higher interest rate environment. In addition, this general rise in interest rates drove down the value of Silvergate Bank's highly rated long-term bond investments, as even supposed safe haven investments held by Silvergate Bank such as treasury bonds, agency securities and municipal bonds fell significantly in value during 2022. As a result, Silvergate Bank realized substantial losses when it sold these securities to pay withdrawing depositors. Silvergate's consolidated business reported a net loss of $948.7 million for the year ended December 31, 2022 as compared to net income of $75.5 million for the year ended December 31, 2021, largely driven by sales of long-dated securities impaired by rising interest rates.

In light of Silvergate Bank's substantially reduced depositor base and realized losses on sales of long-dated securities, it began reducing the size of its operations to maintain cash liquidity and its ability to satisfy further deposit outflows. Despite the losses it had incurred, at the beginning of 2023, Silvergate Bank still held assets valued in excess of deposits and met its regulatory capital requirements.

On January 5, 2023, SCC and Silvergate Bank announced plans to restructure their business to account for the economic realities facing the digital asset industry, including reducing headcount by 200 employees (approximately 40% of their total number of employees at that time) and eliminating products such as Silvergate Bank's digital asset custody and certain cash management services that were no longer economical with a reduced depositor base.

After careful consideration of potential go-forward strategies, on March 8, 2023, the Debtors announced their intent to wind down operations and voluntarily liquidate Silvergate Bank.

On May 23, 2023, SCC and Silvergate Bank entered into a Cease and Desist Order (the "C&D Order") with the Supervisors that imposed prohibitions and other requirements on SCC and SLC. The C&D order required, among other terms, the use of SCC's financial and managerial resources to serve as a source of strength to Silvergate Bank, restrictions on dividends and other capital distributions by SCC and Silvergate Bank, the preservation of the Debtors' cash assets and the submission of, and adherence to, a plan of liquidation of Silvergate Bank approved by the Supervisors. Pursuant to its plan of liquidation, Silvergate Bank has wound down all its banking operations and has ceased to be a bank in any legal, regulatory or business sense. On July 1, 2024, the Debtors announced they had settled with the Federal Reserve for $43 million in full and final resolution of a Federal Reserve investigation of Silvergate Bank. Similarly, on July 1, 2024, the Debtors announced a settlement of $20 million with DFPI to fully and finally resolve the DFPI's related investigation. On July 5, 2024, the entity that was formerly known as Silvergate Bank changed its name to Silvergate Liquidation Corporation.

Following the wind down of Silvergate Bank's former banking business and with no current revenue generating business, the Debtors have been evaluating how to wind down their remaining affairs to enable them to distribute value to their stakeholders as expeditiously as possible in the order of their legal priorities. After discussion with their advisors, the Debtors filed their Chapter 11 Cases on September 17, 2024 with the intention of expeditiously resolving all outstanding claims against them, recovering value for their remaining non-cash assets and distributing funds to their stakeholders in accordance with their legal priorities.

## B.   The Debtors' Corporate Structure

The Debtors' corporate structure is comprised of the three entities that are Debtors in these Chapter 11 Cases (SCC; Silvergate Liquidation Corporation, a subsidiary of SCC which was formerly a California State-chartered bank known as Silvergate Bank; and Spring Valley Lots, LLC, a subsidiary of SLC) and two non-debtor Delaware Statutory Trusts (Silvergate Capital Trust I and Silvergate Capital Trust II) formed for the purpose of issuing the SC Trust I Preferred Securities and the SC Trust II Capital Securities, respectively. A corporate structure chart depicting the Debtors' overall ownership structure is attached hereto as **Exhibit B**.

C. **The Debtors' Assets**

As of the Petition Date, the Debtors' primary assets consisted of approximately $163.1 million in cash and cash equivalents.

The Debtors also possess intellectual property and other technology assets related to a blockchain-based payment network, which they purchased in January of 2022 from the Diem Group ("**Diem**"). A thorough marketing process for Diem was undertaken by the Company's former investment banker, Centerview Partners LLC ("**Centerview**"), which is a firm with substantial experience marketing financial technology assets. As part of the marketing process, Centerview contacted 53 strategic and financial parties that it believed might have interest in the Diem technology. Of those parties, 24 were provided with a non-disclosure agreement ("**NDA**") and "teaser" materials that communicated non-confidential information about the Diem technology. Six of the parties executed NDAs and received a technical, operational and legal presentation relating to Diem. Two of those parties participated in a meeting with Accenture (which acted as a technical advisor to the Company with respect to Diem) to discuss technical matters relating to Diem. Despite the large number of parties contacted, the Company did not receive any actionable proposals to sell the asset. Given the absence of a viable offer, the Company determined that it was unlikely that there would be value to be had from extending the marketing process. Therefore, the Company's Board of Directors decided to "mothball" the Diem asset on June 16, 2023. Taking this action reduced the cost of operating and maintaining the asset to a *de minimis* amount, while preserving the ability of the Company to sell the asset at some point in the future. In the event that no actionable proposals arise for the Diem assets prior to confirmation of the Plan, it is intended that the Diem assets would vest in the Liquidating Trust and the Liquidating Trustee would be empowered to sell these assets or abandon them in his or her business judgment.

Additionally, the Debtors possess claims and causes of action against third parties. These claims have uncertain value, and the Debtors intend to take appropriate action in these Chapter 11 Cases to assert, prosecute or vest such causes of action in a Liquidating Trust to maximize distributable value to holders of Claims and Interests in accordance with the Plan. These claims include proofs of claim filed by the Debtors in the FTX Trading Ltd. bankruptcy proceedings, any and all claims and causes of action against vendors and professional services firms providing BSA/AML compliance or audit services, including Verafin Inc. and RSM US LLP, and any and all claims and causes of action against any non-released current or former employee, officer or director, pending completion of investigation by the Special Investigations Committee (as defined below).

In addition, the Debtors believe that, as of July 31, 2024, they had federal NOL carryforwards in the amount of approximately $1,370,000,000, state NOL carryforwards in the amount of approximately $1,290,000,000 and certain other tax attributes. (collectively, the "**Tax Attributes**"). The Debtors have also continued to incur or accrue relevant federal and state Tax Attributes, including NOLs, since July 31, 2024. As the Debtors no longer possess a revenue-generating business, the Debtors to not believe that the realization of material value from their Tax Attributes is actionable.

The Debtors' D&O insurance program in effect from November 6, 2022 to November 6, 2024 are claims-made policies consisting of $25 million in total coverage under the Side ABC

policies ("**ABC Policies**"), and Side A DIC policies ("**Side A DIC Policies**) with an additional $15 million in excess coverage. The excess policies under both the ABC Policies and the Side A Policies follow the form of the primary policies. To date, $10 million has been paid under the ABC Policies, leaving $15 million of remaining coverage under the Side ABC policies and $15 million of coverage under the Side A DIC Policies.

### D.   The Debtors' Capital Structure

As of the Petition Date, the Debtors had outstanding funded debt of approximately $18,281,107 of principal plus accrued and unpaid interest (approximately $549,117 of which is attributable to capital provided by SCC) attributable to subordinated debentures ("Debentures"), consisting of (i) approximately $14,790,662 (principal plus accrued and unpaid interest) of Debentures issued under an indenture, dated as of July 16, 2001 (the "2001 Indenture") between SCC, as issuer, and The Bank of New York, a New York banking corporation, as trustee, and (ii) approximately $3,490,444 (principal plus accrued and unpaid interest) of Debentures issued under an indenture, dated as of January 27, 2005 (the "2005 Indenture" and together with the 2001 Indenture, the "Indentures") between SCC, as issuer, and Wilmington Trust Company, a Delaware banking corporation, as trustee.  The Debentures were issued in connection with "trust preferred securities" ("TruPS") in a series of transactions that were historically used by bank holding companies to take advantage of favorable regulatory, tax, and accounting treatment while allowing the bank holding companies to raise capital.

As of the Petition Date, there were 31,729,832 issued and outstanding shares of Class A Common Stock.  As of the Petition Date, there were 0 shares of Class B common stock issued and outstanding.  SCC's Articles of Incorporation, as in effect on the Petition Date, also authorize the issuance of up to 10,000,000 shares of 5.375% Fixed Rate Non-Cumulative Perpetual Preferred Stock, Series A (the "Preferred Stock").  On August 4, 2021, SCC issued 200,000 shares of the Preferred Stock, and issued and sold 8,000,000 depositary shares, each representing a 1/40th ownership interest in the 200,000 shares of Preferred Stock SCC had issued.  The Preferred Stock has a liquidation preference to the common stock of $1,000 per share of Preferred Stock, for a total liquidation preference of $200 million.  The Debtors expect that the distributions expected to be made under the Plan will not satisfy the Preferred Stock Liquidation Preference and that, therefore, no distribution will be made to Holders of Common Stock Interests.

### E.   The Debtors' Workforce and Facilities

As of the Petition Date, the Debtors have approximately 11 employees, serving a variety of corporate functions, who are jointly employed by SLC and AlphaStaff, Inc., a professional employer organization (PEO). In addition to its employees, the Debtors have three independent contractors who are retained by Apex Staffing and one additional independent contractor paid directly by the Debtors.[4]

The rapid contraction of the business of Silvergate Bank and the subsequent decision to wind down operations and voluntarily liquidate SLC has resulted in a significant downsizing of the Debtors' workforce. The employees and independent contractors remaining are those that the

---

[4]    All employee estimates in this paragraph are as of the date of filing of this Disclosure Statement.

Debtors have determined are necessary to complete the wind down and liquidation of the Debtors' businesses as efficiently as possible and distribute their remaining assets to stakeholders.

The Debtors' remaining employees are based in the Debtors' remaining office space in La Jolla, CA and remotely.

### F.   The Debtors' Data Retention and Production Obligations

Pursuant to the Consent Order entered into between the Commissioner of Financial Protection and Innovation of the DFPI and SCC and SLC on June 26, 2024, SCC is required to ensure that SLC's records are preserved and maintained in a form and accessible by the Commissioner of Financial Protection and Innovation, the Federal Reserve Board of Governors, law enforcement, and other state and federal regulators until July 8, 2031 (the "**Data Retention and Production Obligations**"). As described further in the Plan, on or prior to the Effective Date of the Plan, a reserve (the "**Data Retention and Production Reserve**"), which amount shall be determined by the Debtors and the Required Preferred Stockholders, will be formed to ensure the Liquidation Trustee has sufficient resources to comply with the Data Retention and Production Obligations. The Plan provides that the Debtors and Preferred Stockholders shall agree on the amount of the Data Retention and Production Reserve, which is currently unknown.

### G.   Prepetition Litigation

As of the Petition Date, the Debtors and/or their current and former directors and officers were party to numerous civil actions, including in various state and U.S. federal courts, and subjects of investigations by the government agencies (collectively, the "**Prepetition Litigation**"), as described below.

### 1.   Bhatia Litigation

On February 14, 2023, Soham Bhatia, on behalf of himself and other plaintiffs, filed a complaint in the U.S. District Court for the Northern District of California captioned *Bhatia et al. v. Silvergate Capital Corporation, Silvergate Bank and Lane*, asserting claims against SCC, Silvergate Bank and former CEO of Silvergate Bank, Alan J. Lane (the "**Bhatia Litigation**"). On the same day, two similar complaints were filed in the U.S. District Court for the Northern District of California captioned *Magleby v. Silvergate Bank and Silvergate Capital Corporation* and *Keane v. Silvergate Bank and Silvergate Capital* Corporation.  The three cases were consolidated, and defendants' motion to transfer the action to the Southern District of California was granted. This matter consists of a putative class action alleging that the defendants knew of and aided and abetted FTX's fraud and breaches of fiduciary duties by failing to establish and/or properly execute a due diligence program and prevent improper "misdirection" of billions of dollars of funds from FTX client accounts to Alameda Research LLC.  The Aiding and Abetting Action is currently stayed as against the Debtors due to the commencement of the Chapter 11 Cases.  The Debtors have reached an agreement on the material terms of a settlement as a class action with the plaintiffs in the Bhatia Litigation (the "**Bhatia Litigation Settlement**"), and intend to stipulate to relief from the automatic stay in order to seek approval in the U.S. District Court for the Southern District of California for the Bhatia Litigation Settlement. The settlement shall be subject to Bankruptcy Court approval under Bankruptcy Rule 9019. Pursuant to the Bhatia Litigation Settlement, the

Debtors will pay $10 million to a settlement fund (the "**Settlement Fund**") that will be applied to payment of class member claims, notice and administration expenses, service awards, and attorneys' fees and expenses.

## 2.  Word of God Fellowship Litigation

On June 14, 2023, Word of God Fellowship, Inc filed a complaint in the Superior Court of California, County of San Diego, captioned *Word of God Fellowship, Inc v. Silvergate Bank, Silvergate Capital Corporation, Alan J. Lane and Does 1 through 50*, asserting claims against SCC, Silvergate Bank and former CEO of Silvergate Bank, Alan J. Lane (the "**Word Of God Fellowship Litigation**") on a substantially similar basis as those claims asserted in the Bhatia Litigation on behalf of a single plaintiff, seeking damages no less than $25 million, the amount allegedly deposited in FTX by plaintiff through Silvergate Bank. Plaintiff Word of God Fellowship, Inc. is a class member in the Bhatia Litigation, but has previously stated it would opt out of any settlement of that case. On March 15, 2024, the court granted defendants' motion to stay and on September 11, 2024, plaintiff filed a petition for writ of mandate or other appropriate relief in the California Court of Appeal that seeks to compel the Superior Court to vacate its stay order. The Debtors believe the Word of God Fellowship Litigation is unmeritorious. The Word of God Fellowship Litigation is currently stayed as against the Debtors due to the commencement of the Chapter 11 Cases.

## 3.  Securities Litigation

On December 7, 2022, Steven Rosa, on behalf of himself and certain putative stockholders of SCC, filed a complaint in the U.S. District Court for the Southern District of California captioned *Rosa v. Silvergate Capital Corporation, Alan J. Lane and Antonio Martino*. Three similar securities class action cases were filed in the Southern District of California on December 10, 2022, January 10, 2023 and January 19, 2023, and were ultimately consolidated on January 18, 2023 and February 14, 2023. The case is referred to as *In re Silvergate Capital Corporation Securities Litigation* (the "**Securities Litigation**"). An amended consolidated securities class action complaint was filed on May 11, 2023. The Securities Litigation consists of a putative class action alleging that SCC's public disclosures relating to Silvergate Bank's due diligence and monitoring of customers, including FTX and other crypto exchanges, was materially misleading and that SCC's stock price fell once Silvergate Bank's failure to do so was discovered. The motions to dismiss filed by the Debtors and the other defendants have been under submission since the hearing on November 29, 2023.. The Debtors believe that the Securities Litigation is unmeritorious. The Securities Litigation is currently stayed as against the Debtors due to their commencement of their Chapter 11 Cases. To the extent any claims arising from the Securities Litigation are Allowed (including claims for indemnification or reimbursement from co-defendants of SCC), such claims will constitute Section 510(b) Claims and receive no distributions under the Plan.

## 4.  Derivative Litigation

A lawsuit has also been brought derivatively on behalf of SCC and/or Silvergate Bank in a case captioned *Nkonoki, derivatively on behalf of Silvergate Capital Corporation and Silvergate Bank v. Brassfield, Dircks, Reed, Lane, Colucci, Fraher, Reynolds, Eisele, Lempres, Jai, Gupta,*

*Campbell, and Sullivan* (the "**Derivative Action**"). This litigation was brought in California Superior Court, and alleges (1) failure to ensure that Silvergate Bank operated in accordance with all state and federal laws and had adequate controls to manage risk and ensure compliance with applicable laws and safe and sound banking practices, (2) materially misleading statements concerning SCC's compliance, risks, controls, reporting systems, and sustainability of its business model, and (3) that certain defendants are subject to insider trading claims under the California Corporations Code.  The parties agreed to a stay of the action until 30 days after a ruling on the motions to dismiss in the Securities Litigation, which are still pending.  The Derivative Action is currently stayed due to the commencement of the Chapter 11 Cases.

### 5.    JPMorgan Third-Party Complaint

On July 30, 2024, JPMorgan Chase Bank, N.A. ("**Chase**") filed a third party complaint against SCC and SLC alleging that SCC and SLC are required to indemnify Chase for damages in a case filed by a Chase customer against Chase for alleged fraud committed through Binance, in which Binance instructed Silvergate to pull $300,000 in a series of ACH transfers from the plaintiff's Chase bank account without the plaintiff's permission (the "**Chase Litigation**").  The Debtors believe the Chase Action is unmeritorious.  The Chase Litigation is currently stayed as against the Debtors due to the commencement of the Chapter 11 Cases.

### 6.    Annual Meeting

On February 16, 2024, Stilwell Activist Investments, L.P. ("**Stilwell**") filed a petition for writ of mandamus in the Circuit Court for Baltimore County, Maryland seeking (a) to compel SCC to schedule an annual meeting of stockholders to occur within 120 days of entry of a mandamus order, and (b) to alter the quorum requirements of SCC's governing documents by providing that shares of stock represented at such meeting shall constitute a quorum regardless of contrary provisions in SCC's bylaws and applicable Maryland statutory authority. On March 18, 2024, SCC filed a Motion to Dismiss Stilwell's petition.  On May 23, 2024, the Maryland Circuit Court held a hearing both on SCC's Motion to Dismiss and also on SCC's Petition, at the conclusion of which the court announced its intention to deny SCC's Motion to Dismiss and to grant the requested petition.  On May 30, 2024, the Circuit Court entered an order (**"Circuit Court Order"**) denying SCC's Motion to Dismiss and granting Stilwell's Petition, ordering (1) that SCC was "to hold an annual meeting of its stockholders no later than 120 days after the date of this order" (*i.e.*, by September 27, 2024); (2) that SCC is to "provide notice of the date, time, and place of the annual meeting of stockholders in accordance with Silvergate's bylaws and Maryland law"; and (3) "that the quorum for the Silvergate annual meeting will comprise the shares of stock represented at said annual meeting, either in person or by proxy."  On June 10, 2024, SCC moved to alter and amend the Circuit Court Order primarily to restore the quorum requirement specified in SCC's governing documents and under state law, as well as to provide a modest extension of the date by which SCC was directed to hold the annual meeting.  However, on July 10, 2024, the Circuit Court summarily denied SCC's motion to alter or amend.  On August 1, 2024, SCC timely appealed the Circuit Court Order, and the Appellate Court of Maryland entered an order to proceed with the appeal without a prehearing conference.  However the Appellate Court set deadlines for more than a month after the September 27, 2024 deadline for the stockholder meeting set by the Circuit Court. On September 3, 2024, SCC filed motions to stay the Circuit Court order pending its appeal and to expedite briefing and consideration, and Stilwell filed its opposition to the motion for expedited

briefing the next day. On September 6, 2024, the Circuit Court denied SCC's motion for expedited briefing and consideration. Because SCC's underlying motion to stay at the Circuit Court will unlikely be ruled on by the Annual Meeting, on September 12, 2024, SCC filed with the Appellate Court of Maryland a motion to stay the Circuit Court Order. SCC's motion to stay remains pending.

>    7.    **Special Investigations Committee**

On August 23, 2024, the Board of SCC appointed a special investigations committee (the "**Special Investigations Committee**") consisting solely of Director Ivona Smith, who is disinterested and independent with respect to all claims asserted in the Derivative Action. The Board determined that it was advisable and in the best interests of the Company to constitute the Special Investigations Committee to (i) investigate any potential claims and causes of action the Company may hold against the Company's current and former directors, officers, managers, insiders, principals, employees and other related parties, including, but not limited to, those claims and allegations asserted in the Derivative Action and (ii) determine what actions, if any, should be taken with respect to any such potential claims and causes of action, including regarding initiation of litigation, entry into settlements or provision of releases

The Special Investigations Committee has been empowered by the board of Silvergate Capital Corporation to investigate and take all action to commence litigation, settle or release any claims held by the Debtors against their current or former directors, officers and employees, including the claims asserted in the Derivative Action (the "**Investigation**"). The Special Investigations Committee has the full power and authority of the Board to carry out the Investigation and to take action in response to or with respect to the Investigation. The Debtors understand that the Special Investigations Committee intends to resolve such claims (including claims asserted in the Derivative Action) during the course of the Chapter 11 Cases or recommend such claims vest in the Liquidation Trust. RLF (as defined below) is acting as counsel the Special Investigations Committee with respect to the Investigation. The Investigation has been ongoing since on or about August 23, 2024.

>    H.    **Circumstances Leading to the Commencement of the Chapter 11 Cases**

These Chapter 11 Cases are the culmination of a successful process led by the Debtors' directors and management to repay all of Silvergate Bank's depositors and wind down its operations as a result of headwinds within the digital asset industry followed by a shift in regulatory approach that made Silvergate Bank's business model untenable. Over the past two years, the Debtors took decisive action, first to stem the tide of a bank run in the midst of industry crisis, then, following the shift in regulatory approach, in the liquidation of Silvergate Bank in a manner that would protect depositors from suffering losses and avoid any claims against the Federal Deposit Insurance Corporation (the "**FDIC**") Deposit Insurance Fund (the "**DIF**"), while enabling Silvergate Bank to preserve capital for other stakeholders. The Debtors have done so, as all of Silvergate Bank's depositors' funds have been returned and the Debtors have reached resolutions with their banking regulators.

As discussed further above, following the rapid contraction of Silvergate Bank's business, Silvergate Bank had stabilized, was able to meet regulatory capital requirements, and had the

capability to continue to serve its customers that had kept their deposits with Silvergate Bank. However, the increased supervisory pressure on Silvergate Bank and other banks focused on servicing digital asset businesses forced Silvergate Bank to a point where it would have needed to remake its business model away from its focus on digital asset businesses, seek to sell itself as a going concern in the shadow of the regulatory overhang or begin winding down its affairs with the goal of preserving as much value as possible for stakeholders.

The Debtors and their financial advisors conducted a thorough review of potential go-forward strategies, including having Silvergate Bank pivot to a new business model and selling Silvergate Bank as a going concern. The Debtors and their financial advisors concluded that a liquidation of Silvergate Bank would best protect depositors and the FDIC DIF from suffering any losses and would best allow Silvergate Bank to avoid a potential FDIC receivership and preserve any remaining capital for the Debtors' residual claimants. After careful consideration of these options, on March 8, 2023, the Debtors announced their intent to wind down operations and voluntarily liquidate Silvergate Bank.

Pursuant to its plan of liquidation, Silvergate Bank has wound down all its banking operations and has ceased to be a bank in any legal, regulatory or business sense. Silvergate Bank has not accepted any deposits since March 13, 2023. On November 22, 2023, Silvergate Bank announced that it had repaid all depositors with the exception of *de minimis* funds that were blocked from transfer at that time by the U.S. Treasury Department's Office of Foreign Assets Control. The remaining *de minimis* deposits were paid out on June 28, 2024. On July 1, 2024, Silvergate Bank's FDIC insurance was terminated, and importantly, all Silvergate Bank depositors had been paid in full with no losses imposed on the DIF. On July 5, 2024, the entity that was formerly known as Silvergate Bank changed its name to Silvergate Liquidation Corporation. And on July 8, 2024, Silvergate Liquidation Corporation successfully relinquished its banking charter to the DFPI.

The Debtors commenced these Chapter 11 Cases to resolve expeditiously all outstanding claims against them, recover value for their remaining non-cash assets and distribute funds to their stakeholders in accordance with their legal priorities.

## ARTICLE III
## OVERVIEW OF THE CHAPTER 11 CASES

### A.   Commencement of the Chapter 11 Cases

On September 17, 2024 (the "**Petition Date**"), the Debtors commenced the Chapter 11 Cases. The Debtors continue managing their properties and operating their businesses as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

### B.   First Day and Second Day Relief

### 1.   Operational First Day Motions and Relief Granted

On the Petition Date, the Debtors filed operational motions with the Bankruptcy Court seeking various forms of relief designed to facilitate a smooth transition for the Debtors into chapter 11 (collectively, the "**First Day Motions**") including, among others, motions:

- Authorizing, but not directing, the Debtors to continue using their cash management system and other related relief, both on an interim [Docket No. [●]] and a final basis [Docket No. [●]];

- Authorizing, but not directing, the Debtors to pay employee wages and related obligations, both on an interim [Docket No. [●]] and a final basis [Docket No. [●]];

- Authorizing, but not directing, the Debtors to pay certain taxes, both on an interim [Docket No. [●]] and a final basis [Docket No. [●]]; and

- Authorizing, but not directing, the Debtors to maintain their insurance programs, both on an interim [Docket No. [●]] and a final basis [Docket No. [●]].

### 2.   Procedural First and Second Day Motions

On and after the Petition Date, the Debtors also filed various procedural motions and applications regarding procedural issues in connection with the Chapter 11 Cases. The Bankruptcy Court granted substantially all of the relief requested in those procedural motions and entered, among others, orders:

- Directing the joint administration of the Chapter 11 Cases for procedural purposes only [Docket No. [●]];

- Authorizing the Debtors to redact personally identifiable information for individuals and file a consolidated creditor matrix and waiving the requirement for the Debtors to file a list of equity security holders, both on an interim [Docket No. [●]] and a final basis [Docket No. [●]]

- Authorizing the appointment of Stretto, Inc. as claims and noticing agent [Docket No. [●]];

- Establishing procedures authorizing interim compensation of professionals retained by the Debtors pursuant to section 327 of the Bankruptcy Code [Docket No. [●]]; and

- Establishing procedures for the retention and compensation of professionals used by the Debtors in the ordinary course of their business [Docket No. [●]].

### C.   Retention of Debtors' Chapter 11 Professionals

On [●], 2024, the Debtors filed applications to retain certain professionals to assist the Debtors in carrying out their duties under the Bankruptcy Code during the Chapter 11 Cases. [Docket Nos. [●]]. The Debtors' professionals include: (i) Cravath, Swaine & Moore LLP as bankruptcy counsel; (ii) Richards, Layton & Finger, PA ("**RLF**") as proposed co-counsel; (iii) Ellerman Enzinna Levy PLLC as regulatory counsel; (iv) Sheppard, Mullin, Richter & Hampton LLP as special litigation counsel; and (v) AlixPartners, LLP, as financial advisor. On [●], 2024, the Bankruptcy Court entered the orders approving the retention of [●]. [Docket Nos. [●]].

The retention applications remain subject to Bankruptcy Court approval as of the date of filing this Disclosure Statement.

### D. Schedules and Statements and Claims Bar Dates

On [●] 2024, the Debtors filed a motion [Docket No. [●]] (the "**Bar Date Motion**") requesting that the Bankruptcy Court establish certain deadlines related to filing proofs of claim. On [●], 2024, the Bankruptcy Court entered an order granting the Debtors' Bar Date Motion and established the following deadlines for parties to file proofs of claim:

(i) [●], 2024 at [●] (Prevailing Eastern Time) as the deadline for all persons and entities (excluding governmental units as defined in section 101(27) of the Bankruptcy Code) to file proofs of claim in the Chapter 11 Cases (the "**General Bar Date**");

(ii) [●], 2024 at [●] (Prevailing Eastern Time) as the deadline for governmental units (as defined in section 101(27) of the Bankruptcy Code) to file proofs of claim in the Chapter 11 Cases (the "**Governmental Bar Date**");

(iii) thirty (30) days following the Effective Date as the deadline for requests for payment of Administrative Claims (the "**Administrative Claims Bar Date**");

(iv) the later of (x) the General Bar Date or the Governmental Bar Date, as applicable, and (y) 5:00 p.m. (Prevailing Eastern Time), on the date that is thirty (30) days following the service of an order approving rejection of any executory contract or unexpired lease of the Debtors as the deadline by which persons or entities asserting claims resulting from such rejection must file proofs of claim in the Chapter 11 Cases (the "the **Rejection Bar**"); and

(v) the Amended Schedule Bar Date (as defined in the Bar Date Order, and together with the General Bar Date, the Governmental Bar Date, and the Rejection Bar Date, the "**Bar Dates**") as the later of (a) the General Bar Date or the Governmental Bar Date (if the applicable amendment relates to a claim of a Governmental Unit) and (b) [●] (Prevailing Eastern Time) on the date that is 30 days after the claimant is served with notice of the applicable amendment or supplement to the Bankruptcy Schedules.

### E. Exclusivity

Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a plan of reorganization (the "**Exclusive Plan Period**"). In addition, section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the Exclusive Plan Period, it has a period of 180 days after commencement of the chapter 11 case to obtain acceptances of such plan (the "**Exclusive Solicitation Period**," and together with the Exclusive Plan Period, the "**Exclusive Periods**"). Pursuant to section 1121(d) of the Bankruptcy Code, the Bankruptcy Court may, upon a showing of cause, extend the Exclusive Periods.

The Exclusive Periods currently remain in effect. On September 17, 2024, the Debtors filed the Plan. Given that the Debtors filed the Plan within 120 days of the Petition Date, under section 1121(c)(2) of the Bankruptcy Code, absent an order of the Court, no other party-in-interest can file a competing plan in these Chapter 11 Cases at this time.

**ARTICLE IV**
**THE PLAN**

### A.  Overview of the Plan

THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE AND MEANS FOR IMPLEMENTING THE PLAN AND OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN, AND IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN, WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT AND TO THE EXHIBITS ATTACHED THERETO.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED THEREIN, AND REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN CONTROL THE ACTUAL TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS UNDER THE PLAN AND WILL, UPON THE EFFECTIVE DATE, BE BINDING UPON HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS AND OTHER PARTIES IN INTEREST.

HOLDERS OF CLAIMS AND INTERESTS SHOULD READ THE PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

In general, a chapter 11 plan (a) divides claims and equity interests into separate classes, (b) specifies the consideration that each class is to receive under the plan and (c) contains other provisions necessary to implement the plan. Under the Bankruptcy Code, "claims" and "equity interests," rather than "creditors" and "shareholders," are classified because creditors and shareholders may hold claims and equity interests in more than one class. Under section 1124 of the Bankruptcy Code, a class of claims is "impaired" under a plan unless the plan (a) leaves unaltered the legal, equitable, and contractual rights of each holder of a claim in such class or (b) provides, among other things, for the cure of certain existing defaults and reinstatement of the maturity of claims in such class. Under the Plan, Class 7 is Impaired, and Holders of Claims or Interests in Class 7 are entitled to vote to accept or reject the Plan *unless* a Holder's Interest is subject to an objection filed by the Debtors. Ballots are being furnished herewith to all Holders of Interests in Classes 7 that are entitled to vote to facilitate their voting to accept or reject the Plan. Classes 1, 2, 3, 4 and 10 are Unimpaired under the Plan and therefore deemed to accept the Plan. Classes 8 and 9 are Impaired and are conclusively deemed to have rejected the Plan

20

The Plan provides for full payment of all Allowed Administrative Claims, Allowed Priority Tax Claims, if any, Allowed Priority Claims, if any, and Allowed Secured Claims, if any, in accordance with the provisions of the Bankruptcy Code as well as payments to Allowed General Unsecured Claims, which are expected to fully satisfy such Claims with interest at the legal rate.

Following confirmation of the Plan, the Plan will become effective (as such term is used in section 1129 of the Bankruptcy Code) on the first Business Day on which all the conditions to the occurrence of the Effective Date, as specified in Article X.A of the Plan have been satisfied or waived in accordance with the provisions of Article X.B of the Plan. The satisfaction of certain of the conditions to the occurrence of the Effective Date is beyond the control of the Debtors, and there is no assurance that the Debtors will waive or extend the deadline for the occurrence of the Effective Date or any other condition. Thus, it is possible that the Plan will not be confirmed and consummated in the time contemplated.

## B.   Unclassified Claims

### 1.   Unclassified Claims Summary

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the classification of Claims and Interests set forth in Article III of the Plan. The Claim recoveries for such unclassified Claims are set forth below:

| Claim | Plan Treatment | Projected Plan Recovery |
|---|---|---|
| Administrative Claims | Paid in Full in Cash | 100% |
| Professional Fee Claims | Paid in Full in Cash | 100% |
| Ad Hoc Preferred Stockholder Group Expenses | Paid in Full in Cash | 100% |
| Statutory Fees | Paid in Full in Cash | 100% |
| Priority Tax Claims | Paid in Full in Cash | 100% |

### 2.   Unclassified Claims

(i)   *Administrative Claims*

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Allowed Administrative Claims are not classified and are not entitled to vote. The Debtors have concluded that based upon current estimates, the assets of the Debtors are sufficient to satisfy these Claims. Except with respect to Administrative Expense Claims that (a) are Professional Fee Claims, (b) have already been paid during the Chapter 11 Case, or (c) for which the Holder of an Allowed Administrative Expense Claim has agreed to less favorable treatment, each Holder of an Allowed Administrative Expense

21

Claim shall receive in full satisfaction of its Administrative Expense Claim, Cash equal to the amount of such Allowed Administrative Expense Claim either: (i) on the Effective Date; (ii) if the Administrative Expense Claim is not Allowed as of the Effective Date, thirty (30) days after the date on which an order Allowing such Administrative Expense Claim becomes a Final Order, or as soon thereafter as reasonably practicable; or (iii) if the Allowed Administrative Expense Claim is based on a liability incurred by the Debtors in the ordinary course of business after the Petition Date, pursuant to the terms and conditions of the particular transaction or agreement giving rise to such Allowed Administrative Expense Claim, without any further action by the Holders of such Allowed Administrative Expense Claim and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

**HOLDERS OF ADMINISTRATIVE CLAIMS THAT ARE REQUIRED TO, BUT DO NOT, FILE AND SERVE A REQUEST FOR PAYMENT OF SUCH ADMINISTRATIVE CLAIMS BY THE ADMINISTRATIVE CLAIMS BAR DATE SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE CLAIMS AGAINST THE DEBTORS OR THEIR PROPERTY, AND SUCH ADMINISTRATIVE CLAIMS SHALL BE DEEMED DISCHARGED AS OF THE EFFECTIVE DATE.**

(ii)   *Professional Fee Claims*

a.   Final Fee Applications

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Allowed Professional Fee Claims are not classified and are not entitled to vote. The Debtors have concluded that based upon current estimates, the assets of the Debtors are sufficient to satisfy these Claims. All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Effective Date shall be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Liquidation Trust (or the authorized signatories to the Professional Fee Escrow Account, after consultation with the Liquidation Trust) shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals from funds held in the Professional Fee Escrow Account within two (2) Business Days or as soon thereafter as reasonably practicable after such Professional Fee Claims are allowed by entry of an order of the Bankruptcy Court. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Expense Claim for any such deficiency, and the Liquidation Trustee, as applicable, shall pay the full unpaid amount of such Allowed Administrative Expense Claim in Cash.

b.   Professional Fee Claims Estimate

Professionals shall reasonably estimate their unpaid Professional Fee Claims incurred in rendering services to the Debtors before and as of the Effective Date for the purpose of funding the Professional Fee Escrow Account and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Effective Date; *provided, however,* that such estimate shall not

be deemed to limit the amount of the fees and expenses that are the subject of any Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. Nothing in the Plan shall preclude any objection by any party to the RSA to any Professional Fee Claims that do not comply with the terms of the RSA.

### c.      Professional Fee Escrow Account

Following the Confirmation Date, and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estate, the Debtor, the Post-Effective Date Debtor, or the Liquidation Trust.

When all Allowed amounts owing to the Professionals have been irrevocably paid in full pursuant to one or more Final Orders of the Bankruptcy Court, any amount remaining in the Professional Fee Escrow Account shall promptly be paid to the Liquidation Trust, without any further action or order of the Bankruptcy Court.

### d.      Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidation Trustee shall, in the ordinary course of business and without any further notice to, or action, order, or approval of, the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by professionals providing services to the Post-Effective Date Debtors or the Liquidation Trustee, as applicable, including the fees and expenses of any of the Debtors' Professionals incurred in addressing or responding to any discovery, trial preparation, or trial in any action, suit, proceeding or audit. From and after the Effective Date, any requirement that professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate.

### (iii)     *Ad Hoc Preferred Stockholder Group Expenses*

From and after the Confirmation Date, any outstanding and unpaid Ad Hoc Preferred Stockholder Group Expenses shall be paid in full in Cash. All outstanding Ad Hoc Preferred Stockholder Group Expenses, to the extent not previously paid shall be paid on the Effective Date.

All Ad Hoc Preferred Stockholder Group Expenses to be paid on the Effective Date shall be estimated, as necessary, prior to or as of the Effective Date and such estimate shall be delivered to the Debtor; provided that such estimate shall not be considered an admission or limitation with respect to such Ad Hoc Preferred Stockholder Group Expenses. In addition, the Liquidating Trust is authorized to pay the Ad Hoc Preferred Stockholder Group Expenses, as necessary, after the

Effective Date when due and payable in the ordinary course solely to the extent incurred on or after the Confirmation Order is entered, without any requirement for review or approval by the Bankruptcy Court or any Entity.

(iv)    <i>Statutory Fees</i>

All Quarterly Fees due and payable and any interest thereon pursuant to section 3717 of Title 31 of the United States Code prior to the Effective Date shall be paid by the Debtors on the Effective Date. After the Effective Date, the Chapter 11 Cases of all of the Debtors, other than Debtor Silvergate Capital Corporation shall be deemed closed and only the Chapter 11 Case of Silvergate Capital Corporation shall remain open for purposes of administering the resolution of Disputed Claims, pending litigation, and any Retained Causes of Action by the Liquidation Trust. All Quarterly Fees shall be paid from the Disputed Claims Reserve when due and payable. The Debtors shall file all reports due prior to the Effective Date when they become due in the form and manner prescribed by U.S. Trustee. After the Effective Date, the Liquidation Trustee, for and on behalf of the Post-Effective Date Debtors and Liquidation Trust, shall file with the Bankruptcy Court any and all quarterly reports when they become due in the form and manner prescribed by U.S. Trustee. Each and every one of the Debtors, the Post-Effective Date Debtors, or the Liquidation Trust shall remain obligated to pay Quarterly Fees to the U.S. Trustee until the earliest of the Debtors' cases being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. Notwithstanding anything in the Plan to the contrary, the U.S. Trustee shall not be required to file any proof of claim for quarterly fees and any interest thereon.

(v)    <i>Priority Tax Claims</i>

Pursuant to section 1123(a)(1) of the Bankruptcy Code, Allowed Priority Tax Claims are not classified and are not entitled to vote. The Debtors have concluded that based upon current estimates, the assets of the Debtors are sufficient to satisfy these Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim and the applicable Debtor agree (whether before or after the Effective Date) to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

C.    <u>Classification and Treatment Under the Plan</u>

1.    <b>Summary of Classification of Claims and Interests</b>

All Claims and Interests, except for Administrative Expense Claims, including Professional Fee Claims, Quarterly Fees and Priority Tax Claims, are classified in the Classes set forth in <u>Article III</u> of the Plan for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any

24

portion of such Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests pursuant to the Plan is as set forth below. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.B of the Plan. The Plan shall constitute a separate Plan for each of the Debtors *provided that*, the estates of the various Debtors shall be consolidated for the purpose of effectuating distributions under the Plan. For all purposes under the Plan, where applicable, each Class contains a sub-Class for each Debtor. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.C of the Plan. Voting tabulations for recording acceptances or rejections of the Plan shall be conducted on a Debtor-by-Debtor basis as set forth above.

The classification of Claims and Interests against each Debtor (as applicable) pursuant to the Plan is below. A more comprehensive description of the estimated value available for distributions to Classes under the Plan is detailed in the liquidation analysis attached hereto **Exhibit C**.

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW REPRESENT THE DEBTORS' BEST ESTIMATES ONLY AND ARE SUBJECT TO CHANGE. ACTUAL RECOVERIES (INCLUDING WITH RESPECT TO GENERAL UNSECURED CLAIMS) COULD BE HIGHER OR LOWER, DEPENDING ON THE OUTCOME OF THE CLAIMS RECONCILIATION PROCESS. FOR A COMPLETE DESCRIPTION OF THE PLAN'S CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN.**

|  | | | | |
|---|---|---|---|---|
| **SUMMARY OF EXPECTED RECOVERIES** | | | | |
| **Class** | **Claim or Interest** | **Treatment of Claim or Interest** | **Est. Amount** | **Est. Recovery** |
| 1 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim shall receive on account thereof payment of the full amount of such Allowed Other Priority Claim in Cash or otherwise receive treatment consistent with the provisions of section 1129(a) of the Bankruptcy Code, except to the extent the Holder of an Allowed Other Priority Claim agrees to less favorable treatment. | [●] | 100% |
| 2 | Secured Claims | Each Holder of an Allowed Secured Claim shall receive on account of such Claim at the Liquidation Trustee's exclusive election, except to the extent that any Holder of an Allowed | [●] | 100% |

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment of Claim or Interest | Est. Amount | Est. Recovery |
| | | Secured Claim agrees to less favorable treatment therefor, either: (i) Cash equal to the amount of such Allowed Secured Claim, including Post-Petition Interest at the Federal Judgment Rate; (ii) the property that serves as security for such Allowed Secured Claim; or (iii) such other treatment that shall render such Allowed Secured Claims Unimpaired pursuant to section 1124 of the Bankruptcy Code (which may include reinstatement). Any portion of any Secured Claim that is not secured by collateral or the proceeds thereof shall constitute a General Unsecured Claim to the extent it is allowed. | | |
| 3 | General Unsecured Claims | Each Holder of an Allowed General Unsecured Claim shall receive on account of such Claim at the Liquidation Trustee's exclusive election, except to the extent that any Holder of an Allowed Secured Claim agrees to less favorable treatment therefor, either: (i) Cash equal to the amount of such Allowed General Unsecured Claim, including Post-Petition Interest at the Federal Judgment Rate; or (ii) such other treatment that shall render such Allowed General Unsecured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code. | [●] | 100% |
| 4 | Subordinated Note Claims | Each Holder of an Allowed Subordinated Notes Claim shall receive on account of such Claim at the Liquidation Trustee's exclusive election, except to the extent that any Holder of an Allowed Subordinated Notes Claim agrees to less favorable treatment therefor, either: (i) Cash equal to the amount of such Allowed Subordinated Notes Claim; or (ii) such other treatment that shall render such Allowed Subordinated Notes Claim unimpaired pursuant to section 1124 of the Bankruptcy Code. | $15,980,000 *plus* accrued and unpaid interest to and including the Effective Date | 100% |
| 5 | Inter-company Claims | Each Intercompany Claim shall be, at the option of the Debtors, reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such | N/A | N/A |

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| Class | Claim or Interest | Treatment of Claim or Interest | Est. Amount | Est. Recovery |
| | | Intercompany Claim, or such other treatment as is reasonably determined by the Debtors. | | |
| 6 | Inter-company Interests | Each Intercompany Interest shall be, at the option of the Debtors, reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Interest, or such other treatment as is reasonably determined by the Debtors. | N/A | N/A |
| 7 | Preferred Stock Interests | Except to the extent that a holder of an Allowed Preferred Stock Interest agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for its Allowed Preferred Stock Interest each such holder thereof shall receive on the Effective Date (a) such holder's Pro Rata share of Liquidation Trust Beneficial Interests and (b) such holder's Pro Rata share of the Preferred Stock Initial Distributable Amount. | 200,000 shares with liquidation preference of $200 million | [●]% |
| 8 | Common Stock Interests | On the Effective Date, all Allowed Common Stock Interests shall be extinguished, cancelled, and released and not entitled to Distribution or any recovery under the Plan. | 31,729,832 shares | 0% |
| 9 | Section 510(b) Claims | On the Effective Date, all Allowed Section 510(b) Claims, if any, shall be extinguished, cancelled, and released and not entitled to Distribution or any recovery under the Plan. | [●] | 0% |
| 10 | Bhatia Litigation Class Claim | As set forth more fully in Article III.B. of the Plan, upon entry of the Bhatia Litigation Final Approval Order, the Bhatia Litigation Class Claim would be entitled to receive the Settlement Fund, to paid by the Debtors and distributed in accordance with the Bhatia Litigation Final Approval Order in full and final settlement and satisfaction of the Bhatia Litigation Class Claim. | $10,000,000 | 100% |

**2.     Classified Claims and Interests Details**

Each Holder of an Allowed Claim or Allowed Interest, as applicable, will receive under the Plan the treatment described below in full and final satisfaction, settlement, release, and discharge of and in exchange for such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by: (a) the Debtors and (b) the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, will receive such treatment on the Effective Date or as soon as reasonably practicable thereafter.

1.     Class 1 – Other Priority Claims

      a.     *Classification*: Class 1 consists of all Other Priority Claims against the Debtors.

      a.     *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive on account thereof payment of the full amount of such Allowed Other Priority Claim in Cash or otherwise receive treatment consistent with the provisions of section 1129(a) of the Bankruptcy Code, except to the extent the Holder of an Allowed Other Priority Claim agrees to less favorable treatment.

      b.     *Voting*: Class 1 is Unimpaired, and Holders of Other Priority Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 1 Secured Claims are not entitled to vote to accept or reject the Plan.

2.     Class 2 – Secured Claims

      a.     *Classification*: Class 2 consists of all Secured Claims against the Debtors.

      b.     *Treatment*:  Each Holder of an Allowed Secured Claim shall receive on account of such Claim at the Liquidation Trustee's exclusive election, except to the extent that any Holder of an Allowed Secured Claim agrees to less favorable treatment therefor, either: (i) Cash equal to the amount of such Allowed Secured Claim, including Post-Petition Interest at the Federal Judgment Rate; (ii) the property that serves as security for such Allowed Secured Claim; or (iii) such other treatment that shall render such Allowed Secured Claims Unimpaired pursuant to section 1124 of the Bankruptcy Code (which may include reinstatement). Any portion of any Secured Claim that is not secured by collateral or the proceeds thereof shall constitute a General Unsecured Claim to the extent it is allowed.

       c.      *Voting*: Class 2 is Unimpaired, and Holders of Secured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 2 Secured Claims are not entitled to vote to accept or reject the Plan.

3.      <u>Class 3 – General Unsecured Claims</u>

       a.      *Classification*: Class 3 consists of all General Unsecured Claims against the Debtors.

       b.      *Treatment*: Each Holder of an Allowed General Unsecured Claim shall receive on account of such Claim at the Liquidation Trustee's exclusive election, except to the extent that any Holder of an Allowed General Unsecured Claim agrees to less favorable treatment therefor, either: (i) Cash equal to the amount of such Allowed General Unsecured Claim, including Post-Petition Interest at the Federal Judgment Rate; or (ii) such other treatment that shall render such Allowed General Unsecured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.

       c.      *Voting*: Class 3 is Unimpaired, and Holders of General Unsecured Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 3 General Unsecured Claims are not entitled to vote to accept or reject the Plan.

4.      <u>Class 4 – Subordinated Note Claims</u>

       a.      *Classification*: Class 4 consists of all Subordinated Notes Claims.

       b.      *Allowance*: Subordinated Notes Claims shall be Allowed in the aggregate outstanding principal amount of $15,980,000, *plus* accrued and unpaid interest to and including the Effective Date at the non-default Contract Rate.

       c.      *Treatment*: Each Holder of an Allowed Subordinated Notes Claim shall receive on account of such Claim at the Liquidation Trustee's exclusive election, except to the extent that any Holder of an Allowed Subordinated Notes Claim agrees to less favorable treatment therefor, either: (i) Cash equal to the amount of such Allowed Subordinated Notes Claim; or (ii) such other treatment that shall render such Allowed Subordinated Notes Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.

d.    *Voting*: Class 4 is Unimpaired, and Holders of Subordinated Notes Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 4 Subordinated Notes Claims are not entitled to vote to accept or reject the Plan.

5.    Class 5 – Intercompany Claims

a.    *Classification*: Class 5 consists of all Intercompany Claims.

b.    *Treatment*: Each Intercompany Claim shall be, at the option of the Debtors, reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Claim, or such other treatment as is reasonably determined by the Debtors.

c.    *Voting*: Holders of Claims in Class 5 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively. Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.    Class 6 – Intercompany Interests

a.    *Classification*: Class 6 consists of all Intercompany Interests.

b.    *Treatment*: Each Intercompany Interest shall be, at the option of the Debtors, reinstated, set off, settled, distributed, contributed, cancelled, or released without any distribution on account of such Intercompany Interest, or such other treatment as is reasonably determined by the Debtors.

c.    *Voting*: Holders of Interests in Class 6 are conclusively deemed to have accepted or rejected the Plan pursuant to section 1126(f) or section 1126(g) of the Bankruptcy Code, respectively. Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

7.    Class 7 – Preferred Stock Interests

a.    *Classification*: Class 7 consists of all Preferred Stock Interests in Silvergate Capital Corporation.

b.    *Treatment*: Except to the extent that a holder of an Allowed Preferred Stock Interest agrees to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for its Allowed Preferred Stock Interest each

such holder thereof shall receive on the Effective Date (a) such holder's Pro Rata share of Liquidation Trust Beneficial Interests and (b) such holder's Pro Rata share of the Preferred Stock Initial Distributable Amount.

c.   *Voting*: Class 7 is Impaired. Holders of Allowed Preferred Stock Interests are entitled to vote to accept or reject the Plan.

8.   Class 8 – Common Stock Interests

a.   *Classification*: Class 8 consists of all Common Stock Interests in the Debtors.

b.   *Treatment*: On the Effective Date, all Allowed Common Stock Interests shall be extinguished, cancelled, and released and not entitled to Distribution or any recovery under the Plan.

c.   *Voting*: Class 8 is Impaired, and holders of Allowed Common Stock Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Allowed Common Stock Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Common Stock Interests.

9.   Class 9 – Section 510(b) Claims

a.   *Classification*: Class 9 consists of all Section 510(b) Claims against the Debtors.

b.   *Allowance*: Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Section 510(b) Claim exists, may only become Allowed by Final Order of the Bankruptcy Court.

c.   *Treatment*: On the Effective Date, all Allowed Section 510(b) Claims, if any, shall be extinguished, cancelled, and released and not entitled to Distribution or any recovery under the Plan.

d.   *Voting*: Class 9 is Impaired, and holders (if any) of Allowed Section 510(b) Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders (if any) of Allowed Section 510(b) Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders (if any) will not

be solicited with respect to such Allowed Section 510(b) Claims.

10.   Class 10 – Bhatia Litigation Class Claim

a.   *Classification*: Class 10 consists of the Bhatia Litigation Class Claim against the Debtors.

b.   *Allowance*: Upon entry of the Bhatia Litigation Final Approval Order, and without the filing of a proof of claim, the Bhatia Litigation Class Claim shall be Allowed as a single class Claim in the amount of the Settlement Fund.

c.   *Treatment*: Upon entry of the Bhatia Litigation Final Approval Order, the Bhatia Litigation Class Claim shall be entitled to receive the Settlement Fund, to be paid by the Debtors and distributed in accordance with the Bhatia Litigation Final Approval Order in full and complete settlement and satisfaction of the Bhatia Litigation Class Claim.

The Debtors understand that Bhatia Litigation Class Members may be provided with the option to opt-out of the Bhatia Litigation Settlement. Any Claims of putative Bhatia Litigation Class Members that opt-out of the Bhatia Litigation Settlement be treated as General Unsecured Claims and shall receive the treatment provided in the Plan to General Unsecured Claims if such Claims become Allowed.

d.   *Voting*: Class 10 is Unimpaired, and holders of Bhatia Litigation Claim are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 10 Claims are not entitled to vote to accept or reject the Plan.

**3.   Elimination of Vacant Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

4.      **Separate Classification of Secured Claims**

Each Secured Claim, to the extent secured by a Lien on collateral different from the collateral securing another Secured Claim, shall be treated as being in a separate sub-Class for purposes of receiving distributions under the Plan.

5.      **Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by such Class.

6.      **Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

D.      **Acceptance or Rejection of the Plan; Effect of Rejection By One or More Classes of Claims or Interests**

1.      **Classes Entitled to Vote**

Holders of Preferred Stock Interests (Class 7) are entitled to vote on the Plan. Any Holder of an Interest that has been objected to may file a motion pursuant to Bankruptcy Rule 3018 for an order temporarily allowing such Interest solely for purposes of voting to accept or reject the Plan in accordance with the procedures to be set forth in the order approving the Disclosure Statement, including any deadlines set forth therein. Class 1, Class 2, Class 4, Class 5, Class 6 and Class 10 are deemed to have accepted the Plan.

The Debtors have requested that the Bankruptcy Court adopt a presumption that if no Holder of a Claim or Interest in a Class of Claims or Interests eligible to vote in a particular Class timely submits a timely Ballot to accept or reject the Plan, then the applicable Class will be deemed to have accepted the Plan. Accordingly, if any Holder of a Claim or Interest in Class 7 does not wish such a presumption to apply with respect to any Class for which such Holder holds a Claim, then the Holder should timely submit a Ballot accepting or rejecting the Plan for any such Class.

2.      **Class Acceptance Requirement**

Class 7 shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in amount in such Class that have voted on the Plan.

3.      **Cramdown and No Unfair Discrimination**

In the event that any impaired Class of Claims or Interests rejects the Plan or is deemed to have rejected the Plan, the Debtors hereby request, without any delay in the occurrence of the Confirmation Hearing or Effective Date, that the Bankruptcy Court confirm the Plan in accordance

with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief.

### E.   Means of Implementation of the Plan

#### 1.   Consolidation for Distribution Purposes Only

The Plan shall serve as, and shall be deemed to be, a motion for entry of an order substantively consolidating the Debtors' Chapter 11 Cases for the limited purpose of making Distributions. For all other purposes, this Plan is being proposed as a joint chapter 11 plan of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan for each Debtor in all respects other than for Distributions. Upon the entry of the Confirmation Order, the claims register maintained in the various Chapter 11 Cases shall be deemed consolidated into a single claims register in respect of the consolidated Estate. Further, Claims asserted against multiple Debtors, including Claims based on joint and several liability and guarantee and/or surety Claims shall be deemed to constitute a single Claim against the consolidated Estate. Notwithstanding the substantive consolidation for the limited purpose of making Distributions contemplated herein, on and after the Effective Date the Debtors will each continue as separate post-effective date entities after emergence from the Chapter 11 Cases.

#### 2.   Sources of Consideration for Distributions

Cash payments or cash distributions to be made under the Plan on the Effective Date shall be funded from the existing cash of the Debtor.  All other assets of the Debtors and property of the Debtors' estates shall constitute Liquidation Trust Assets and shall vest in the Liquidation Trust on the Effective Date.

#### 3.   Establishing Disputed Claims Reserve and Indemnification Reserve

On the Effective Date, the Debtors or the Post-Effective Date Debtors, as applicable, shall make all distributions to holders of Allowed Claims and Interests and transfer the Liquidation Trust Assets to the Liquidation Trust.  In order to effectuate the terms of the Plan and to avoid undue delay in the administration of the Chapter 11 Cases, unless otherwise agreed to by the Required Preferred Stockholders, the Debtors shall have sought and obtained estimation of all Claims, including any Indemnification Claims (other than Allowed Claims and Section 510(b) Claims (which, in the case of Section 510(b) Claims, shall not receive any recovery under the Plan)) timely filed against the Debtors that are contingent and/or unliquidated or asserted in amounts in excess of $500,000, which estimated amount of such Claim, as determined by the Bankruptcy Court, shall serve as either the Allowed amount of the applicable Claim or a cap on any recovery by the holders of such estimated Claims (the "**Estimated Amount**").   The Estimated Amount of the Indemnification Claims shall serve as the amount required to be set aside for the Indemnification Reserve unless otherwise agreed to amongst the applicable indemnitees, the Debtors and the Required Preferred Stockholders.  All other Estimated Amounts shall be set aside for purposes of the Disputed Claims Reserve.

### 4. Dissolution and Board of Directors

On the Effective Date, the Liquidation Trustee shall be appointed for the purpose of conducting carrying out the provisions of the Plan and winding down the Post-Effective Date Debtors. The Debtors shall be authorized to be (and, upon the conclusion of their affairs shall be) dissolved by the Liquidation Trustee. The Liquidation Trustee shall act for the Debtors in the same fiduciary capacity as applicable to a board of directors, members or managers, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, articles of incorporation or amendment by-laws, and related documents, as applicable, are deemed amended pursuant to the Plan to permit and authorize the same). From and after the Effective Date, the Liquidation Trustee shall be the sole representative of and shall act for the Post-Effective Date Debtors and the Estates.

Upon a certification to be Filed with the Bankruptcy Court by the Liquidation Trustee of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Liquidation Trust shall be deemed to be dissolved without any further action by the Liquidation Trustee, including the filing of any documents with the secretary of state for the state in which the Debtors are incorporated or formed or any other jurisdiction. Notwithstanding the foregoing, the Liquidation Trustee shall retain the authority to take all necessary actions to dissolve the Debtors in, and withdraw the Debtors from, applicable states and provinces to the extent required by applicable law.

### 5. Exemption from Registration

The Debtors believe that, subject to certain exceptions described below, various provisions of the Securities Act, the Bankruptcy Code and applicable state securities laws ("Blue Sky Laws") exempt from federal and state securities registration requirements (i) the offering, issuance, exchange, distribution or sale of securities (to the extent Liquidation Trust Beneficial Interests are considered "securities" under applicable law) pursuant to the Plan and (ii) subsequent transfers of such securities.

The Liquidation Trust Beneficial Interests to be distributed to the Liquidation Trust Beneficiaries pursuant to the Plan shall be transferrable as set forth in the Liquidation Trust Agreement. The Liquidation Trust Beneficial Interests shall not be listed on any national exchange and shall have the consent and voting rights provided in the Liquidation Trust Agreement. The Liquidation Trust shall not take any steps to facilitate the development of a trading market in the Liquidation Trust Beneficial Interests.

1.      *Section 1145.* Except with respect to any Person that is an underwriter as defined in section 1145(b) of the Bankruptcy Code or otherwise issued in reliance on section 4(a)(2) of the Securities Act ("Section 4(a)(2)") as elected by the Debtor, the issuance of the Liquidation Trust Beneficial Interests to Liquidation Trust Beneficiaries under the Plan (to the extent the Liquidation Trust Beneficial Interests are considered "securities" under applicable law) shall be exempt from registration under section 5 of the Securities Act (and any applicable Blue Sky Laws) under section 1145(a)(1) of the Bankruptcy Code.

Section 1145(a)(1) of the Bankruptcy Code exempts the issuance, offer, sale, and distribution of securities under a chapter 11 plan from registration under section 5 of the Securities Act and state or local securities laws if the following three principal requirements are satisfied: (a) the securities must be offered and sold under a chapter 11 plan must be securities of the debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under the plan; (b) the recipients of the securities must hold prepetition or administrative expense claims against the debtor or interests in the debtor; and (c) the securities must be issued entirely in exchange for the recipient's claim against or interest in the debtor, or principally in exchange for such claim or interest and partly for cash or property.

To the extent the issuance and distribution of the Liquidation Trust Beneficial Interests are made under the requirements of section 1145 of the Bankruptcy Code (and, to the extent such Liquidation Trust Beneficial Interests are deemed securities under applicable law), such issuance and distribution are exempt from registration under the Securities Act and any state or local law requiring registration. The availability of the exemptions under section 1145 of the Bankruptcy Code or any other applicable securities laws shall not be a condition to occurrence of the Effective Date of the Plan. To the extent section 1145 of the Bankruptcy Code is applicable, the securities to be issued under the Plan (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) in general are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act. In addition, securities governed by section 1145 of the Bankruptcy Code generally may be able to be resold without registration under applicable Blue Sky Laws pursuant to various exemptions provided by the respective Blue Sky Laws of the various states; however, the availability of such exemptions cannot be known unless individual states' Blue Sky Laws are examined, and recipients of securities are advised to consult with their own legal advisors as to the availability of any such exemption from registration in any given instance. Notwithstanding the foregoing, any securities or instruments issued under the Plan in reliance on section 1145(a) of the Bankruptcy Code remain subject to: (x) compliance with any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such securities or instruments; (y) the restrictions in the Liquidation Trust Agreement on the transferability of the Liquidation Trust Beneficial Interests and (z) any other applicable regulatory approval.

2.    *Section 4(a)(2).*  To the extent securities are issued pursuant to the Plan in reliance on Section 4(a)(2), the offering, issuance, exchange, or distribution of such securities pursuant to the Plan shall be conducted in a manner that is exempt from, among other things, the registration requirements of section 5 of the Securities Act. Section 4(a)(2) exempts from section 5's registration requirements transactions not involving a public offering, and Regulation D under the Securities Act ("Regulation D") provides a safe harbor under Section 4(a)(2) for transactions that meet certain requirements, including that the investors participating therein qualify as "accredited investors" within the meaning of Rule 501 under Regulation D ("Accredited Investors"). Such offering, issuance, exchange or distribution shall be structured to be available only to Holders who certify that they are Accredited Investors and who submit documentation allowing verification of their status as Accredited Investors. Any such securities shall be "restricted securities" as defined in Rule 144(a)(3) under the Securities Act and shall only be transferable if

36

registered under the Securities Act or if transferred pursuant to an exemption from the registration requirements of the Securities Act and other applicable securities laws.

3.    _DTC._  Should the Liquidation Trust elect on or after the Effective Date to reflect any ownership of the Liquidation Trust Beneficial Interests through the facilities of DTC, it need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of transfers, exercise, removal of restrictions, or conversion of the Liquidation Trust Beneficial Interests under applicable U.S. federal, state or local securities laws.

DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the Liquidation Trust Beneficial Interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement and depository services.

Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Liquidation Trust Beneficial Interests are exempt from registration and/or eligible for DTC book-entry delivery, settlement and depository services.

### 6.    Deemed Holders of Subordinated Note Claims

The SC Trust I Declaration of Trust provides that SC Trust I will automatically terminate upon the bankruptcy of Silvergate Capital Corporation.[5] Upon such termination of SC Trust I, the terms of the SC Trust I Preferred Securities require the administrative trustee of the trust to distribute to holders of the SC Trust I Preferred Securities the SC Trust I Subordinated Debentures having a principal amount equal to the liquidation amount per security plus accumulated and unpaid distributions thereon to the date of payment, after satisfaction of liabilities to creditors of SC Trust I as provided by applicable law.[6] For purposes of the Plan, holders of the SC Trust I Preferred Securities shall be deemed to hold the SC Trust I Subordinated Debentures and thus such holders shall be deemed to hold the SC Trust I Claims.

The SC Trust II Declaration of Trust provides that SC Trust II will dissolve upon the bankruptcy of Silvergate Capital Corporation.[7] Upon such dissolution of SC Trust II, the terms of the SC Trust II Capital Securities require the institutional trustee of the trust to distribute to holders of the SC Trust II Capital Securities the SC Trust II Subordinated Debentures on a pro rata basis, after satisfaction of liabilities to creditors of SC Trust II as provided by applicable law.[8] For purposes of the Plan, holders of the SC Trust II Capital Securities shall be deemed to hold the SC Trust II Subordinated Debentures and thus such holders shall be deemed to hold the SC Trust II Claims.

---

[5] _See_ Section 7.1(a)(ii) of the SC Trust I Declaration of Trust.

[6] _See_ Annex I, Section 3 of the SC Trust I Declaration of Trust.

[7] _See_ Section 7.1(a)(ii) of the SC Trust II Declaration of Trust.

[8] _See_ Annex I, Section 3 of the SC Trust II Declaration of Trust.

### 7. Preservation of Insurance

Nothing in the Plan or the Confirmation Order alters the rights and obligations of the Debtors (and their Estate), the beneficiaries of the Insurance Policies (including the Directors and Officers), or the Debtors' insurers (and third-party claims administrators), under the Insurance Policies or modifies the coverage or benefits provided thereunder, or the terms and conditions thereof, or diminishes or impairs the enforceability of the Insurance Policies. The Debtors shall be deemed to have assumed all Insurance Policies. All of the Debtors' rights and their Estates' rights under any Insurance Policies to which the Debtors and/or the Debtors' Estates may be beneficiaries shall vest with the Post-Effective Date Debtors for the benefit of the Post-Effective Date Debtors and all of the beneficiaries of such policies, including the Directors and Officers and any Holder entitled to recover from such policies pursuant to the Plan. Notwithstanding the foregoing, the Debtors' rights to any recoveries from any of the Insurance Policies and the proceeds thereof, shall be deemed Liquidation Trust Assets and shall be distributed directly to the Liquidation Trust for distribution to the Liquidation Trust Beneficiaries.

Nothing in the Plan or Confirmation Order shall (a) constitute a finding or stipulation that any proceeds of any of the D&O Liability Insurance Policies are property of the Estate; (b) modify or supersede any provision (including but not limited to any priority of payments provision) of any of the D&O Liability Insurance Policies, or (c) otherwise preclude any party entitled to coverage under the D&O Liability Insurance Policies, from seeking and obtaining coverage thereunder.

### 8. Indemnification Obligations

Subject to the provisions of Article V.G of the Plan any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse or limit the liability of any Person pursuant to the Debtors' certificates of incorporation, bylaws, policy of providing employee indemnification, applicable state law or specific agreement in respect of any claims, demands, suits, causes of action or proceedings against such Persons based upon any act or omission related to such Persons' service with, for or on behalf of the Debtors prior to the Effective Date with respect to all present and future actions, suits and proceedings relating to the Debtors (the "Indemnification Claims") shall survive confirmation of the Plan provided that the Indemnification Obligations shall be deemed amended in all respects to provide that any rights with respect to any Indemnification Obligations shall be limited for all purposes, whether such obligations arose prepetition, postpetition or post-Effective Date, to recovery solely from (i) available insurance coverage and (ii) solely with respect to Indemnification Claims that are not Section 510(b) Claims, to the extent of the available Indemnification Reserve. For the avoidance of doubt, all monetary obligations of any kind or nature whatsoever under Article V.H of the Plan shall be limited solely to (i) available insurance coverage and (ii), solely with respect to Indemnification Claims that are not Section 510(b) Claims, the Indemnification Reserve, and neither the Post-Effective Date Debtors, the Liquidation Trustee, nor any of their respective assets shall be liable for any such obligations in any manner whatsoever in excess of the Indemnification Reserve.  Upon satisfaction of all Indemnification Claims from the Indemnification Reserve, all remaining Cash in the Indemnification Reserve shall vest in the Liquidating Trust and the Liquidating Trustee shall be authorized to distribute such funds to the holders of the Liquidation Trust Beneficial Interests in accordance with the Plan and the Liquidation Trust Agreement.

9.      **Cancellation of Existing Securities and Agreements**

On the Effective Date, except as otherwise specifically provided for in the Plan, the obligations of the Debtors under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest or equity in the Debtors or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be canceled and deemed surrendered as to the Debtors and shall not have any continuing obligations thereunder.

10.     **Exemption from Certain Taxes and Fees**

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, (i) the issuance, transfer or exchange of any Securities, instruments, or documents, (ii) the creation of any Lien, mortgage, deed of trust or other security interest, (iii) any transfers (directly or indirectly) of property or transfer of beneficial ownership of property pursuant to the Plan or the Plan Supplement, (iv) any assumption, assignment, or sale by the Debtors of their interests in Executory Contracts pursuant to section 365(a) of the Bankruptcy Code, and (v) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under in furtherance of, or in connection with, the Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

F.      **Liquidation Trust**

1.      **Liquidation Trust Agreement**

On or prior to the Effective Date, the Liquidation Trust will be established pursuant to the Liquidation Trust Agreement. The Liquidation Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties and authorities do not affect the status of the Liquidation Trust as a "liquidating trust" for United States federal income tax purposes.

2.      **Purpose of the Liquidation Trust**

The Liquidation Trust shall be established for the sole purpose of liquidating and distributing the Liquidation Trust Assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust. The Liquidation Trust shall be deemed a successor-in-interest of the Debtors to the maximum extent necessary for the Liquidation Trust to execute its purpose, and shall not otherwise be deemed a successor-in-interest to the Debtors for any purpose other than as specifically set forth in the Plan or in the Liquidation Trust Agreement.

The Liquidation Trust shall be established in accordance with the Liquidation Trust Agreement to administer post-Effective Date responsibilities of the Debtors, including, but not limited to, (a) being vested with and liquidating the Liquidation Trust Assets, (b) making Distributions to holders of Allowed Claims and Allowed Interests in accordance with the terms of the Plan and the Liquidation Trust Agreement, (c) resolving all Disputed Claims and effectuating the Claims reconciliation process pursuant to the procedures prescribed in the Plan, (d) prosecuting, settling, and resolving Causes of Action that are Liquidation Trust Assets, (e) recovering, through enforcement, resolution, settlement, collection, or otherwise, assets on behalf of the Liquidation Trust (which such assets shall become part of the Liquidation Trust Assets), (f) taking any steps to dissolve, liquidate, bankrupt or take other similar action with respect to each Debtor, including by terminating the corporate or organizational existence of each such Debtor, and (g) performing all actions and executing all agreements, instruments and other documents necessary to effectuate the purpose of the Liquidation Trust.

Notwithstanding anything to the contrary in Article VI of the Plan, the Liquidation Trust's primary purpose is liquidating the Liquidation Trust Assets, with no objective to continue or engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the Liquidation Trust's liquidating purpose and reasonably necessary to conserve and protect the Liquidation Trust Assets and provide for the orderly liquidation thereof. Liquidation Trust Assets held by the Debtors to the Liquidation Trust, and all such assets shall vest in the Liquidation Trust on such date, to be administered by the Liquidation Trustee, in accordance with the Plan and the Liquidation Trust Agreement. The Debtors may take all actions as may be necessary or appropriate to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan.

### 3.    Liquidation Trust Assets

On the Effective Date, the Liquidation Trust Assets shall be deemed irrevocably transferred to the Liquidation Trust, without further action from the Debtors or any of their respective managers, employees, officers, directors, members, shareholders, agents, advisors, or representatives. The Liquidation Trust Assets shall vest in the Liquidation Trust, free and clear of all Liens, Claims, charges, rights, or other encumbrances subject to and in accordance with the Plan and the Liquidation Trust Agreement. For purposes of section 553 of the Bankruptcy Code, the transfer of the Liquidation Trust Assets to the Liquidation Trust shall not affect the mutuality of obligations that otherwise may have existed prior to the effectuation of such transfer. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax, pursuant to section 1146(a) of the Bankruptcy Code. Upon delivery of the Liquidation Trust Assets to the Liquidation Trust, the Debtors and its predecessors, successors and assigns, and each other Entity released pursuant to Article IX.C of the Plan shall be discharged and released from all liability with respect to the delivery of such distributions. Upon the transfer of the Liquidation Trust Assets and pursuant to the Liquidation Trust Agreement, the Debtors will have no reversionary or further interest in or with respect to the Liquidation Trust Assets.

### 4.    Liquidation Trustee

The Liquidation Trustee shall serve as the initial trustee of the Liquidation Trust. The Liquidation Trustee shall have no duties until the occurrence of the Effective Date, and on and

after the Effective Date shall be a fiduciary and representative of each of the Liquidation Trust and the Post-Effective Date Debtors and their Estates. The powers, rights and responsibilities of the Liquidation Trustee shall be as specified in the Liquidation Trust Agreement and the Plan and shall include the authority and responsibility to fulfill the items identified in Article VI.E of the Plan. Other rights and duties of the Liquidation Trustee and the Liquidation Trust Beneficiaries shall be as set forth in the Liquidation Trust Agreement.

### 5. Functions of the Liquidation Trustee

On and after the Effective Date, the Liquidation Trustee shall carry out the functions set forth in Article VI.E of the Plan and may take such actions without further approval by the Bankruptcy Court, in accordance with the Liquidation Trust Agreement. Such functions may include any and all powers and authority to:

a. take all steps and execute all instruments and documents necessary to make Distributions to holders of Allowed Claims and Allowed Interests and to perform the duties assigned to the Liquidation Trustee under the Plan or the Liquidation Trust Agreement;

b. comply with and effectuate the Plan and the obligations hereunder;

c. employ, retain, or replace professionals to represent him or her with respect to his or her responsibilities;

d. wind up the affairs of the Debtors, if and to the extent necessary, including taking any steps to dissolve, liquidate, bankrupt, or take other similar action with respect to each Debtor, including by terminating the corporate or organizational existence of each such Debtor;

e. take any actions necessary to (i) resolve all matters related to the Liquidation Trust Assets and (ii) vest such assets in the Liquidation Trust;

f. make Distributions of the Liquidation Trust Assets and any proceeds thereof, in excess of any amounts necessary to pay Liquidation Trust Expenses, in accordance with the terms of the Plan;

g. prepare and file appropriate tax returns and other reports on behalf of the Debtors and pay taxes or other obligations owed by the Debtors (including, without limitation, any Allowed Administrative Expense Claims and Allowed Priority Tax Claims);

h. file, prosecute, settle, or dispose of any and all objections to asserted Claims;

i. enter into and consummate any transactions for the purpose of dissolving the Debtors;

j. comply with data retention obligation and legal obligations to produce documents in accordance with the DFPI C&D;

k. take such actions as are necessary or appropriate to close any of the Debtors' Chapter 11 Cases;

l. maintain the books and records and accounts of the Debtors; and

m. take any other actions not inconsistent with the provisions hereof that the Liquidation Trustee deems reasonably necessary or desirable in connection with the foregoing functions.

## 6. Preservation of Rights of Action

Other than Causes of Action against an Entity that are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or by a Bankruptcy Court order, the Debtors reserve any and all Causes of Action. On and after the Effective Date, the Liquidation Trustee shall have sole and exclusive discretion to pursue and dispose of any Causes of Action that are or become Liquidation Trust Assets, and the Liquidation Trustee shall have sole and exclusive discretion to pursue or dispose of any and all other Causes of Action. All Causes of Action that are or become Liquidation Trust Assets shall vest in the Liquidation Trust as provided for herein and the Liquidation Trustee may pursue any Causes of Action that are or become Liquidation Trust Assets in its sole discretion. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors, and on and after the Effective Date, the Liquidation Trustee, will not pursue any and all available Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or the occurrence of the Effective Date and consummation of the transactions contemplated by the Plan. Prior to the Effective Date, the Debtors (and on and after the Effective Date, the Liquidation Trustee) shall retain and shall have, including through its authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party (except for, on and after the Effective Date, the Liquidation Trustee) or further notice to or action, order, or approval of the Bankruptcy Court.

Any settlement, release or other resolution of any Causes of Action by the Debtors during the Chapter 11 Cases shall be subject to the consent of the Required Preferred Stockholders; *provided*, however, that the Debtors shall be permitted (subject to Bankruptcy Court approval) to agree and implement, after consultation with the Supporting Preferred Stockholders, any settlement or resolution of derivative claims or Causes of Action of the Debtors against the current and former directors, officers and employees of the Debtors that is recommended by Silvergate Capital Corporation's Special Investigation Committee.

## 7. Substitution in Pending Legal Actions

On the Effective Date, the Liquidation Trust shall be deemed to be substituted as the party to any pending litigation, including the Retained Cause of Action, in which any Debtor is a party and shall be authorized, but not required, to file notices or other pleadings in such actions to

effectuate its substitution for such Debtor. Such substitution shall not result in holders of Claims, including litigation Claims, against the Debtors receiving greater rights in or against the Liquidation Trust than they are otherwise entitled to under the Plan and Liquidation Trust Agreement on account of such Claims.

### 8. Fees and Expenses of the Liquidation Trust

From and after the Effective Date, Liquidation Trust Expenses shall be paid from the Liquidation Trust Assets in the ordinary course of business, in accordance with the Plan and the Liquidation Trust Agreement. Without any further notice to any party or action, order or approval of the Bankruptcy Court, the Liquidation Trustee, on behalf of the Liquidation Trust, may employ and pay in the ordinary course of business, the reasonable fees of any professional (including professionals previously employed by the Debtors) for services rendered or expenses incurred on and after the Effective Date that, in the discretion of the Liquidation Trustee, are necessary to assist the Liquidation Trustee in the performance of the Liquidation Trustee's duties under the Plan and the Liquidation Trust Agreement.

### 9. Data Retention and Production Obligations

The Liquidation Trustee will comply with the Data Retention and Production Obligations. The Data Retention and Production Reserve will be established on or prior to the Effective Date to ensure the Liquidation Trustee has sufficient resources to comply with the Data Retention and Production Obligations. If, in the reasonable judgment of the Liquidation Trustee, the funds in the Data Retention and Production Reserve exceed the expected cost of complying with the Data Retention and Production Obligations, then the Liquidation Trustee may distribute the amount of such excess in accordance with the terms of the Plan and the Liquidation Trust Agreement to the Liquidation Trust Beneficiaries. If, in the reasonable judgment of the Liquidation Trustee, the funds in the Data Retention and Production Reserve are expected to be insufficient to comply with the Data Retention and Production Obligations, then the Liquidation Trustee may use other Liquidation Trust Assets to pay for such costs. Any funds remaining in the Data Retention and Production Reserve on July 9, 2031 shall be promptly distributed in accordance with the Plan.

### 10. Creation and Maintenance of Trust Accounts

On or prior to the Effective Date, appropriate trust accounts will be established and maintained in one or more federally insured domestic banks in the name of the Liquidation Trust. Cash deposited in the trust accounts will be invested, held and used solely as provided in the Liquidation Trust Agreement. The Liquidation Trustee is authorized to establish additional trust accounts after the Effective Date, consistent with the terms of the Liquidation Trust Agreement. After the initial funding of the trust accounts on or after the Effective Date, the trust accounts will be funded, as applicable, by Cash proceeds obtained through litigation or the disposition of Liquidation Trust Assets. Upon obtaining an order of the Bankruptcy Court authorizing final Distribution or closure of the Debtors' Chapter 11 Cases, any funds remaining in the trust accounts shall be distributed in accordance with the Plan and the Liquidation Trust Agreement, and the trust accounts may be closed.

## 11.    Exculpation and Indemnification of Liquidation Trustee

The Liquidation Trustee (and its agents and professionals) shall not be liable for actions taken or omitted in its or their capacity as, or on behalf of, the Liquidation Trustee or the Liquidation Trust, except those acts arising out of its or their gross negligence, actual fraud or willful misconduct, each as determined by a Final Order from a court of competent jurisdiction. The Liquidation Trustee (and its agents and professionals) shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its or their actions or inactions in its or their capacity as, or on behalf of, the Liquidation Trustee or the Liquidation Trust, except for any actions or inactions involving gross negligence, actual fraud or willful misconduct, each as determined by a Final Order from a court of competent jurisdiction. Any indemnification claims of the Liquidation Trustee and the other parties entitled to indemnification under this subsection shall be satisfied from the Liquidation Trust Assets, as provided in the Liquidation Trust Agreement. The Liquidation Trustee shall be entitled to rely, in good faith, on the advice of its professionals.

## 12.    Insurance

The Liquidation Trustee shall be authorized, but not required, to obtain any reasonably necessary insurance coverage, at the Liquidation Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties and obligations of the Liquidation Trustee, which insurance coverage may, at the sole option of the Liquidation Trustee, be extended for a reasonable period after the termination of the Liquidation Trust Agreement.

## 13.    Records

The Liquidation Trustee shall be provided with originals or copies of or access to all documents and business records of the Debtors necessary for the disposition of Liquidation Trust Assets, prosecution of the Retained Causes of Action, reconciliation of Disputed Claims and compliance with the Data Retention and Production Obligations.

## 14.    Liquidation Trust Tax Matters

1.    *Tax Treatment; No Successor in Interest.*  The Liquidation Trust is intended to be treated for U.S. federal income tax purposes as a liquidating trust described in Treasury Regulation section 301.7701-4(d) and, if applicable, as one or more Disputed Claims Reserves treated as disputed ownership funds described in Treasury Regulation section 1.468B-9. For U.S. federal income tax purposes, the transfer of assets by the Debtors to the Liquidation Trust is expected to be treated (a) as a taxable transfer of assets by the Debtors to the holders of Allowed Interests, subject to any liabilities of the Debtors or the Liquidation Trust payable from the proceeds of such assets, followed by the tax-free transfer of such assets (subject to such liabilities) by such holders to the Liquidation Trust in exchange for the Liquidation Trust Beneficial Interests, and (b) to the extent applicable, as a tax-free transfer of assets by the Debtors to one or more Disputed Claims Reserves.

2.    *Liquidation Purpose of the Liquidation Trust*. The Liquidation Trust shall be established for the primary purpose of liquidating and distributing the assets transferred to it, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or

engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust. Accordingly, the Liquidation Trustee shall, in an expeditious but orderly manner, liquidate and convert to Cash the Liquidation Trust Assets, make timely Distributions to the Liquidation Trust Beneficiaries, and not unduly prolong the duration of the Liquidation Trust. The Liquidation Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth in the Plan or the Liquidation Trust Agreement. The record holders of Liquidation Trust Beneficial Interests shall be recorded and set forth in a register maintained by the Liquidation Trustee expressly for such purpose.

3.      *Cash Investments*. The right and power of the Liquidation Trustee to invest the Liquidation Trust Assets, the proceeds thereof or any income earned by the Liquidation Trust, shall be limited to the right and power that a liquidating trust, within the meaning of section 301.7701-4(d) of the Treasury Regulations, is permitted to hold, pursuant to the Treasury Regulations, or any modification in the IRS guidelines, including Revenue Procedure 94-45, whether set forth in IRS rulings or other IRS pronouncements, and to the investment guidelines of section 345 of the Bankruptcy Code. The Liquidation Trustee may expend Liquidation Trust Cash (a) as reasonably necessary to meet contingent liabilities and to maintain the value of the respective assets of the Liquidation Trust during liquidation, (b) to pay the respective reasonable administrative expenses of the Liquidation Trust (including, but not limited to, any taxes imposed on the Liquidation Trust) and (c) to satisfy other respective liabilities incurred by the Liquidation Trust in accordance with the Plan and the Liquidation Trust Agreement (including, without limitation, the payment of any taxes).

4.      *Liquidation Trust as Grantor Trust*. The Liquidation Trust is intended to qualify as a "grantor trust" for U.S. federal income tax purposes with the Liquidation Trust Beneficiaries treated as grantors and owners of the Liquidation Trust. For all U.S. federal income tax purposes, all parties (including the Debtors, the Liquidation Trustee and the Liquidation Trust Beneficiaries) shall treat the transfer of the Liquidation Trust Assets by the Debtors to the Liquidation Trust, as set forth in the Liquidation Trust Agreement, as a transfer of such assets by the Debtors to the holders of Allowed Interests, followed by a transfer by such holders to the Liquidation Trust. Thus, the Liquidation Trust Beneficiaries shall be treated as the grantors and owners of a grantor trust for U.S. federal income tax purposes.

5.      *Tax Reporting and Tax Payments*

      a.      The Liquidation Trustee shall file tax returns for the Liquidation Trust treating the Liquidation Trust as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations and in accordance with Article VI.N.5 of the Plan. The Liquidation Trustee also shall annually send to each holder of a Liquidation Trust Beneficial Interest a separate statement regarding the receipts and expenditures of the Liquidation Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

b.      As soon as practicable after the Effective Date, the Liquidation Trustee shall make a good faith determination of the fair market value of the Liquidation Trust Assets as of the Effective Date. This valuation shall be used consistently by all parties for all U.S. federal income tax purposes. The Bankruptcy Court shall resolve any dispute regarding the valuation of the assets of the Liquidation Trust. The Liquidation Trustee may elect to treat any Disputed Claims Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9 (and make any appropriate elections consistent with such tax treatment). The Liquidation Trustee shall be the administrator of any such applicable Disputed Claims Reserve within the meaning of Treasury Regulation section 1.468B-9(b)(2) and shall be responsible for all tax reporting and withholding required by any such Disputed Claims Reserve.

c.      The Liquidation Trust shall be responsible for payment, out of Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust (including any Disputed Claims Reserve) or the Liquidation Trust Assets. More particularly, any taxes imposed on any Disputed Claims Reserve or its assets will be paid out of the assets of the Disputed Claims Reserve, and netted against any subsequent Distributions in respect of the allowance or disallowance of such Claims. In the event, and to the extent, any Cash in any Disputed Claims Reserve is insufficient to pay the portion of any taxes attributable to taxable income arising from assets of the Disputed Claims Reserve (including any income that may arise upon an actual or constructive Distribution of the assets of the reserve in respect of the resolution of Disputed Claims), assets of the Disputed Claims Reserve (including those otherwise distributable) may be sold to pay such taxes.

d.      The Liquidation Trustee may request an expedited determination of taxes of the Liquidation Trust, including any Disputed Claims Reserve, and, in the case of the Liquidation Trustee, of the Debtors, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Liquidation Trust or the Debtors for all taxable periods through the dissolution of the Liquidation Trust.

### G.    Provisions Regarding Distributions

### 1.    Distributions Generally

The Disbursing Agent shall make all Distributions under the Plan to the appropriate holders of Allowed Claims and Interests in accordance with the terms of the Plan.

### 2.    Distribution Record Date

Distributions shall only be made to the record holders of Allowed Claims and Interests as of the Confirmation Date (the "Distribution Record Date"). On the Confirmation Date, the Claims Register and Stock Register shall be closed and the Disbursing Agent shall be authorized and

entitled to recognize only those Holders of Claims and Interests listed on the Claims Register and Stock Register as of the close of business on the Confirmation Date. Notwithstanding the foregoing, if a Claim or Interest is transferred twenty (20) or fewer days before the Confirmation Date, the Disbursing Agent, at the direction of the Debtors or, after the Effective Date, the Liquidation Trust, shall make distributions to the transferee (rather than the transferor) only to the extent practical, and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor. The Distribution Record Date shall not apply to publicly held securities deposited with DTC and, in connection with any Distribution under the Plan to be effected through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise), the Debtors or the Liquidation Trust, as applicable, shall be entitled to recognize and deal for all purposes under the Plan with Holders of Claims and Interests in each Class to the extent consistent with the customary practices of DTC used in connection with such distributions.

### 3. Disbursing Agent

All Distributions under the Plan shall be made by the Disbursing Agent on and after the Effective Date as provided herein. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties. The Post-Effective Date Debtors or Liquidation Trustee shall use all commercially reasonable efforts to provide the Disbursing Agent (if other than the Liquidation Trustee) with the amounts of Claims and Interests and the identities and addresses of holders of Claims and Interests, in each case, as set forth in the Debtors', or Post-Effective Date Debtors, as applicable, books and records. The Post-Effective Date Debtors or Liquidation Trustee shall cooperate in good faith with the applicable Disbursing Agent (if other than the Liquidation Trustee) to comply with the reporting and withholding requirements outlined in Article VI.S of the Plan.

Notwithstanding any provision in the Plan to the contrary, distributions to the Holders of Subordinated Note Claims shall be made to or at the direction of the respective Indenture Trustees, which shall act as Disbursing Agent (or direct the Disbursing Agent) for distributions to the Holders of Subordinated Note Claims, respectively, in accordance with the Plan and the applicable Indentures.

### 4. Rights and Powers of Disbursing Agent

From and after the Effective Date, the Disbursing Agent, solely in its capacity as Disbursing Agent, shall be exculpated by all Entities, including, without limitation, holders of Claims against and Interests in the Debtors and other parties in interest, from any and all Claims, Causes of Action, and other assertions of liability arising out of the discharge of the powers and duties conferred upon such Disbursing Agent by the Plan or any order of the Bankruptcy Court entered pursuant to or in furtherance of the Plan, or applicable law, except for actions or omissions to act arising out of fraud, gross negligence or willful misconduct of such Disbursing Agent. No holder of a Claim or Interest or other party in interest shall have or pursue any claim or Cause of Action against the Disbursing Agent, solely in its capacity as Disbursing Agent, for making distributions in accordance with the Plan or for implementing provisions of the Plan, except for actions or omissions to act arising out of the gross negligence or willful misconduct, fraud, malpractice, criminal conduct, or ultra vires acts of such Disbursing Agent.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties hereunder; (b) make all Distributions contemplated hereby; and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 5. Post-Petition Interest

Except as otherwise provided in the Plan, the Confirmation Order, or another order of the Bankruptcy Court or required by the Bankruptcy Code (including postpetition interest in accordance with sections 506(b) and 726(a)(5) of the Bankruptcy Code), interest shall not accrue or be paid on any Claims on or after the Petition Date; *provided*, that if interest is payable pursuant to the preceding sentence, interest shall accrue at the Federal Judgment Rate on a non-compounded basis from the date the obligation underlying the Claim becomes due and is not timely paid through the date of payment.

### 6. Delivery of Distributions

The Disbursing Agent shall make all distributions, allocations, and/or issuances required under the Plan. In the event that any Distribution to any holder or permitted designee is returned as undeliverable, no further distributions shall be made to such holder or such permitted designee unless and until such Disbursing Agent is notified in writing of such holder's or permitted designee's, as applicable, then-current address, at which time all currently-due, missed distributions shall be made to such holder as soon as reasonably practicable thereafter without interest.

### 7. Distributions after the Effective Date

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

### 8. Unclaimed Property

Unless Undeliverable Distributions shall remain in the possession of the Liquidation Trust until such time as a Distribution becomes deliverable or holder accepts Distribution, or such Distribution reverts back to the Liquidation Trust and shall not be supplemented with any interest, dividends, or other accruals of any kind. Such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and forfeited at the expiration of one hundred and twenty (120) days from the applicable date of Distribution. After such date, all unclaimed property or interest in property shall revert to and vest in Liquidation Trust and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 9. Time Bar to Cash Payments

Checks issued by the Disbursing Agent in respect of Allowed Claims and Interests shall be null and void if not negotiated within one hundred and twenty (120) days after the date of issuance thereof. Thereafter, the amount represented by such voided check shall immediately and

irrevocably revert to the Liquidation Trust and any Claim or Interest in respect of such voided check shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Requests for reissuance of any check prior to the expiration of the one hundred and twenty (120) day period from the date of issuance shall be made to the Disbursing Agent by the holder of the Allowed Claim or Interest to whom such check was originally issued.

10.     **Manner of Payment under Plan**

Except as otherwise specifically provided in the Plan, at the option of the Liquidation Trustee, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtors.

11.     **Satisfaction of Claims**

Except as otherwise specifically provided in the Plan, any Distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims.

12.     **Minimum Cash Distributions**

The Disbursing Agent shall not be required to make any Distribution of Cash less than One Hundred Dollars ($100) to any holder of an Allowed Claim; *provided*, that if any Distribution is not made pursuant to Article VII.M of the Plan, such Distribution shall be added to any subsequent Distribution to be made on behalf of the holder's Allowed Claim.

13.     **Setoffs and Recoupments**

The Debtors or the Liquidation Trustee, as applicable, or such Entity's designee (including, without limitation, the Disbursing Agent) may, but shall not be required to, set off or recoup against any Claim or Interest, and any Distribution to be made on account of such Claim or Interest, any and all claims, rights, and Causes of Action of any nature whatsoever that the Debtors, the Post-Effective Date Debtors, or the Liquidation Trustee may have against the holder of such Claim or Interest pursuant to the Bankruptcy Code or applicable non-bankruptcy law (other than the released Causes of Action in favor of the Released Parties); *provided*, that neither the failure to do so nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by a Debtor, Post-Effective Date Debtor, the Liquidation Trustee, or its successor of any claims, rights, or Causes of Action that a Debtor, a Post-Effective Date Debtor, the Liquidation Trustee, or its successor or assign may possess against the holder of such Claim (other than the released Causes of Action in favor of the Released Parties).

14.     **Claims or Interests Paid by Third Parties**

No distributions under the Plan shall be made on account of an Allowed Claim or Allowed Interest that is payable under one of the Debtors' Insurance Policies until the Holder of such Allowed Claim or Allowed Interest has exhausted all remedies with respect to such Insurance Policy.

Except as otherwise provided in the Plan, payments to Holders of Claims or Interests covered by an Insurance Policy and otherwise payable under the Plan shall be made from the proceeds of such Insurance Policy in accordance with the provisions of any such applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by Insurers.

To the extent a Holder of Claims or Interests receives a payment on account of a Claim or Interest from a party that is not the Debtors, the Liquidation Trust or a Disbursing Agent on account of such Claim or Interest, the Debtors or the Liquidation Trust, as applicable, shall be authorized to reduce, for the purposes of Distribution, the Allowed amount of such Claim or Interest by the amount of the third-party payment, and such Claim or Interest shall be disallowed or deemed satisfied, as applicable, to the extent of such third party payment without an objection having to be filed, but subject to the filing of a  notice with the Bankruptcy Court and service of such notice on any affected Holder. Any Holder of Claims or Interests that receives full or partial payment on account of such Claim from an Entity that is not the Debtors, the Liquidation Trust or a Disbursing Agent shall provide notice of the date and amount of such payment to the Debtors or, after the Effective Date, the Liquidation Trust within five (5) Business Days of receipt of such payment. Such Creditor shall repay and/or return to the Debtors or, after the Effective Date, the Liquidation Trust any Distribution received on account of the portion of its Claim that was satisfied by such third-party payment within thirty (30) days.

### 15.    Allocation of Distributions between Principal and Interest

Except as otherwise required by law (as reasonably determined by the Liquidation Trust), Distributions with respect to an Allowed Claim shall be allocated first to the principal portion of such Allowed Claim (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

### 16.    No Distribution in Excess of Allowed Claim

Except as provided in Article VII.F of the Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, distributions in excess of the Allowed amount of such Claim.

### 17.    Distributions Free and Clear

Except as provided herein, any distributions under the Plan shall be free and clear of and Liens, Claims, and encumbrances, and no other Entity, including the Debtors, the Post-Effective Date Debtors, the Liquidation Trust, or the Liquidation Trustee, shall have any interest, legal, beneficial, or otherwise, in Assets transferred pursuant to the Plan.

### 18.    Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Liquidation Trustee and the Liquidation Trust shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such

withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidation Trustee and the Liquidation Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Liquidation Trustee and the Liquidation Trust reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

### H. Procedures for Disputed Claims and Interests

### 1. Objections to Claims

As of the Effective Date, objections to, and requests for estimation of, Claims against the Debtors may only be interposed and prosecuted by the Liquidation Trustee. Such objections and requests for estimation shall be served and filed on or before the Claims Objection Deadline.

### 2. Allowance of Claims

After the Effective Date, the Liquidation Trust shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim against a Debtor, except with respect to any Claim deemed Allowed under the Plan. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

### 3. Resolution of Claims

Except as otherwise provided herein (including the release provisions hereof) or in the Confirmation Order, or in any contract, instrument, release, or other agreement or document entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Liquidation Trustee may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all Claims, Disputed Claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, that the Liquidation Trust may hold against any Person, and any contract, instrument, release, indenture, or other agreement entered into in connection herewith. From and after the Effective Date, the Liquidation Trustee may settle or compromise any Disputed Claim without the approval of the Bankruptcy Court.

### 4. Adjustment to Claims Register Without Objection

Any duplicate Claim or Interest, any Claim (Filed or scheduled) or Interest that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Debtors or the Liquidation Trustee, as applicable, upon stipulation or any agreement in writing, including email correspondence, between the parties in interest

without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

**5.    Disallowance of Claims**

All Proofs of Claim must be Filed on or before the applicable Bar Date. If Proofs of Claim are not Filed on or before the applicable Bar Date, except in the case of certain exceptions explicitly set forth in the Bar Date Order, the Holders of the underlying Claims shall, absent further Order of the Bankruptcy Court Allowing such Claims, be barred from asserting such Claims against the Debtors and precluded from voting on the Plan and/or receiving Distributions from the Debtors on account of such Claims in the Chapter 11 Cases.

**6.    Estimation of Claims**

The Debtors or the Liquidation Trustee may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors previously objected to such Claim or  whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, or the Liquidation Trustee, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim; *provided*, that such limitation shall not apply to Claims requested by the Debtors to be estimated for voting purposes only.

**7.    Amendments to Proofs of Claim**

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, and unless the Bar Date with respect to a Claim has not passed, a Claim or Proof of Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Liquidation Trustee, and any such new or amended Claim or Proof of Claim Filed after the Effective Date shall be deemed Disallowed in full and expunged without any further action or notice to the Bankruptcy Court; *provided that* the filing of an unauthorized amendment shall not affect the underlying Claim or Proof of Claim. Nothing in this paragraph shall remove any claimant's ability to seek leave from the Bankruptcy Court to amend a Claim or Proof of Claim.

**8.    No Distributions Pending Allowance and Disputed Interest Reserves**

If an objection, motion to estimate, or other challenge to a Claim is filed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until (and only to the extent that) such Claim becomes an Allowed Claim.

9.    **Allowed and Disputed Claims Reserve**

The Liquidation Trustee shall, subject to the conditions set forth in Article VII.I of the Plan, establish a Disputed Claims Reserve by withholding 100% of the Distributions to which Holders of such Disputed Claims would be entitled if such Disputed Claims were Allowed Claims or, if applicable, the estimated amount as determined by Article V.C of the Plan.

10.    **Distributions After Allowance**

Subject to Article VII.H of the Plan, after such time as a Disputed Claim or Interest becomes, in whole or in part, an Allowed Claim or Interest, the Liquidation Trustee (or Disbursing Agent) shall distribute to the Holder thereof Distributions, as applicable, if any, to which such Holder is then entitled under the Plan, within thirty (30) days of such Claim or Interest becoming Allowed. Any such Distributions shall be made in accordance with the Plan and the Liquidation Trust Agreement. To the extent such Disputed Claim or Interest is Disallowed, any corresponding reserved amount shall be distributed to other Allowed Claims or Interests as provided for in the Plan and the Liquidation Trust Agreement.

## I.    Settlement, Release, Injunction, and Related Provisions

1.    **Compromise and Settlement of Claims, Interests, and Controversies**

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan is and shall be deemed a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest. In addition, the Plan incorporates all settlements pursuant to Bankruptcy Rule 9019 that are otherwise approved by the Bankruptcy Court.

The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. In accordance with the provisions of and except as set forth in the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Liquidation Trustee may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

2.    **Releases by the Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, as of the Effective Date, the Debtors and their Estates, the Post-Effective Date Debtors and each of their respective current and former Affiliates (with respect to non-Debtors, to the extent permitted by applicable law), the Liquidation Trustee, the Liquidation Trust, and any and all other**

Entities who may purport to assert any Cause of Action by, through, for, or because of the foregoing Entities, shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged the Released Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, in each case, whether prepetition or postpetition (including any derivative Claims asserted or that may be asserted on behalf of the Debtors, their Estates, the Post-Effective Date Debtors or the Liquidation Trust), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition), the formulation, preparation, dissemination, negotiation of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article IX.B</u> of the Plan shall not release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, or (ii) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in <u>Article IX.B</u> of the Plan by the Debtors, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in <u>Article IX.B</u> of the Plan is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the Debtor; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors, their respective Estates or the Liquidation Trustee on behalf of the Liquidation Trust, asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

3.    Releases by Holders of Claims and Interests

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Debtor, Post-Effective Date Debtor, the Liquidation Trustee, the Liquidation Trust and other Released Party from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition), including any derivative Claims asserted or that may be asserted on behalf of the Debtors,

their Estates, the Post-Effective Date Debtors, the Liquidation Trustee or the Liquidation Trust that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition), the formulation, preparation, dissemination, or negotiation of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in Article IX.C of the Plan shall not release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, or (ii) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the releases described in Article IX.b of the Plan by the Debtors, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in Article IX.C of the Plan is: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to implementing the Plan; (ii) a good-faith settlement and compromise of the Claims released by the holders of Claims and Interests; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; (vi) a sound exercise of the Debtors' business judgment; and (vii) a bar to any of the Debtors, their respective Estates or the Liquidation Trustee on behalf of the Liquidation Trust, asserting any claim or Cause of Action related thereto, of any kind, against any of the Released Parties or their property.

4.    Exculpation

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby exculpated from, any Cause of Action for any claim related to any act or omission from the Petition Date to the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, in whole or in part, the Debtors, the formulation, preparation, dissemination, negotiation, of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan or the distribution of Cash under the Plan, or any other related agreement, except for Claims or Causes of Action arising from an act

or omission that is judicially determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects, such Exculpated Parties shall be entitled to the fullest extent permitted by law to reasonably rely upon the advice of counsel with respect to their duties and responsibilities. The Exculpated Parties have, and upon Consummation of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

5.      **Injunction**

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR DISTRIBUTIONS REQUIRED TO BE PAID OR DELIVERED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE (1) BEEN RELEASED PURSUANT TO <u>ARTICLE IX.B</u> OR <u>ARTICLE IX.C</u> OF THE PLAN OR (2) ARE SUBJECT TO EXCULPATION PURSUANT TO <u>ARTICLE IX.D</u> OF THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, THE LIQUIDATION TRUST OR THE RELEASED PARTIES (TO THE EXTENT OF THE RELEASES PROVIDED PURSUANT TO <u>ARTICLE IX.B</u> OR <u>ARTICLE IX.C</u> OF THE PLAN WITH RESPECT TO THE RELEASED PARTIES), OR THE EXCULPATED PARTIES (TO THE EXTENT OF THE EXCULPATION PROVIDED PURSUANT TO <u>ARTICLE IX.D</u> WITH RESPECT TO THE EXCULPATED PARTIES): (I) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (II) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; (III) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS; AND (IV) EXCEPT TO THE EXTENT REQUIRED TO RENDER HOLDERS OF CLASS 5 UNIMPAIRED, ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF RIGHT IN A DOCUMENT (WHICH MAY BE A PROOF OF CLAIM) FILED WITH THE BANKRUPTCY COURT IN ACCORDANCE WITH THE TERMS OF THE PLAN EXPLICITLY PRESERVING SUCH SETOFF.

6.      **Protection Against Discriminatory Treatment**

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Liquidation Trust or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to or discriminate with respect to such a grant against the Liquidation Trust, or another Entity with whom the Liquidation Trust has been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case), or have not paid a debt that is dischargeable in the Chapter 11 Case.

7.      **Setoffs**

In no event shall any Holder of a Claim be entitled to set off against such Claim any claim, right, or Cause of Action of the Debtors or the Liquidation Trust, as applicable, unless such Holder actually has provided notice of such setoff in writing to the Debtors on or before the Confirmation Date, which notice may be provided in a timely filed Proof of Claim.

## J.      **Executory Contracts**

1.      **Rejection of Executory Contracts**

As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected, unless such contract or lease (a) was previously assumed or rejected by the Debtors pursuant to an order of the Bankruptcy Court; (b) previously expired or terminated pursuant to its own terms or by agreement of the parties thereto; (c) is the subject of a motion to assume filed by the Debtors on or before the Confirmation Date; (d) is a contract, release, or other agreement or document entered into in connection with the Plan, (e) is an Insurance Policy; or (f) is identified for assumption on the Assumption Schedule included in the Plan Supplement, which schedule shall be in form and substance reasonably acceptable to the Required Preferred Stockholders.

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments, or rejections provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code and a determination by the Bankruptcy Court that the Liquidation Trust has provided adequate assurance of future performance under such assumed executory contracts and unexpired leases. Each executory contract and unexpired lease assumed or assumed and assigned pursuant to the Plan shall vest in and be fully enforceable by the Liquidation Trust in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

2.      **Rejection Damages Claims**

**In the event that the rejection of an executory contract or unexpired lease hereunder results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be classified and treated in Class 3 (General Unsecured Claims). Such Claim shall be forever barred and shall not be enforceable against the Debtors, their respective**

**Estates, the Post-Effective Date Debtors or the Liquidation Trust, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of Claim is filed with the Claims and Noticing Agent and served upon counsel for the Debtors or Liquidation Trust, as applicable, by the later of (a) thirty (30) days after the filing and service of the notice of the occurrence of the Effective Date; and (b) thirty (30) days after entry of an Order rejecting such contract or lease if such contract or lease is the subject of a pending Assumption Dispute.**

### 3.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any Cure Amount due under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment in Cash on the Effective Date (or as soon as reasonably practicable thereafter), subject to the limitation described below, by the Debtors or the Liquidation Trust, as applicable, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

In the event of a dispute regarding (a) the amount of the Cure Amount, (b) the ability of the Liquidation Trust or any other applicable assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease, or (c) any other matter pertaining to assumption or assumption and assignment (as applicable), the obligations of section 365 of the Bankruptcy Code shall be deemed satisfied following the entry of a Final Order or orders resolving the dispute and approving the assumption or assumption and assignment (as applicable); *provided*, that the Debtors or the Liquidation Trust (as applicable) may settle any dispute regarding the amount of any Cure Amount without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

**Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the Effective Date of assumption and/or assignment. Any prepetition default amount set forth in the Schedules and/or any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.**

### 4.    Assignment

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned hereunder shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type set forth in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts, or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts, or conditions the assignment or transfer of any such executory

contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment, constitutes an unenforceable anti-assignment provision and is void and of no force or effect with respect to any assignment pursuant to the Plan.

5.      **Modifications, Amendments, Supplements, Restatements, or Other Agreements**

Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is listed in the Assumption Schedule shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the notice of assumed contracts.

6.      **Reservation of Rights**

The Debtors may amend the Assumption Schedule and any cure notice until the Business Day immediately prior to the commencement of the Confirmation Hearing in order to (a) add, delete, or reclassify any executory contract or unexpired lease or amend a proposed assumption or assumption and assignment and/or (b) amend the proposed Cure Amount; *provided*, that if the Confirmation Hearing is adjourned for a period of more than two (2) consecutive calendar days, the Debtors' right to amend such schedules and notices shall be extended to the Business Day immediately prior to the adjourned date of the Confirmation Hearing, with such extension applying in the case of any and all subsequent adjournments of the Confirmation Hearing. The Debtors shall provide notice of such amendment to any affected counterparty as soon as reasonably practicable.

Neither the exclusion nor inclusion of any contract or lease by the Debtors on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtors that any such contract or lease is or is not in fact an executory contract or unexpired lease or that the Debtors, or the Liquidation Trust, or their respective affiliates have any liability thereunder.

Except as otherwise provided in the Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtors and the Liquidation Trust, under any executory or non-executory contract or any unexpired or expired lease.

Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Liquidation Trust, as applicable, under any executory or non-executory contract or any unexpired or expired lease.

### K.  Conditions Precedent to Confirmation and the Effective Date

**1.  Conditions to Confirmation of the Plan**

The Confirmation of the Plan shall not occur unless and until each of the following conditions has occurred or has been waived pursuant to Article XI.B of the Plan:

    a.      The Disclosure Statement Order shall have been entered;

    b.      The Plan Supplement and all of the schedules, documents and exhibits contained therein shall have been filed;

    c.      The RSA shall not have been terminated and shall be in full force and effect; and

    d.      The Disputed Claims Reserve and Indemnification Reserve shall have been set by agreement with the Required Preferred Stockholders or as set forth in Article V.C of the Plan;

**2.  Conditions to Occurrence of the Effective Date**

The Effective Date of the Plan shall not occur unless and until each of the following conditions has occurred or has been waived pursuant to Article XI.B of the Plan:

    a.      the Bankruptcy Court shall have entered the Confirmation Order, in form and substance materially consistent with the Plan and otherwise reasonably acceptable to the Debtors and the Required Preferred Stockholders, which shall not be stayed pending appeal;

    b.      the Professional Fee Escrow Account shall have been established and fully funded as set forth herein;

    c.      All Ad Hoc Preferred Stockholder Group expenses invoiced in accordance with Article II.C of the Plan shall have been paid in full in Cash;

    d.      the Debtors shall have established such reserves for Allowed and Disputed Claims as required pursuant to Article V.C. and Article VIII.I of the Plan;

    e.      all documents, agreements and other instruments which are exhibits to the Plan or included in any Plan Supplement shall be acceptable to the Debtors and the Required Preferred Stockholders and shall have been executed and delivered by the parties thereto;

    f.      all actions, documents and agreements necessary to implement the Plan and the transactions contemplated by the Plan shall have been effected or executed; and

    g.      all appropriate notices shall have been given and all other appropriate actions shall have been taken to preserve all applicable Insurance Policies, including any "tail policy," notices required to be provided.

### 3.    Waiver of Conditions to Confirmation and Effective Date

The conditions to the Effective Date set forth in <u>Article XI.A</u> of the Plan may be waived by the Debtors, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan; *provided*, that the Debtors may not waive the condition set forth in <u>Article XI.A</u>, other than <u>Article XI.2</u> of the Plan without the consent of the Required Preferred Stockholders (e-mail of counsel being sufficient).

### 4.    Effect of Failure of Conditions to the Effective Date

In the event the conditions specified in <u>Article XI.A</u> and <u>B</u> of the Plan have not been satisfied or waived in accordance with <u>Article XI.C</u> of the Plan, and upon notification submitted by the Debtors to the Bankruptcy Court (a) the Confirmation Order shall be vacated; (b) no Distributions shall be made; (c) the Debtors and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (d) all of the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any other Person in any proceedings further involving the Debtors. Neither the Disclosure Statement, any statement contained in the Disclosure Statement nor the Plan may be used in these Chapter 11 Cases, or in any action, other than in connection with confirmation of the Plan. In the event that the Plan is not confirmed, or is confirmed but does not become effective, the Disclosure Statement, any statements contained in the Disclosure Statement and the Plan shall have no force or effect, and neither the Disclosure Statement, any statements contained in the Disclosure Statement nor the Plan shall be admissible in any court or legal forum for any purpose whatsoever.

### L.    <u>Modification of the Plan</u>

### 1.    Plan Modifications

Subject to certain restrictions and requirements set forth in section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors may alter, amend or modify the Plan with the consent of the Required Preferred Stockholders, including the Plan Supplement, without additional disclosure pursuant to section 1125 of the Bankruptcy Code prior to the Confirmation Date. After the Confirmation Date and before substantial consummation of the Plan, the Debtors may institute proceedings in the Bankruptcy Court pursuant to section 1127(b) of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistencies in the Plan, including the Plan Supplement, the Disclosure Statement, or the Confirmation Order, relating to such matters as may be necessary to carry out the purposes and effects of the Plan.

After the Confirmation Date, but before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan with the consent, not to be unreasonably withheld, of the Required Preferred Stockholders, including the Plan Supplement, without further order or approval of the Bankruptcy Court; *provided*, that such adjustments and

modifications do not materially and adversely affect the treatment of Holders of Claims or Interests and are otherwise permitted under section 1127(b) of the Bankruptcy Code.

### 2.    Effect of Confirmation on Modification

Entry of a Confirmation Order shall mean that all modifications and amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code, and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

### M.   **Effect of Confirmation**

### 1.    **Deemed Consent**

By voting to accept the Plan or forbearing from opting out of the releases, as applicable and set forth in the Plan, each Holder of a Claim or Interest, as applicable, will be deemed, to the fullest extent permitted by applicable law, to have specifically consented to the exculpations, releases and injunctions set forth in the Plan; provided that Article XIII.A. of the Plan shall not limit or impact the enforceability of any exculpation, release, or injunction provisions of the Plan in accordance with their terms.

### 2.    **No Waiver**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, CONFIRMATION OF THE PLAN SHALL NOT RELEASE, NOR BE DEEMED TO RELEASE, ANY CLAIM OR CAUSE OF ACTION THAT ANY DEBTOR MAY HOLD AGAINST ANY PERSON OR ENTITY (INCLUDING ANY RELEASED PARTY) RELATED TO, ARISING UNDER, OR IN ANY WAY WITH RESPECT TO ANY OF THE RETAINED CAUSES OF ACTION.**

### N.   **Retention of Jurisdiction**

On and after the Effective Date, the Bankruptcy Court shall retain and have jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Cases, or that relate to any of the following:

a.    To Allow, Disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or Allowance of Claims or Interests.

b.    To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

c.    To hear and determine all applications for the payment of Professional Fee Claims.

d.    To resolve any matters related to (i) the assumption, assumption and assignment or rejection of any Executory Contract to which a Debtor is a party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or any other matter related to such Executory Contract; (ii) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (iii) any dispute regarding whether a contract or lease is or was executory or unexpired.

e.    To adjudicate controversies, if any, with respect to distributions to Holders of Allowed Claims.

f.    To hear and determine any dispute or reconcile any inconsistency arising in connection with the Plan, including any Plan Supplement, or the Confirmation Order or the interpretation, implementation or enforcement of the Plan, any Plan Supplement, the Confirmation Order, any transaction or payment contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing.

g.    To hear and determine any matter concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

h.    To adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code.

i.    To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

j.    To hear and determine any rights, Claims or Causes of Action, including without limitation Claims or Causes of Action identified on the Schedule of Retained Causes of Action, held by, transferred to or accruing to the Liquidation Trust pursuant to the Bankruptcy Code, including any settlement or compromise thereof.

k.    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court.

l.    To take any action, and issue such orders as may be necessary or appropriate, to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation.

m.    To resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan.

n.    To ensure that all Distributions are accomplished as provided herein.

o.      To allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim.

p.      To enter, implement or enforce such orders as may be necessary or appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated.

q.      To enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code.

r.      To recover all Assets of the Estates, wherever located.

s.      To hear and determine matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code.

t.      To determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code.

u.      To enter a Final Decree closing the Chapter 11 Cases.

v.      To determine any motion, adversary proceeding, application, contested matter and other litigated matter pending on or commenced after the Confirmation Date.

w.      To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Plan and these Chapter 11 Cases.

x.      To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order, any Plan Supplement or any other contract, instrument, release or other agreement or document related to the Plan or the Disclosure Statement.

y.      To adjudicate any adversary proceedings pending before the Bankruptcy Court on or after the Petition Date or any other disputes relating to any Retained Cause of Action that the Post-Effective Date Debtors may bring thereafter.

z.      To hear and determine any dispute or suit regarding setoff or recoupment.

aa.     Adjudicate all other matters over which the Bankruptcy Court has jurisdiction.

## ARTICLE V
## CERTAIN TAX CONSEQUENCES OF THE PLAN

The following discussion is a summary of certain U.S. federal income tax consequences of the implementation of the Plan to the Debtors and to certain U.S. Holders (as defined below) of Allowed Preferred Stock Interests that will receive cash or other property (including Liquidation Trust Beneficial Interests) under the Plan. The following summary does not address the U.S.

federal income tax consequences to holders of Claims or Interests that are unimpaired, deemed to reject the Plan or otherwise entitled to payment in full in cash under the Plan.

The discussion of U.S. federal income tax consequences below is based on the Internal Revenue Code of 1986, as amended (the "**Code**"), U.S. Treasury Regulations ("**Treasury Regulations**"), judicial authorities, published positions of the Internal Revenue Service ("**IRS**"), and other applicable authorities, all as in effect on the date of this Disclosure Statement and all of which are subject to change or differing interpretations (possibly with retroactive effect). The U.S. federal income tax consequences of the contemplated transactions are complex and subject to significant uncertainties. The Debtors have not requested an opinion of counsel or a ruling from the IRS with respect to any of the tax aspects of the contemplated transactions, and the discussion below is not binding upon the IRS or the courts. Accordingly, there is no assurance that the IRS would not take a contrary position as to the federal income tax consequences described herein.

This summary does not address non-U.S., state, local, gift, or estate tax consequences of the Plan, nor does it purport to address all aspects of U.S. federal income taxation that may be relevant to a holder in light of its individual circumstances or to a holder that may be subject to special tax rules (such as persons who are related to the Debtors within the meaning of the Code, foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, financial institutions, small business investment companies, real estate investment trusts, regulated investment companies, tax-exempt organizations, trusts, governmental authorities or agencies, dealers and traders in securities, retirement plans, individual retirement and other tax-deferred accounts, holders that are, or hold Interests through, S corporations, partnerships or other pass-through entities for U.S. federal income tax purposes, persons whose functional currency is not the U.S. dollar, dealers in foreign currency, persons who hold Interests as part of a straddle, hedge, conversion transaction or other integrated investment, persons using a mark-to-market method of accounting, holders of Interests who are themselves in bankruptcy, persons subject to the alternative minimum tax or the "Medicare" tax on net investment income and accrual method taxpayers that report income on an "applicable financial statement"). In addition, this discussion does not address U.S. federal taxes other than income taxes, nor does it address the Foreign Account Tax Compliance Act.

Additionally, this discussion assumes that (i) the various debt and other arrangements to which any of the Debtors is a party will be respected for U.S. federal income tax purposes in accordance with their form and (ii) except where otherwise indicated, the Interests are held as "capital assets" (generally, property held for investment) within the meaning of Section 1221 of the Code.

For purposes of this discussion, a "U.S. Holder" is a holder of an Allowed Preferred Stock Interest that is: (i) an individual citizen or resident of the United States for U.S. federal income tax purposes; (ii) a corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof or the District of Columbia; (iii) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (iv) a trust (a) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more United States persons have authority to control all substantial decisions of the trust or (b) that has a valid election in effect under applicable Treasury Regulations to be treated as a United States person.

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a holder of an Interest, the tax treatment of a partner (or other beneficial owner) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the partner (or other beneficial owner) and the entity. Partners (or other beneficial owners) of partnerships (or other pass-through entities) that are holders of Interests should consult their respective tax advisors regarding the U.S. federal income tax consequences of the Plan.

**THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON YOUR INDIVIDUAL CIRCUMSTANCES. ALL HOLDERS OF INTERESTS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE U.S. FEDERAL, STATE, LOCAL AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

### A.   Certain Tax Consequences to the Debtors

The Plan generally is not expected to give rise to material tax consequences to the Debtors. For U.S. federal income tax purposes, SCC is the common parent of an affiliated group of corporations which files a single consolidated U.S. federal income tax return of which the other Debtors are members or flow-through entities wholly owned by a member of the group. As of July 31, 2024, the Debtors had federal NOL carryforwards in the amount of approximately $1,370,000,000, state NOL carryforwards in the amount of approximately $1,290,000,000 and certain other tax attributes (collectively, the "**Tax Attributes**"). The amount of any Tax Attributes, as well as any limitations on their use, remain subject to review and potential adjustment by the IRS. Upon the liquidation of the Debtors pursuant to the Plan, any Tax Attributes of the Debtors will be eliminated.

### B.   Consequences for Holders of Allowed Preferred Stock Interests

The U.S. federal income tax consequences of the implementation of the Plan to a U.S. Holder of an Allowed Preferred Stock Interest will depend, among other things, upon the origin of the holder's Interest, when the holder receives payment in respect of such Interest and whether the holder reports income using the accrual or cash method of tax accounting.

It is currently expected, and this discussion assumes, that the Liquidation Trust will be treated as a trust that is a "liquidating trust" and a "grantor trust" for U.S. federal income tax purposes, and that each U.S. Holder of an Allowed Preferred Stock Interest that receives a Liquidation Trust Beneficial Interest will be treated for U.S. federal income tax purposes as directly receiving, and as a direct owner of, its respective share of the Liquidation Trust Assets (consistent with its economic rights in the trust). As a result, a U.S. Holder of an Allowed Preferred Stock Interest generally will recognize gain or loss with respect to its Allowed Preferred Stock Interest in an amount equal to the difference between (i) the sum of the amount of Cash received on or about the Effective Date, plus, if applicable, the fair market value of any Liquidation Trust Beneficial Interests received in exchange for such holder's Interests and (ii) the holder's adjusted tax basis of the Allowed Preferred Stock Interest exchanged therefor.

A U.S. Holder's share of any proceeds received by the Liquidation Trust upon the sale or other disposition of the Liquidation Trust Assets should not be included, for U.S. federal income tax purposes, in the holder's amount realized in respect of its Allowed Preferred Stock Interest, but should be separately treated as amounts realized in respect of such holder's ownership interest in the underlying Liquidation Trust Assets.

A U.S. Holder's tax basis in its respective share of the Liquidation Trust Assets will equal the fair market value of its share of such assets, and the holder's holding period generally will begin the day following the Effective Date. Pursuant to the Plan, the Liquidation Trustee will make a good faith valuation of the Liquidation Trust Assets transferred to the Liquidation Trust, and all parties (including, without limitation, the Debtors, Liquidation Trust Beneficiaries, and the Liquidation Trustee) must report consistently with such valuation for all U.S. federal income tax purposes.

In the event of the subsequent disallowance of any Disputed Claims or to the extent any funds remain in the Data Retention and Production Reserve, it is possible that a holder of a previously Allowed Preferred Stock Interest may receive additional distributions in respect of its Interest. The receipt of any such amounts generally would result in additional gain (or reduce the amount of loss) recognized by the U.S. Holder with respect to its Allowed Preferred Stock Interest. U.S. Holders who intend to recognize losses with respect to their Allowed Interests should consult their own tax advisors about the application of U.S. tax provisions that could defer recognition of loss until the Disputed Claim Reserve or Data Retention and Production Reserve is fully distributed.

Where gain or loss is recognized by a U.S. Holder, the character of such gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, whether the Interest constitutes a capital asset in the hands of the holder and how long it has been held.

## C.   Tax Treatment of the Liquidation Trust and Liquidation Trust Beneficiaries

### 1.   Classification of the Liquidation Trust as a Liquidating Trust

The Liquidation Trust is intended to qualify as a "liquidating trust" for U.S. federal income tax purposes. In general, a liquidating trust is not a separate taxable entity but rather is treated for U.S. federal income tax purposes as a "grantor" trust (i.e., a pass-through entity). The IRS, in Revenue Procedure 94-45, 1994-2 C.B. 684, set forth the general criteria for obtaining an IRS ruling as to the grantor trust status of a liquidating trust under a chapter 11 plan. The Liquidation Trust will be structured with the intention of complying with such general criteria. In conformity with Revenue Procedure 94-45, all parties (including, without limitation, the Debtors, Liquidation Trust Beneficiaries, and the Liquidation Trustee) will be required to treat the transfer of the Liquidation Trust Assets to the Liquidation Trust as (i) a transfer of the Liquidation Trust Assets (subject to any obligations relating to those assets) directly to Liquidation Trust Beneficiaries (other than to the extent any of the Liquidation Trust Assets are allocable to Disputed Claims), followed by (ii) the transfer by such holders to the Liquidation Trust of the Liquidation Trust Assets in exchange for the Liquidation Trust Beneficial Interests. Accordingly, except in the event of contrary definitive guidance, Liquidation Trust Beneficiaries would be treated for U.S. federal

income tax purposes as the grantors and owners of their respective share of the Liquidation Trust Assets (other than such Liquidation Trust Assets as are allocable to Disputed Claims). While the following discussion assumes that the Liquidation Trust would be treated as a liquidating trust for U.S. federal income tax purposes, no ruling will necessarily be requested from the IRS concerning the tax status of the Liquidation Trust as a grantor trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidation Trust as a grantor trust. If the IRS were to successfully challenge such classification, the U.S. federal income tax consequences to the Liquidation Trust and the U.S. Holders of Allowed Interests could vary from those discussed herein.

## 2. General Tax Reporting by the Liquidation Trust and Liquidation Trust Beneficiaries

For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, Liquidation Trust Beneficiaries, and the Liquidation Trustee) must treat the Liquidation Trust as a grantor trust of which holders of Allowed Interests receiving the Liquidation Trust Interests are the owners and grantors (as determined for U.S. federal income tax purposes). Accordingly, Liquidation Trust Beneficiaries are treated for U.S. federal income tax purposes as the direct owners of an undivided interest in the Liquidation Trust (other than any assets allocable to Disputed Claims), consistent with their economic interests therein. The Liquidation Trustee will file tax returns for the Liquidation Trust treating the Liquidation Trust as a grantor trust pursuant to Section 1.671-4(a) of the Treasury Regulations. The Liquidation Trustee also shall annually send to each Liquidation Trust Beneficiary a separate statement regarding the receipts and expenditures of the Liquidation Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holder's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

All taxable income and loss of the Liquidation Trust will be allocated among, and treated as directly earned and incurred by, Liquidation Trust Beneficiaries with respect to each beneficiary's undivided interest in the Liquidation Trust Assets (and not as income or loss with respect to its prior Allowed Preferred Stock Interests), with the possible exceptions of amounts due to a reallocation of undeliverable distributions and any taxable income and loss allocable to any assets allocable to, or retained on account of, Disputed Claims. The character of any income and the character and ability to use any loss will depend on the particular situation of the Liquidation Trust Beneficiary. The tax book value of the Liquidation Trust's assets for purposes of allocating taxable income and loss shall equal their fair market value on the date of the transfer of such assets to the Liquidation Trust, adjusted in accordance with tax accounting principles prescribed by the Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

In accordance with the Plan, as soon as practicable after the Effective Date, the Liquidation Trustee will make a good faith valuation of the Liquidation Trust Assets as of the Effective Date. All parties (including, without limitation, the Debtors, Liquidation Trust Beneficiaries, and the Liquidation Trustee) must report consistently with such valuation for all U.S. federal income tax purposes.

The U.S. federal income tax obligations of a Liquidation Trust Beneficiary are not dependent on the Liquidation Trust distributing any cash or other proceeds. Thus, a U.S. Holder owning Liquidation Trust Beneficial Interests may incur a U.S. federal income tax liability with respect to its allocable share of Liquidation Trust's income even if the Liquidation Trust does not make a concurrent distribution to the U.S. Holder. In general, other than in respect of cash retained on account of Disputed Claims and distributions resulting from undeliverable distributions (the subsequent distribution of which still relates to a U.S. Holder's Allowed Interests), a distribution of cash by the Liquidation Trust will not be separately taxable to a holder of Allowed Interests receiving the Liquidation Trust Beneficial Interests since the U.S. Holder is already regarded for U.S. federal income tax purposes as owning the underlying assets (and was taxed at the time the cash was earned or received by Liquidation Trust).

U.S. Holders are urged to consult their tax advisors regarding the appropriate U.S. federal income tax treatment of any subsequent distributions of cash originally retained by the Liquidation Trust on account of Disputed Claims.

The Liquidation Trust will comply with all applicable governmental withholding requirements. If any beneficiaries of the Liquidation Trust are not U.S. persons, the trustee of the Liquidation Trust may be required to withhold up to 30% of the income or proceeds allocable to such persons, depending on the circumstances (including whether the type of income is subject to a lower treaty rate). As indicated above, the foregoing discussion of the U.S. federal income tax consequences of the Plan does not generally address the consequences to non-U.S. Holders; accordingly, such holders should consult their tax advisors with respect to the U.S. federal income tax consequences of the Plan, including owning an interest in the Liquidation Trust.

### 3.    Tax Reporting for the Liquidation Trust Assets Allocable to Disputed Claims

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidation Trustee of an IRS private letter ruling if the Liquidation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidation Trustee), the Liquidation Trustee (A) may elect to treat any of the Liquidation Trust Assets allocable to, or retained on account of, any reserve for Disputed Claims as a "disputed ownership fund" governed by Section 1.468B-9 of the Treasury Regulations, if applicable, and (B) to the extent permitted by applicable law, will report consistently for state and local income tax purposes.

If a "disputed ownership fund" election is made with respect to any reserve for Disputed Claims, such reserve will be subject to tax annually on a separate entity basis on any net income earned with respect to such assets (including any gain recognized upon the disposition of such assets). All distributions from such reserves (which distributions will be net of the expenses, including taxes, relating to the retention or disposition of such assets) will be treated as received by holders in respect of their Claims as if distributed by the Debtors. All parties (including, without limitation, the Debtors, Liquidation Trust Beneficiaries, and the Liquidation Trustee) will be required to report for tax purposes consistently with the foregoing. The Disputed Claims Reserve, if any, shall be responsible for payment, out of the assets allocable to such reserve for Disputed Claims, of any taxes imposed with respect to such Disputed Claims Reserve or such assets. In the event, and to the extent, any cash allocable to any Disputed Claims Reserve is insufficient to pay

the portion of any such taxes attributable to the taxable income arising from the assets allocable to such reserve (including any income that may arise upon the distribution of the assets in such reserve), assets allocable to such reserve for Disputed Claims may be sold to pay such taxes.

### D. Information Reporting and Backup Withholding

All distributions made under the Plan are subject to any applicable tax withholding. Under U.S. federal income tax law, interest, dividends, and other reportable payments may, under certain circumstances, be subject to "backup withholding" at the then applicable withholding rate (currently 24%). Backup withholding generally applies if the holder (a) fails to furnish its social security number or other taxpayer identification number, (b) furnishes an incorrect taxpayer identification number, (c) fails properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the tax identification number provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax. Certain persons are exempt from backup withholding, including, in certain circumstances, corporations and financial institutions. Holders are urged to consult their tax advisors regarding the Treasury Regulations governing backup withholding and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations.

In addition, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders are urged to consult their tax advisors regarding these Treasury Regulations and whether the transactions contemplated by the Plan would be subject to these Treasury Regulations and require disclosure on the holder's tax returns.

> **THE FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR NON-U.S. TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

### ARTICLE VI
### SOLICITATION AND VOTING PROCEDURES

The solicitation procedures attached to the Disclosure Statement Order (the "**Solicitation Procedures**"), which are incorporated into this Disclosure Statement by reference and summarized below, will be used to collect and tabulate votes on the Plan. The Disclosure Statement Order establishing the Solicitation Procedures should be read in conjunction with this Disclosure Statement and in formulating a decision to vote to accept or reject the Plan. In the event of any

conflict between the Solicitation Procedures and this Disclosure Statement, the Solicitation Procedures will control.

### A.   Holders of Claims and Interests Entitled to Vote on the Plan

As discussed above, Holders of Interests in Class 7 (Preferred Stock Interests) (the "Voting Class") are Impaired under the Plan and will receive a distribution under the Plan. Accordingly, Holders of Interests in the Voting Class are entitled to vote on the Plan and all such Holders should refer to the Disclosure Statement Order and Solicitation Procedures attached thereto for further instructions on voting.

### B.   Voting Record Date

The Record Date for determining whether Holders of Interests are entitled or permitted to vote on the Plan and receive the Solicitation Package (as defined below) in accordance with the Solicitation Procedures is [●], 2024.

### C.   Solicitation Package

The package of materials (the "**Solicitation Package**") to be sent to Holders of Interests in the Voting Classes and Holders of Interests in Class 7 contain:

1.   a cover letter from the Debtors describing the contents of the Solicitation Package and urging the Voting Classes to vote to accept the Plan;

2.   a copy of this Disclosure Statement, together with the exhibits hereto, including the Plan, attached as Exhibit A;

3.   a copy of the Disclosure Statement Order entered by the Bankruptcy Court;

4.   a copy of the notice of the Confirmation Hearing, the Confirmation Objection Deadline, and the Voting Deadline (the "**Confirmation Hearing Notice**");

5.   an appropriate form of Ballot with return instructions and a prepaid, return envelope; and

6.   any other materials ordered by the Bankruptcy Court to be included as part of the Solicitation Package.

In addition, the following materials will be sent to Holders of Claims not in the Voting Classes as of the Voting Record Date and Holders of Unclassified Claims as of the Voting Record Date:

1.      a copy of the Confirmation Hearing Notice; and

2.      a notice informing such Holders that are not entitled to vote under the terms of the Plan.

The Plan, the Disclosure Statement, all Plan Documents, including the Plan Supplement, will be made available online at no charge at the website maintained by the Debtors' Voting Agent at https://cases.stretto.com/silvergate. The Debtors will provide parties in interest (at no charge) with hard copies of the Plan and/or Disclosure Statement, as well as any exhibits thereto, upon request to the Voting Agent electronically at [●] or by telephone at [●] (International).

### D.   <u>Voting on the Plan</u>

**The voting deadline to accept or reject the Plan is at [●] (Prevailing Eastern Time) on [●], 2024, unless extended by the Debtors (the "<u>Voting Deadline</u>").** You may submit your Ballot via first class mail, overnight courier, or hand/personal delivery at the address listed below or online at the [●] website listed below. Ballots will not be accepted by facsimile, email, or other electronic means of transmission. Additional details on voting are discussed herein and set forth in Ballots delivered to Holders of Claims or Interests entitled or permitted to vote on the Plan.

**For your vote to be counted, you must return your properly completed Ballot in accordance with the voting instructions on the Ballot on that it is *actually received* by [●] (the "<u>Voting Agent</u>"), on or before the Voting Deadline.**

<u>[●]</u>

Special procedures are set forth in the Disclosure Statement Order and Solicitation Procedures for beneficial holders who hold securities through a broker, dealer, commercial bank, trust company, or other agent or nominee ("**Nominee**"). If you received a Solicitation Package addressed to or sent from your Nominee, please return your Ballot to your Nominee allowing enough time for your Nominee to cast your vote on a Ballot or Master Ballot before the Voting Deadline. Please review the Disclosure Statement Order and Solicitation Procedures for further information concerning such special voting instructions.

### E.   <u>Special Notice Concerning Releases Associated with Voting</u>

**Pursuant to <u>Article IX.B</u> of the Plan, each Releasing Party shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released, waived, and discharged each Debtor, Post-Effective Date Debtor, the Liquidation Trustee, the Liquidation Trust and other Released Party from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever (in each case, whether prepetition or postpetition), including any derivative Claims asserted or that may be asserted on behalf of the Debtors, their Estates, the Liquidation Trustee or the Liquidation Trust that such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the conduct of their business (in each case, whether prepetition or postpetition), the**

formulation, preparation, dissemination, or negotiation of the Plan, the Disclosure Statement, any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Disclosure Statement, the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date (in each case, whether prepetition or postpetition) related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article IX.C</u> of the Plan shall not release (i) any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, or (ii) any post-Effective Date obligations of any party or Entity under the Plan or any document, instrument, or agreement executed to implement the Plan.

Notwithstanding anything to the contrary in the foregoing, the releases set forth in <u>Article IX.C</u> of the Plan shall not be construed as (i) releasing any Released Party from Claims or Causes of Action arising from an act or omission that is judicially determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, (ii) releasing any timely filed Proof of Claim (as may be validly amended under the Plan or as maybe permitted by the Bankruptcy Code and Bankruptcy Rules) or any post-Effective Date obligations of or under (A) any party or Entity under the Plan, (B) any Executory Contract or Unexpired Lease to the extent such Executory Contract or Unexpired Lease has been assumed by the Debtors pursuant to Final Order, or (C) any document, instrument, or agreement executed to implement the Plan, or (iii) releasing any rights to distributions required to be paid or delivered pursuant to the Plan or the Confirmation Order.

Holders of Claims or Interests may have independent claims against one or more of the Released Parties. Because a vote in favor of the Plan will release whatever claims do exist, if any, against the Released Parties, creditors and interest Holders should consult their own counsel for information and advice as to whether any such claims exist and the value or merit of any such claims. If a Holder of Claims or Interests does not wish to give the releases contemplated under the Plan, then the Holder should vote to reject the Plan and check the box to opt out of the releases in the Plan. Any party in interest may object to the proposed third-party release provisions. The Debtors have the burden of proof at the Confirmation Hearing to satisfy the applicable standards for third party releases.

FOR THE AVOIDANCE OF ANY DOUBT, PURSUANT TO THE THIRD PARTY RELEASES IN THE PLAN, EACH RELEASING PARTY SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED, WAIVED, AND DISCHARGED EACH RELEASED PARTY FROM (AMONG OTHER CLAIMS AS MORE FULLY SET FORTH IN <u>ARTICLE IX.C</u> OF THE PLAN) ANY CLAIMS RELATED TO OR ASSERTED IN THE PUTATIVE CLASS ACTIONS (WHICH ACTIONS INCLUDE, FOR THE AVOIDANCE OF ANY DOUBT, (I) THE SECURITIES LITIGATION ACTION, (II) THE BHATIA LITIGATION, AND (III) THE FIDUCIARY DUTY LITIGATION). PURSUANT TO THE RELEASES, RELEASING PARTIES WOULD BE RELEASING THEIR RIGHTS TO

**ANY RECOVERIES ARISING FROM THE PUTATIVE CLASS ACTIONS IF SUCH HOLDERS VOTE TO ACCEPT THE PLAN OR DO NOT OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN AND ARE BOUND BY THE THIRD-PARTY RELEASE PROVISIONS OF THE PLAN.**

## ARTICLE VII
## RISK FACTORS TO CONSIDER BEFORE VOTING

### A.  Risk of Amendment, Waiver, Modification or Withdrawal of the Plan

The Debtors reserve the right, in accordance with the Bankruptcy Code, the Bankruptcy Rules and consistent with the terms of the Plan, to amend the terms of the Plan or waive any conditions thereto if and to the extent that such amendments or waivers are necessary or desirable to consummate the Plan.

The potential impact of any such amendment or waiver on the holders of Claims and Interests cannot presently be foreseen, but may include a change in the economic impact of the Plan on some or all of the proposed Classes or a change in the relative rights of such Classes.

### B.  Parties May Object to the Plan's Classification of Claims and Interests

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class. The Debtors believe that the classification of the Claims and Interests under the Plan complies with this requirement. Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion or that parties will not object to the proposed classification.

### C.  The Debtors May Not Be Able to Obtain Confirmation of the Plan

The Debtors may not receive the requisite acceptances to confirm the Plan. In the event that votes with respect to Claims in the Class entitled to vote are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek Confirmation of the Plan by the Bankruptcy Court. However, if the requisite acceptances are not received, the Debtors may not be able to obtain Confirmation of the Plan. Even if the requisite acceptances of the Plan are received, the Bankruptcy Court might not confirm the Plan as proposed if the Bankruptcy Court finds that any of the statutory requirements for confirmation under section 1129 of the Bankruptcy Code has not been met.

If the Plan is not confirmed by the Bankruptcy Court, there can be no assurance that any alternative plan would be on terms as favorable to Holders of Allowed Claims as the terms of the Plan. In addition, there can be no assurance that the Debtors will be able to successfully develop, prosecute, confirm and consummate an alternative plan that is acceptable to the Bankruptcy Court and the Debtors' creditors.

### D.  The Conditions Precedent to the Effective Date of the Plan May Not Occur

As more fully set forth in the Plan, the Effective Date is subject to a number of conditions precedent. If such conditions precedent are not met or waived, the Effective Date will not occur.

### E.    Holders of Claims and Interests May Recover Less Than Projected

Recoveries to Holders of Claims and Interests of the Debtors will be affected by numerous factors. First, cash available for Distributions is uncertain and will depend, in part, on the outcome of any Causes of Action pursued by the Debtors and any other efforts to monetize and realize value from the Debtors' assets. Litigation is inherently uncertain and the outcome of any claims is hard to predict.

Further, recoveries to Holders of Claims and Interests will be affected by the amount of Claims and Interests ultimately Allowed against the Debtors. The Debtors' expenses could be higher than projected and Distributions could be reduced by, among other things, the prior payment of fees, costs, and expenses of the Debtors or the costs to administer the Plan. Further, recoveries to a Holder of a Claim or Interest in a particular class will be affected by the amount of Allowed Claims required to be paid by the Debtors pursuant to the Plan, which are *pari passu* or senior to the Claim or Interest held by such Holder.

Although the Debtors have made commercially reasonable efforts to disclose projected recoveries in this Disclosure Statement, as discussed above, it is possible that the amount of Allowed Claims will be materially higher than any range of possible Allowed Claims the Debtors have considered to date, and thus recoveries could be materially reduced or eliminated. In addition, the timing of actual distributions to holders of Allowed Claims and Allowed Interests may be affected by many factors that cannot be predicted. Therefore, the Debtors cannot guarantee the timing of any Distributions.

### F.    The Allowed Amount of Claims May Differ from Current Estimates

There can be no assurance that the estimated Allowed Claim amounts set forth in the Plan and herein are correct, and the actual amount of Allowed Claims may differ from the estimates. The estimated amounts are subject to certain risks, uncertainties and assumptions. Should one or more of these risks or uncertainties materialize, or should underlying assumptions prove incorrect, the actual amount of Allowed Claims may vary from those estimated in the Disclosure Statement. Furthermore, a number of additional claims may be Filed, including on account of governmental claims (which may be filed up until the Governmental Bar Date). Such clams may be substantial. Any such claims may result in a greater amount of Allowed Claims than estimated in the Disclosure Statement.

### G.    Risks Related to Income Taxation

There are several income tax considerations, risks and uncertainties associated with the Plan. Interested parties should read carefully the discussions set forth in Article VII of the Disclosure Statement regarding certain United States federal income tax consequences of the transactions proposed by the Plan.

### H.    Certain Risks to Holders of Interests

In order to preserve the tax attributes of the Debtors, Holders of Interests may be restricted by the Debtors' organizational documents, the Confirmation Order or other order of the Bankruptcy Court from transferring their Interests.

**I.    Litigation**

As is the case with most litigation, the outcomes of any litigation involving the Debtor, or any other Retained Cause of Action commenced, or preserved, prior to the Effective Date, are difficult to assess or quantify.

**ARTICLE VIII**
**ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN**

If the Plan is not confirmed and consummated, the Debtors' alternatives include (i) seeking dismissal of the Chapter 11 Cases, or (ii) the preparation and presentation of an alternative chapter 11 plan.

**A.    Dismissal**

If the Plan is not confirmed and consummated, the Debtors' alternatives include (i) seeking dismissal of the Chapter 11 Cases or (ii) the preparation and presentation of an alternative chapter 11 plan.

The Debtors believe that the Plan is the best alternative available to creditors and interest holders because the Plan provides for an orderly liquidation and return of capital to holders of Claims and Interests. Furthermore, the Debtors believe that the Plan also provides creditors and interest holders with a degree of certainty that would not exist if the Debtors' assets were subject to liquidation outside of the Plan and eliminates the risks and expenses of the marketplace and continual administration of the Debtors. In this regard, in the event of a liquidation under Chapter 7, holders of Preferred Stock Interests would likely not receive distributions in as large of an amount as they will likely be entitled to under the Plan and equity Interests would likely not be entitled to any recovery, and the following is likely to occur:

    i.      Additional administrative expenses, including trustee's commissions, fees for trustee's accountant, attorneys and other professionals likely to be retained, would be incurred with priority over General Unsecured Claims under section 507(a)(1) of the Bankruptcy Code and would materially reduce creditor and Preferred Stock Interest Holder recovery.

    ii.     Distributions would likely be substantially delayed, while expenses of administration would continue to grow.

Accordingly, it is the Debtors' belief that in a Chapter 7 liquidation of the Debtors, the unsecured creditors would not receive a distribution. Accordingly, the Debtors believe that the Plan is in the best interests of creditors. *See* Liquidation Analysis attached hereto as **Exhibit C**.

Accordingly, the Debtors have determined that confirmation of the Plan will provide each holder of an Allowed Claim or Interest with a recovery that is not less than the amount such holder would receive pursuant to liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

**B.**   **Alternative Chapter 11 Plan.**

If the Plan is not confirmed, the Debtors or any other party in interest could attempt to formulate a different chapter 11 plan. If an alternative plan is pursued, creditors and equity holders would lose the recoveries derived from the Plan. Accordingly, the Debtors believe that the Plan enables creditors and equity holders to realize the highest recoveries under the circumstances.

**ARTICLE IX**
**CONFIRMATION OF THE PLAN**

The Bankruptcy Court will confirm the Plan only if all of the requirements of section 1129 of the Bankruptcy Code are met. Among the requirements for confirmation are that the Plan is (A) accepted by all impaired Classes of Claims and Interests entitled to vote or, if rejected or deemed rejected by an impaired Class, that the Plan "does not discriminate unfairly" and is "fair and equitable" as to such Class; (B) in the "best interests" of the Holders of Claims and Interests impaired under the Plan; and (C) feasible.

**A.**   **Acceptance of the Plan**

The Bankruptcy Code defines "acceptance" of a plan by a class of (i) Claims as acceptance by creditors in that class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Claims that cast ballots for acceptance or rejection of the Plan and (ii) Interests as acceptance by interest Holders in that class that hold at least two-thirds (2/3) in amount of the Interests that cast ballots for acceptance or rejection of the Plan. Holders of Claims or Interests that fail to vote are not counted in determining the thresholds for acceptance of the Plan.

If any impaired Class of Claims or Interests does not accept the Plan (or is deemed to reject the Plan), the Bankruptcy Court may still confirm the Plan at the request of the Debtors if, as to each impaired Class of Claims or Interests that has not accepted the Plan (or is deemed to reject the Plan), the Plan "does not discriminate unfairly" and is "fair and equitable" under the so-called "cram down" provisions set forth in section 1129(b) of the Bankruptcy Code. The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under the Plan. A chapter 11 plan does not discriminate unfairly, within the meaning of the Bankruptcy Code, if the legal rights of a dissenting class are treated in a manner consistent with the treatment of other classes whose legal rights are substantially similar to those of the dissenting class and if no class of claims or interests receives more than it legally is entitled to receive for its claims or interests. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." The "fair and equitable" test applies to classes of different priority and status (e.g., secured versus unsecured; claims versus interests) and includes the general requirement that no class of claims receive more than 100% of the allowed amount of the claims in such class. As to the dissenting class, the test sets different standards that must be satisfied in order for the Plan to be confirmed, depending on the type of claims or interests in such class. The following sets forth the "fair and equitable" test that must be satisfied as to each type of class for a plan to be confirmed if such class rejects the plan:

- **Secured Creditors**. Each holder of an impaired secured claim either (a) retains its liens on the property, to the extent of the allowed amount of its secured claim, and receives

78

deferred cash payments having a value, as of the effective date of the plan, of at least the allowed amount of such secured claim, (b) has the right to credit bid the amount of its claim if its property is sold and retains its lien on the proceeds of the sale, or (c) receives the "indubitable equivalent" of its allowed secured claim.

- **Unsecured Creditors**. Either (a) each holder of an impaired unsecured claim receives or retains under the plan, property of a value, as of the effective date of the plan, equal to the amount of its allowed claim or (b) the Holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

- **Interests**. Either (a) each equity interest holder will receive or retain under the plan property of a value equal to the greater of (i) the fixed liquidation preference or redemption price, if any, of such equity interest and (ii) the value of the equity interest or (b) the Holders of interests that are junior to the interests of the dissenting class will not receive or retain any property under the plan.

**IF ALL OTHER CONFIRMATION REQUIREMENTS ARE SATISFIED AT THE CONFIRMATION HEARING, THE DEBTORS WILL ASK THE BANKRUPTCY COURT TO RULE THAT THE PLAN MAY BE CONFIRMED ON THE GROUND THAT THE SECTION 1129(b) REQUIREMENTS HAVE BEEN SATISFIED.**

### B.  Best Interests Test

The Bankruptcy Code requires that each holder of an impaired claim or interest either (1) accepts the plan or (2) receives or retains under the plan property of a value, as of the effective date, that is not less than the value such holder would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code. This requirement is customarily referred to as the "best interests" test. The Debtors believe that the value of any distributions to Holders of Allowed Claims and Interests in a chapter 7 case would be less than the value of distributions under the Plan.

### C.  Feasibility

The Bankruptcy Code requires that a chapter 11 plan provide for payment in full of all administrative and priority claims unless holders of such claim consent to other treatment. Each Holder of an Allowed Other Priority Claim will receive payment in full in Cash or other treatment rendering such claim Unimpaired, unless such Holder agrees to less favorable treatment. The Debtors therefore believe that the Plan is feasible.

### D.  Confirmation Hearing and Plan Objection Deadline

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a confirmation hearing upon appropriate notice to all required parties. The Confirmation Hearing is scheduled for **[●], 2024 (Prevailing Eastern Time) (the "Confirmation Hearing")**, or as soon thereafter as counsel may be heard, before the Honorable [●], United States Bankruptcy Judge. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the continuation date made at the Confirmation Hearing, at any subsequent continued Confirmation Hearing, or pursuant to a notice filed on the

docket for the Chapter 11 Cases. The Bankruptcy Court has directed that any objections to confirmation of the Plan be filed and served on or before **[●], 2024, at [●] (Prevailing Eastern Time) (the "Plan Objection Deadline")**.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to the confirmation of a plan. Any objection to confirmation of the Plan must be in writing, must conform to the Bankruptcy Rules and the local rules of the Bankruptcy Court, must set forth the name of the objector, the nature and amount of Claims or Interests held or asserted by the objector against the Debtors' estates or properties, the basis for the objection and the specific grounds therefor, and must be Filed with the Bankruptcy Court and served upon all of the below parties in accordance with the Bankruptcy Rules and the local rules of the Bankruptcy Court.

**If to the Debtors, to:**

Silvergate Capital Corporation
4225 Executive Square, Suite 600,
La Jolla, CA 92037
Attn:  Paris Cribben

-and-

Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn:   Paul N. Heath
        Michael J. Merchant
        David T. Queroli
        Emily R. Mathews
        heath@rlf.com
        merchant@rlf.com
        queroli@rlf.com
        mathews@rlf.com

-and-

Cravath, Swaine & Moore LLP
375 Ninth Avenue
New York, NY 10001
Attn:   George E. Zobitz
        Paul H. Zumbro
        Alexander Gerten
        jzobitz@cravath.com
        pzumbro@cravath.com
        agerten@cravath.com

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY SERVED AND FILED IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT**

### E.    <u>Payment of Statutory Fees</u>

All Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors, in full, in Cash, on or before the Effective Date. All Quarterly Fees that arise after the Effective Date (including, without limitation, in connection with funding the Professional Fee Escrow Account) shall be paid by the Post-Effective Date Debtors in full, in Cash when due and payable.

### F.    <u>Governing Law</u>

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a document in the Plan Supplement provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

### G.    <u>Notice of Entry of Confirmation Order and Relevant Dates</u>

Promptly upon entry of the Confirmation Order, the Debtors shall file on the docket and serve upon parties who have entered their appearance a notice of the entry of the Confirmation Order and all relevant deadlines and dates under the Plan.

### H.    <u>Revocation, Withdrawal or Non-Consummation of Plan</u>

If the Debtors revoke or withdraw the Plan with respect to any one or more of the Debtors, or if confirmation or consummation of the Plan does not occur as to any Debtor, then, as to such Debtor, (a) the Plan shall be null and void in all respects and (b) any settlements and compromises embodied in the Plan, and any document or agreement executed pursuant the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained in the Plan and no acts taken in preparation for consummation of the Plan shall (i) constitute or be deemed to constitute a waiver or release of any Claims against or Interests in such Debtor or any other Person, (ii) prejudice in any manner the rights of any of the Debtors or any other Person in any other further proceedings involving such Debtor or (iii) constitute or be deemed to constitute an admission of any sort by the Debtors or any other Person. None of the filing of the Plan, the taking by the Debtors or other party in interest of any action with respect to the Plan or any statement or provision contained herein shall be or be deemed to be an admission by the Debtors or other party in interest against interest, or be or be deemed to be a waiver of any rights, Claims or remedies that the Debtors or other party in interest may have, and until the Effective Date all such rights and remedies are and shall be specifically reserved. In the event the Plan is not confirmed and the Confirmation Order is not entered, the Plan and any Plan Supplement, and any statement contained herein or therein, may not be used by any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) against the Debtors and other parties in interest. The Debtors shall consult with the Required Preferred

Stockholders with respect to the revocation or withdrawal of the Plan with respect to any one or more of the Debtors.

## I.    Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtors and the Post-Effective Date Debtors and the Holders of all Claims and Interests and their respective successors and assigns.

## J.    Severability of Plan Provisions

If, prior to the Effective Date, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors with the consent, not to be unreasonably withheld, of the Required Preferred Stockholders, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## K.    No Admissions

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTION, THE PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

## L.    Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 as in effect on the Petition Date shall apply. With regard to all dates and the periods of time set forth or referred to in the Plan, time is of the essence.

## M.    Successors and Assigns

The rights, benefits and obligations of any Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof) named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person (and any government, governmental agency or any subdivision, department or other instrumentality thereof).

### N.    Conflict between Plan, Disclosure Statement and Plan Documents

In the event of any conflict between the terms and provisions in the Plan and the terms and provisions in the Disclosure Statement, or any Plan Supplement, the terms and provisions of the Plan shall control and govern.

### O.    Substantial Consummation

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### P.    Plan Exhibits

Any and all exhibits to the Plan or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least seven (7) Business Days prior to the Plan Objection Deadline, unless the Plan provides otherwise. Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of any such document upon written request to the Debtors or online at https://cases.stretto.com/silvergate. The Debtors explicitly reserve the right to, in the exercise of its sole and absolute discretion, modify or make additions to or subtractions from any schedule to the Plan and to modify any exhibit to the Plan prior to the Plan Objection Deadline.

## ARTICLE X
## CONCLUSION AND RECOMMENDATION

The Debtors believe the Plan is in the best interests of all stakeholders and urge all Holders of Claims and Interests in voting classes to vote to accept the Plan.

Dated: September 18, 2024
Wilmington, Delaware

Respectfully submitted,

Silvergate Capital Corporation
on behalf of itself and each Debtor

By:    _/s/ Elaine Hetrick_
       Name: Elaine Hetrick
       Title: Chief Administrative Officer

# EXHIBIT A

**Plan**

**<u>EXHIBIT B</u>**

**Organizational Chart**

## **EXHIBIT C**

**Liquidation Analysis**